LAW OFFICE OF JEROME J. HAIG
JEROME J. HAIG, Attorney at Law
State Bar No. 131903
21143 Hawthorne Boulevard, Suite 454
Torrance, California 90503
Telephone:   (424) 488-0686 – office
             (424) 999-5673 – mobile
Fax:         (424) 271-5990
E-mail:      jerome@jeromehaiglaw.com

H. DEAN STEWARD LAW OFFICES
H. DEAN STEWARD, Attorney at Law
State Bar No. 85317
107 Avenida Miramar, Suite C
San Clemente, CA 92672
Telephone:   (949) 481-4900
Fax:         (949) 496-6753
Email:       deansteward@fea.net

Attorneys for Defendant
Paul Tanaka

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| THE UNITED STATES OF AMERICA | Case No: CR 15-255-PA |
|---|---|
| Plaintiff, | |
| vs. | **NOTICE OF MOTION AND MOTION TO RETURN CASE TO RANDOMLY ASSIGNED DISTRICT JUDGE BASED UPON IMPROPER TRANSFER** |
| PAUL TANAKA, et al, | |
| Defendants. | Date: June 15, 2015 Time: 3:00 pm Courtroom 15, Spring Street Floor |

TO THE HONORABLE PERCY ANDERSON, UNITED STATES DISTRICT

JUDGE, STEPHANIE YONEKURA, ACTING UNITED STATES ATTORNEY

1

MOTION TO RETURN CASE TO RANDOMLY ASSIGNED DISTRICT JUDGE

FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND ASSISTANT UNITED STATES ATTORNEYS BRANDON D. FOX, LIZABETH A. RHODES, MARGARET L. CARTER, AND GREGORY A. LESSER:

PLEASE TAKE NOTICE that on the 15th day of June, 2015, at 3:00 pm, Defendant Paul Tanaka, by and through his attorneys of record, Jerome J. Haig and H. Dean Steward, will move this Court to return this case to the original District Court Judge randomly assigned this case because the matter was transferred in violation of General Order No. 14-03. This motion is based upon the attached Memorandum of Points and Authorities, all files and records in this case, all files and records in *United States v. Thompson, et al*, 13 CR 819-PA, and any further evidence as may be adduced at the hearing on this motion.

Dated this 18th day of May, 2015.

Respectfully submitted

*Jerome J. Haig*
_____
Jerome J. Haig
Attorney for Defendant Paul Tanaka

2

MOTION TO RETURN CASE TO RANDOMLY ASSIGNED DISTRICT JUDGE

# MEMORANDUM OF POINTS AND AUTHORITIES

INTRODUCTION

On May 14, 2015, this matter was initially assigned to the Court of United States District Judge S. James Otero,  pursuant to the district's random-assignment procedure under General Order 14-03. That same date, the Government pursued transfer to the Court of United States District Judge Percy Anderson by identifying the case as "related" to a currently closed and terminated case (*United States v. Thompson, et al*, CR 13-819-PA), over which Judge Anderson previously presided. But this narrow exception applies only when there are *two pending matters* which "(1) arise out of the same conspiracy, common scheme, transaction, or series of transactions or events" or "(2) involve one or more defendants in common, and would entail substantial duplication of labor in pretrial, trial or sentencing proceedings if heard by different judges." (See GO No. 14-03, § II.I.1.a).

Since the purported "related" matter is now closed and terminated, General Order No. 14-03 does not provide for disturbing the random nature of assigning criminal matters to district court judges.  Accordingly, there is no need for this Court to determine whether the current matter is "related" to the earlier case no longer pending before this Court.

The sound reasoning behind the random assignment of criminal matters should not be disturbed "[e]xcept as otherwise provided in General Order [14-03]" (*Id*. at I.A.1.a.). By leaving case assignment to chance rather than choice, the judiciary preserves the appearance of objectivity. But whenever the case assignment process is influenced by a party to effectuate a desired result, the fair administration of justice is threatened. Consequently, because transfer is at odds with the plain language of the General Order, as well as thwarts the purpose behind

3

the random-assignment default, the Court should decline to transfer this matter.

On May 15, 2015, this Court accepted transfer of this matter, pursuant to General Order 14-03.

### STATEMENT OF FACTS

I. First Prosecution

On November 20, 2013, the government filed an indictment against 7 former or current Los Angeles County Sheriff's peace officers, in *United States v. Thompson, et al,* CR 13-819-PA. Pursuant to General Order 14-03, the case was randomly assigned to the courtroom of District Judge Percy Anderson. Eventually, all defendants were convicted by jury trial. All but one of the defendants were sentenced on September 26, 2014. The 7th and sole remaining defendant was sentenced on December 16, 2014. This Court's official docket, maintained on PACER (Public Access to Court Electronic Records) reflects that the case is "closed" and "terminated" for each defendant charged in the indictment. Accordingly, the case is not pending and District Judge Anderson is not presiding over any assigned matter related to the instant matter.[1]

II. Second (and Instant) Prosecution

On May 13, 2015, the Government indicted defendants Paul Tanaka and William Carey in the instant matter. Both defendants were arraigned on the

---

[1] See Exhibit A, PACER document noting case as "closed" for each defendant. An individual search by defendant's name on PACER also shows that for each defendant, the matter is "terminated."

MOTION TO RETURN CASE TO RANDOMLY ASSIGNED DISTRICT JUDGE

charges on May 14, 2015. The case was randomly assigned to United States District Judge S. James Otero. Although the prior case against defendants Thompson et al was no longer pending and therefore not "currently" assigned to District Judge Percy Anderson, the Government filed a Notice of Related Cases, seeking to remove this matter to the Court which presided over the closed and terminated prior matter. On May 15, 2015, this Court accepted the instant matter pursuant to the Notice filed by the Government.

**ARGUMENT**

I. The requested transfer is not authorized by General Order 14-03

In districts with more than one judge, cases are assigned "as provided by the rules and orders of the court." 28 U.S.C. § 137. Consistent with other federal districts, the Central District of California has adopted a random-assignment procedure, subject to a narrow exception for related cases. Pursuant to General Order 14-03, "[u]nless directly assigned, all criminal cases will be randomly assigned to the district judges." (GO No. 14-03, § I.A.l.a). The General Order implements the related-case doctrine in two ways. First, it identifies specific categories of related cases that are subject to "direct assignment" to the judge handling the earlier proceeding. (GO No. 14-03 § I.A.2). These include previously dismissed cases, illegal reentry cases where there is a supervised-release violation based upon the same underlying conduct, and Rule 20 transfer cases where the same defendant has a case pending in the district. *Id*.

Only if both related-case criteria are satisfied may the prosecutor file a Notice of Related Cases. The notice must "identify the previously filed case(s), and set forth the reasons why counsel believes the cases are related." (See L. Cr. R. 7-

MOTION TO RETURN CASE TO RANDOMLY ASSIGNED DISTRICT JUDGE

4). After the notice is filed, the Clerk of the Court presents a proposed order for approval to "the judge *currently assigned* the earliest-assigned case." (GO No. 14-03, § 11.1.2, emphasis added). If approved, the case is transferred from the randomly assigned judge to the transferee judge. *Id.* The party seeking related case designation bears the burden of showing that the cases are related. See *Autumn Journey Hospice, Inc. v. Sebelius,* 753 F.Supp.2d 135, 140 (D.D.C. 2010).

II. There must be an "open" case "currently assigned" to the transferee judge for the case to be properly transferred under General Order 14-03.

Here, the current case and the prior case before this Court do not satisfy the exception to random case assignment under General Order 14-03. Even assuming, *arguendo*, that the matters satisfy the "related" aspect of GO 14-03, there does not exist a "currently assigned" matter because the proceedings in that prior matter have been "closed" and "terminated" as to each defendant.

It is unreasonable to assume that GO 14-03 intended transfer of cases to a District Judge handling a related matter that was no longer pending or "open." To hold otherwise would allow for related cases to be assigned outside the random assignment process many years after the earlier case was terminated. Moreover, GO 14-03 II.I.2.¶6, provides guidance that the older related matter must be "open," in declaring as follows:

> "If the transferee judge declines the related-case transfer because of senior status, the judge assigned the declined case may direct the Clerk to transfer to him or her all *open cases* before that senior judge that are related to the declined case." (Emphasis added.)[2]

---

[2]Clearly this matter does not involve the a judge on senior status. However, the plain language of the quoted text evinces the intent that transfers are only appropriate when two or more open cases are related.

MOTION TO RETURN CASE TO RANDOMLY ASSIGNED DISTRICT JUDGE

Accordingly, if and only if proceedings in *U.S. v Thompson et al*, CR 13 819-PA were not closed and terminated can this Court properly consider a transfer under GO 14-03. Simply put, there is no prior pending open case related to the instant matter in this Court for which a transfer is provided.

III. The Policies Underlying the District's Random-Assignment Procedure Further Support the matter remaining before the currently assigned District Judge

"[T]he random assignment of judges to cases is a hallmark of our system of federal court administration." *United States v. Bobo*, 395 F. Supp. 2d 1116, 1126 (N.D. Ala. 2004)).[3] The random-draw policy serves several salutary purposes. Beyond answering the practical problem of divvying up a district's caseload, random case assignment has "the obvious, commonsensical and beneficial purpose of maintaining the public's confidence in the integrity of the judiciary." *Grutter v. Bollinger*, 16 F.Supp. 2d 797, 802 (E.D. Mich. 1998); *United States v. Volvo Const. Equip. AB*, 922 F. Supp. 2d 67, 68 (D.D.C. 2013) (recognizing that random assignment "ensure[s] greater public confidence in the integrity of the judicial process"); *United States v. Phillips*, 59 F. Supp. 2d 1178, 1180 (D. Utah 1999) ("[R]andom assignment protects the integrity of the judicial system by leaving the pairing of cases and judges to chance"). Indeed, the Ninth Circuit has specifically recognized this district's random assignment procedure as "evinc[ing] a policy of objectivity and fairness in the distribution of all matters." *United States v. Flynt*, 756 F.2d 1352, 1356 n. 2 (9th Cir.) amended, 764 F.2d 675 (9th Cir. 1985).

Random case assignment accomplishes this goal in two key ways. First, it prevents parties from "judge shopping." *In re Yagman*, 796 F.2d 1165, 1177-78

[3]*See also* Joseph W. Mead, *Stare Decisis in the Inferior Courts of the United States*, 12 Nev. L. J. 787, 812 (2012) ("Both circuit courts and district courts rely on random assignment to match cases with judges.").

7

MOTION TO RETURN CASE TO RANDOMLY ASSIGNED DISTRICT JUDGE

(9th Cir.1986); *United States v. Mavroules*, 798 F. Supp. 61 (D. Mass. 1992). Prosecutorial attempts to influence the case-assignment process are especially pernicious: "[t]he concept of judge-shopping by a prosecutor for a judge whom the prosecutor believes would be inclined or biased in his favor offends our basic notions of justice." *Francolino v. Kuhlman,* 224 F. Supp. 2d 615, 630-31 (S.D.N.Y. 2002) aff'd, 365 F.3d 137 (2d Cir. 2004); *see also Cruz*, 812 F.2d at 572 ("the suggestion that the case assignment process is being manipulated for motives other than the efficient administration of justice casts a very long shadow, touching the entire criminal justice system"). Even where the prosecutor is permitted to select a judge on a seemingly neutral basis, "the obvious implication [is] that the prosecutor may choose a judge based on a real or perceived advantage, and attempt to weight the scales of justice, if only slightly, in his favor." *Francolino*, 224 F. Supp. 2d at 631.

Second, random assignment prohibits judges from lobbying for, or otherwise influencing, the assignment of particular cases. Katherine A. Macfarlane, *The Danger of Nonrandom Case Assignment: How the Southern District of New York's "Related Cases" Rule Shaped Stop-and-Frisk Rulings*, 19 Mich. J. Race & L. 199, 206 (2014). "A system of random assignment is purely objective and is not open to the criticism that business is being assigned to particular judges in accordance with any particular agenda." *Grutter,* 16 F. Supp. 2d at 802.

Random assignment not only ensures fairness to litigants but preserves the appearance of fairness to the public. *In re Marshall*, 403 B.R. 668, 677-78 (C.D. Cal. 2009), *aff'd,* 721 F.3d 1032 (9th Cir. 2013) ("Random assignment is important chiefly because it precludes real or apparent bias"); *Tripp v. Exec. Office of President*, 196 F.R.D. 201, 202 (D.D.C. 2000) (noting random assignment "avoids public perception or appearance of favoritism"); *Cruz v. Abbate*, 812 F.2d 571, 573-74 (9th Cir.1987) (noting the importance of avoiding real or perceived

MOTION TO RETURN CASE TO RANDOMLY ASSIGNED DISTRICT JUDGE

arbitrariness or unfairness in case assignments).

Given the important policy considerations undergirding the random-draw policy, any attempt "to interfere with the judicial assignment process constitutes a threat to the orderly administration of justice." *In re BellSouth Corp.*, 334 F.3d 941, 958 (11th Cir. 2003). "Manipulation of judicial assignments can deprive litigants of their right to a fair hearing and contravene basic principles of due process." *Disability Advocates & Counseling Group, Inc. v. Betancourt*, 379 F. Supp. 2d 1343, 1364 (S.D. Fla. 2005); accord *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1265 (5th Cir. 1983) ("[M]anipulation of the judicial system ... creates the appearance of professional impropriety.").

## CONCLUSION

For the foregoing reasons, defendant Paul Tanaka respectfully requests the Court return this case to the District Judge to whom the case was originally and properly randomly assigned.

Dated this 18th day of May, 2015.


Respectfully submitted



*Jerome J. Haig*
_____
Jerome J. Haig
Attorney for Defendant Paul Tanaka

9

MOTION TO RETURN CASE TO RANDOMLY ASSIGNED DISTRICT JUDGE