STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
BRANDON D. FOX (Cal. Bar No.290409)
Deputy Chief, Public Corruption & Civil Rights Section
LIZABETH A. RHODES (Cal. Bar No. 155299)
MARGARET L. CARTER (Cal. Bar No.220637)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
      1300 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-0284/3541/7413
      Facsimile: (213) 894-6436
      E-mail:    Brandon.fox@usdoj.gov
                 Lizabeth.rhodes@usdoj.gov
                 Maggie.carter@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>              v.<br><br>PAUL TANAKA and<br>WILLIAM THOMAS CAREY,<br>   aka "Tom Carey,"<br><br>              Defendants. | No. CR 15-255-PA<br><br>GOVERNMENT'S REQUEST FOR JUDICIAL INQUIRY RE: CONFLICTS OF INTEREST; DECLARATION OF MARGARET L. CARTER; EXHIBITS |

      Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorney Margaret L. Carter, hereby files its request for a judicial inquiry regarding possible conflicts and potential conflicts of interest raised by the representation by Paul Hastings LLP of both defendant William Thomas Carey and James M. Sexton.

The government's request is supported by the attached memorandum of points and authorities, the attached Declaration of Margaret L. Carter, the exhibits thereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 19, 2015                    Respectfully submitted,

                                       STEPHANIE YONEKURA
                                       Acting United States Attorney

                                       ROBERT E. DUGDALE
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                       _____/s/_____
                                       MARGARET L. CARTER
                                       Assistant United States Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

**PAGES**

TABLE OF AUTHORITIES.............................................ii

I.    INTRODUCTION................................................1

II.   DISCUSSION..................................................2

    A.    Trial Courts Have Substantial Discretion To Evaluate
          Conflicts and Disqualify Counsel with Actual or
          Potential Conflicts, Even in Cases Where Clients Have
          Waived Conflict Claims.....................................2

    B.    Paul Hastings's Concurrent Representation of Both
          Defendant Carey and his Alleged Coconspirator Indicate
          Potential and Actual Conflicts of Interest................5

    C.    Because a Paul Hastings Attorney Elicited One of the
          Alleged False Declarations from Defendant Carey, He
          May Have a Conflict as a Sworn or Unsworn Witness........10

III. CONCLUSION.................................................11

**TABLE OF AUTHORITIES**

**PAGES**

**FEDERAL CASES**

Ayers v. Belmontes,
        549 U.S. 7 (2006)...........................................9

Belmontes v. Brown,
        414 F.3d 1094 (9th Cir. 2005)..............................9

Chugach Elec. Ass'n v. U.S. District Court,
        370 F.2d 441 (9th Cir. 1966)...............................8

Church v. Sullivan,
        942 F.2d 1501 (10th Cir. 1991).............................8

Cuyler v. Sullivan,
        446 U.S. 335 (1980)........................................3

Fitzpatrick v. McCormick,
        869 F.2d 1247 (9th Cir. 1989)..............................8

Garcia v. Bunnell,
        33 F.3d 1193 (9th Cir. 1994)...............................3

Lewis v. Mayle,
        391 F.3d 989 (9th Cir. 2004)...............................9

Mannhalt v. Reed,
        847 F.2d 576 (9th Cir. 1988).............................3, 7

Mickens v. Taylor,
        535 U.S. 162 (2004)........................................8

Thomas v. Municipal Court,
        878 F.2d 285 (9th Cir. 1989)...............................7

Trone v. Smith,
        621 F.2d 994 (9th Cir. 1980)...............................8

United States v. Baker,
        256 F.3d 855 (9th Cir. 2001)...............................3

United States v. Baker,
        10 F.3d 1374 (9th Cir. 1993).............................5, 7

United States v. Blount,
        291 F.3d 201 (2d Cir. 2002)................................3

United States v. DiFazio,
        899 F.2d 626 (7th Cir. 1990)..............................10

United States v. Elliot,
        463 F.3d 858 (9th Cir. 2006)...............................3

United States v. Henke,
      222 F.3d 633 (9th Cir. 2000)......................................3

United States v. Kenney,
      911 F.2d 315 (9th Cir. 1990)....................................4

United States v. Kerik,
      531 F. Supp. 2d 610 (S.D.N.Y. 2008).......................10, 11

United States v. Morando,
      628 F.2d 535 (9th Cir. 1980)....................................7

United States v. Nordby,
      225 F.3d 1053 (9th Cir. 2000)...................................5

United States v. Partin,
      601 F.2d 1000 (9th Cir. 1979)...................................4

United States v. Rahman,
      861 F.Supp. 266 (S.D.N.Y. 1994).................................11

United States v. Rewald,
      889 F.2d 836 (9th Cir. 1989).................................4, 5

United States v. Shwayder,
      312 F.3d 1109 (9th Cir. 2002)................................7, 8

United States v. Siegner,
      498 F. Supp. 282 (E.D. Penn. 1980)............................10

United States v. Sites,
      56 F.3d 1020 (9th Cir. 1995)....................................8

United States v. Voigt,
      89 F.3d 1050 (3d Cir. 1996).....................................7

Wheat v. United States,
      486 U.S. 153 (1988).......................................passim

Wood v. Georgia,
      450 U.S. 261 (1981).............................................3

**FEDERAL STATUTES**

18 U.S.C. § 1503................................................1

18 U.S.C. § 1623................................................1

18 U.S.C. § 371................................................1

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

On May 13, 2015, a federal Grand Jury returned an indictment in Case No. CR 15-255-PA against defendants Paul Tanaka and William Thomas Carey (charging them both with conspiracy to obstruct justice in violation of 18 U.S.C. § 371, and with obstruction of justice in violation of 18 U.S.C. § 1503(a), in connection with an alleged conspiracy to obstruct a federal investigation into civil rights and public corruption violations by members of the Los Angeles Sheriff's Department.  (Tanaka Docket No. 1.)  A federal grand jury had previously returned an indictment alleging similar facts in United States v. Thompson, Case No. CR 13-819-PA.  The defendants in this case are alleged to have conspired with the Thompson defendants.  In addition, defendant Carey is charged in this case with two counts of false declarations in violation of 18 U.S.C. § 1623, in connection with his testimony in two separate trials as a defense witness called by his alleged coconspirators.  (Tanaka Docket No. 1.)  Defendant Carey was arraigned on the indictment on May 14, 2015, at which time attorney Thomas P. O'Brien of Paul Hastings LLP ("Paul Hastings") appeared as his retained counsel of record.  (Tanaka Docket No. 20.)

Paul Hastings, however, also represents James Sexton ("Sexton"), defendant Carey's alleged coconspirator and a convicted defendant in United States v. Thompson.  (Thompson Docket No. 68.)[1]  Indeed, Paul Hastings called defendant Carey as a defense witness on behalf of Sexton during Sexton's trials and elicited one of the allegedly false

_____

[1] The docket sheet and relevant pleadings from the Thompson case are attached as Exhibits to the concurrently-filed Declaration of Margaret L. Carter ("Carter Decl.").

1

declarations with which defendant Carey is charged in this case. (Docket No. 1, Count 4.)  Paul Hastings has already taken numerous positions in the Thompson case that are likely in conflict with defendant Carey's best interests in this case, including arguing pretrial and at trial that Sexton was following lawful orders from superior officers including defendant Carey, and at sentencing that it would be unfair for Sexton to receive a custodial sentence when defendants Carey and Tanaka had not yet been indicted.  (See, e.g., Thompson Docket No. 107 (Motion to Dismiss), Thompson Docket No. 689 at 5 (Response to Gov't Sentencing Reply).)

Paul Hastings's concurrent representation of both defendant Carey and Sexton raises the specter of both actual and potential conflicts of interest.  Paul Hastings attorneys may also be subject to disqualification as potential sworn or unsworn witnesses because a Paul Hastings attorney elicited one of the alleged false declarations with which defendant Carey has been charged.  Accordingly, the government respectfully requests that the Court conduct an inquiry into possible potential and actual conflicts of interest posed by Paul Hastings's representation of defendant Carey.

**II.  DISCUSSION**

**A.    Trial Courts Have Substantial Discretion To Evaluate Conflicts and Disqualify Counsel with Actual or Potential Conflicts, Even in Cases Where Clients Have Waived Conflict Claims**

"[T]rial courts, when alerted by an objection from one of the parties, have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment."  Wheat v. United States, 486 U.S. 153, 161 (1988).  Thus, in situations where the court "knows or reasonably should know that a particular conflict [of interest] exists[,]" it has a duty to inquire

2

into the potential conflict of interest.  Cuyler v. Sullivan, 446 U.S. 335, 347 (1980); Garcia v. Bunnell, 33 F.3d 1193, 1199 (9th Cir. 1994).  "When the court is 'sufficiently apprised of even the possibility of a conflict of interest,' its initial obligation is to 'investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all.'" United States v. Blount, 291 F.3d 201, 211 (2d Cir. 2002).  Likewise, the government has a duty to bring the risk of a conflict of interest to the attention of the trial judge.  Mannhalt v. Reed, 847 F.2d 576, 583-84 (9th Cir. 1988).

Although the Supreme Court recognizes the Sixth Amendment right to be represented by one's preferred attorney, it has also made clear that "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."  Wheat, 486 U.S. at 159.  Indeed, a criminal defendant's Sixth Amendment right to the assistance of counsel includes an entitlement to "representation that is free from conflicts of interest," that is, to representation by an attorney who pursues the defendant's interest "single-mindedly," and whose strategic decisions are not influenced by obligations to others.  Wood v. Georgia, 450 U.S. 261, 271-72 (1981); see also United States v. Elliot, 463 F.3d 858, 867 (9th Cir. 2006) ("Few aspects of our criminal justice system are more vital to the assurance of fairness than the right to be defended by counsel, and this means counsel not burdened by a conflict of interest[.]") (citing United States v. Henke, 222 F.3d 633, 638 (9th Cir. 2000) (per curiam)); United States v. Baker, 256

3

F.3d 855 (9th Cir. 2001) (the Sixth Amendment right to effective assistance of counsel includes the right to conflict-free representation); United States v. Partin, 601 F.2d 1000, 1006 (9th Cir. 1979) (the Sixth Amendment includes "the right to be represented by counsel whose loyalties are undivided").

"The District Court must recognize a presumption in favor of [a defendant's] counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." Wheat, 486 U.S. at 164; see also United States v. Kenney, 911 F.2d 315, 321 (9th Cir. 1990). Although a party may attempt to waive his right to conflict-free representation, waiver does not automatically cure conflict problems because the federal courts "have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160; accord United States v. Rewald, 889 F.2d 836, 857, amended, 902 F.2d 18 (9th Cir. 1989). Trial courts also have "an institutional interest in the rendition of just verdicts in criminal cases," and in seeing that these verdicts "remain intact on appeal." Wheat, 486 U.S. at 160-61. By threatening these interests, "an actual or potential conflict of interest poses a serious challenge indeed to the integrity of the judicial process." Rewald, 889 F.2d at 857.

To protect these important interests, district courts have "substantial latitude" in determining whether to allow a criminal defendant to be represented by counsel burdened by a potential conflict of interest. Wheat, 486 U.S. at 163; Kenney, 911 F.2d at 319 ("The trial court must be given 'substantial latitude' in

refusing waivers of potential conflicts of interest"); see also Wheat, 486 U.S. at 164 ("The evaluation of the facts and circumstances of each case [raising potential conflicts] must be left primarily to the informed judgment of the trial court.").  Such substantial latitude is necessary because the district court's evaluation of both actual and potential conflicts is done "not with the wisdom of hindsight after the trial takes place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly."  Id. at 162.  Wheat's substantial latitude standard recognizes that a district court need not have perfect information nor need it wait until potential conflicts have ripened into actual conflicts.  Id. at 162-63.

In Wheat and in numerous other cases, therefore, courts frequently hold that a defendant may not waive his right to conflict-free counsel in the face of a serious potential conflict of interest. See, e.g., Wheat, 486 U.S. at 164; Rewald, 889 F.2d at 857-58; United States v. Baker, 10 F.3d 1374, 1399 (9th Cir. 1993) (despite waiver, court did not err by disqualifying attorney who previously represented government witness), overruled on other grounds by United States v. Nordby, 225 F.3d 1053 (9th Cir. 2000).

**B.    Paul Hastings's Concurrent Representation of Both Defendant Carey and his Alleged Coconspirator Indicate Potential and Actual Conflicts of Interest**

Here, Paul Hastings is attempting to concurrently represent two different coconspirators in two closely related cases.  This scenario raises a number of possible actual and potential conflicts.

First, the multiple representation of defendant Carey and Sexton raises the specter of divided loyalties, particularly because defendant Carey will likely adopt (or should at least explore with

the advice of conflict-free counsel) a defense that is inconsistent with the one that Paul Hastings advocated for Sexton at trial. Specifically, Sexton argued in the Thompson case that he was a "junior deputy" following orders from defendant Carey and other superiors.  (Carter Decl. ¶ 8.)  He specifically argued in his sentencing papers that he was less culpable that defendant Carey and deserved no time in custody, particularly when the two defendants in this case, Carey and Tanaka, had not yet been indicted.  (Carter Decl. ¶ 10; Thompson Docket No. 689 at 4-5.)  Because Paul Hastings continues to represent Sexton on appeal, Paul Hastings's representation of Sexton on appeal may be influenced by his divided loyalties as Sexton persists in these arguments, or chooses not to persist in them.  Defendant Carey, on the other hand, will likely place blame both up and down the chain of command, and may argue (or at least consider arguing with the advice of conflict-free counsel) that Sexton was aware of facts and took actions of which defendant Carey had no knowledge.  Moreover, Sexton has made various coconspirator statements that the government may seek to introduce at trial.  (Carter Decl. ¶ 12.)  Because they represent Sexton, Paul Hastings attorneys will be hamstrung in casting doubt upon Sexton and his statements in ways that other attorneys would not be.

Another set of loyalty conflicts could potentially arise if Sexton is ever retried on any of the charges in the Thompson case. In all three trials in the Thompson case, defendant Carey was called as a defense witness, including twice by Paul Hastings.  (Carter Decl. ¶ 7.)  If Sexton is ever retried, Paul Hastings will have to decide whether or not to call its other client, defendant Carey, as a witness.  Paul Hastings's duty of loyalty to defendant Carey may

prevent it from doing so, especially given that defendant Carey has been indicted for false declaration for his testimony in the previous Thompson trials.  Paul Hastings's duty of loyalty to defendant Carey will also prevent it from impeaching defendant Carey if he testifies inconsistently.  Either of these outcomes would in turn would be a breach of Paul Hastings's duty to zealously defend Sexton. See Shwayder, 312 F.3d at 1118; Baker, 10 F.3d 1374; United States v. Voigt, 89 F.3d 1050, 1078 (3d Cir. 1996) ("an[y] attorney who cross-examines former clients inherently encounters divided loyalties"); Thomas v. Municipal Court, 878 F.2d 285, 288 (9th Cir. 1989) ("Conflict of interest concerns arise when an attorney must prepare a case against, cross-examine, or impeach a former client on subject matter so closely connected with the subject matter of the earlier representation that confidences might be involved.") (citations and internal quotation marks omitted); Mannhalt, 847 F.2d at 580 (recognizing that an actual conflict can exist when an attorney represents both a defendant and a former client testifying as a witness at trial); United States v. Morando, 628 F.2d 535, 536 (9th Cir. 1980) (reversing district court's denial of defense counsel's request to withdraw based on counsel's prior representation of a witness).  Similarly, Paul Hastings will face divided loyalties in advising defendant Carey regarding any potential plea agreement with the government, because such a plea by defendant Carey would compromise defendant Carey's utility as a defense witness in any retrial of Sexton.

Second, there is a presumed danger that the multiple representation will result in disclosure of or inadvertent use by Paul Hastings of confidential communications learned from one client

in furtherance of the interests of the other.  It is well-established that such a danger presents possible conflicts of interest.  See <u>United States v. Sites</u>, 56 F.3d 1020, 1025 (9th Cir. 1995) (attorney is duty bound not to enter into a relationship where he would have to draw upon knowledge he obtained in the earlier relationship); <u>see also</u> <u>United States v. Shwayder</u>, 312 F.3d 1109, 1118 (9th Cir. 2002) (holding that even in a case of successive representation, "conflicts of interest may arise if the cases are substantially related or if the attorney reveals privileged communications of the former client or otherwise divides his loyalties") (citing <u>Fitzpatrick v. McCormick</u>, 869 F.2d 1247, 1252 (9th Cir. 1989)).  Establishing that confidences might be used against a former client does not require proof that confidences actually were disclosed by the former client to the attorney.  <u>Trone v. Smith</u>, 621 F.2d 994, 999 (9th Cir. 1980). Requiring such proof "would be improper as requiring the very disclosure the rule is intended to protect."  <u>Id.</u>  Accordingly, "[i]t is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification."  <u>Id.</u>; <u>see</u> <u>also</u>, e.g., <u>Chugach Elec. Ass'n v. U.S. District Court</u>, 370 F.2d 441, 444 (9th Cir. 1966) (making clear that any doubt about the existence of a conflict of interest must be resolved in favor of disqualification).

The danger of actual and potential conflicts is heightened in this case because this case and the <u>Thompson</u> case concern the same alleged criminal conspiracy with the same alleged coconspirators. Thus, this case presents "the high probability of prejudice" and the "difficulty of proving that prejudice."  <u>Mickens v. Taylor</u>, 535 U.S. 162, 175 (2004) (discussing concurrent representation of multiple defendants in the same case). See <u>also</u> <u>Church v. Sullivan</u>, 942 F.2d

8

1501, 1511 (10th Cir. 1991) ("[I]n the context of successive representations, we find it difficult to envision circumstances more fraught with inherent conflict than ... where the former representation was factually intertwined with the criminal defendant's case.").

Paul Hastings has informed the government that it has obtained conflict waivers from both defendant Carey and Sexton.[2]  (Carter Decl. ¶ 13.)  This alone is not dispositive.  In many cases involving multiple representation, the standard for a knowing and voluntary waiver cannot be met.  Where the defendant has not been sufficiently informed of the consequences of his waiver, the Ninth Circuit has repeatedly held the waiver to be invalid.  See, e.g., Lewis v. Mayle, 391 F.3d 989, 996-97 (9th Cir. 2004) (holding that the defendant's written waiver was not valid because the defendant did not consult with independent counsel and was not fully informed of potential consequences); Belmontes v. Brown, 414 F.3d 1094, 1118 (9th Cir. 2005) (defendant's waiver was invalid because he was not told that his attorney owed a continuing duty of loyalty to a former client whom the defendant claimed committed the murder), rev'd on other grounds by Ayers v. Belmontes, 549 U.S. 7 (2006).  Moreover, as stated above, district courts have an independent duty to ensure the fairness and appearance of fairness of legal proceedings.  E.g., Wheat, 486 U.S. at 160.

---

[2] Attorneys for the government have not seen any written waivers and have not been apprised of the circumstances under which any waivers were made.  (Carter Decl. ¶ 13.)

**C.    Because a Paul Hastings Attorney Elicited One of the Alleged False Declarations from Defendant Carey, He May Have a Conflict as a Sworn or Unsworn Witness**

Another category of potential conflicts arises because it was a Paul Hastings attorney who elicited one of the alleged false declarations with which defendant Carey is now charged. Paul Hastings attorneys may have had conversations with defendant Carey in unprivileged witness preparation sessions that give them personal knowledge of the events that led defendant Carey to make the false declaration. They may also have information that bears upon defendant Carey's understanding of the question that elicited the false declaration, defendant Carey's knowledge of the falsity of his answer, or his state of mind in giving it. Paul Hastings attorneys are therefore potential witnesses, either for the government or for defendant Carey. See, e.g., United States v. DiFazio, 899 F.2d 626, 631 (7th Cir. 1990) (attorney who represented defendant during bankruptcy in which alleged false statements were made risked becoming sworn or unsworn witness in subsequent criminal case); United States v. Kerik, 531 F. Supp. 2d 610, 614–16 (S.D.N.Y. 2008). Indeed, even in cases where it is unclear whether an attorney possesses relevant personal knowledge, he may still be subject to disqualification because it is "entirely possible" that a different defense counsel might wish to call the attorney to testify on the client's behalf. E.g., United States v. Siegner, 498 F. Supp. 282, 286 (E.D. Penn. 1980) (noting that attorney's professional judgment might be clouded by his and his client's desire that he remain on the case). Even if no Paul Hastings attorney is ever called as a witness, their personal knowledge of the events could put them in the role of an unsworn witness because the jury may make inferences from

10

their inability to comment on their own participation in eliciting the declaration.  See, e.g., Kerik, 531 F. Supp. 2d at 616; United States v. Rahman, 861 F.Supp. 266, 278-79 (S.D.N.Y. 1994).

**III. CONCLUSION**

Because of its concerns regarding possible actual and potential conflicts raised by the representation by defendant Carey's counsel, Paul Hastings LLP, of both defendant Carey and James M. Sexton, as well as by the role of a Paul Hastings attorney in eliciting one of the allegedly false declarations with which defendant Carey is charged, the government respectfully requests that the Court conduct an inquiry into possible potential and actual conflicts of interest.

Dated: May 19, 2015                     Respectfully submitted,

                                        STEPHANIE YONEKURA
                                        Acting United States Attorney

                                        ROBERT E. DUGDALE
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                        _____/s/_____
                                        MARGARET L. CARTER
                                        Assistant United States Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

11