# Exhibit B

FILED

2013 NOV 20 PM 2: 39

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2012 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　　　　v.<br><br>GREGORY THOMPSON,<br>STEPHEN LEAVINS,<br>GERARD SMITH,<br>MICKEY MANZO,<br>JAMES SEXTON,<br>SCOTT CRAIG, and<br>MARICELLA LONG,<br><br>　　　　　　Defendants. | CR No. **CR 13 00819**<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy;<br>18 U.S.C. § 1503(a): Obstruction<br>of Justice; 18 U.S.C. § 1001:<br>False Statements] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1. The Los Angeles County Sheriff's Department ("LASD") was a local law enforcement agency within the Central District of California. Among other things, the LASD was responsible for managing the Los Angeles County Jails, including the Los Angeles County Men's Central Jail ("MCJ") and the Los Angeles County

//

Case 2:15-cr-00255-PA   Document 31-3   Filed 05/19/15   Page 3 of 19   Page ID
#:216
Case 2:13-cr-00819-PA   Document 31-3   Filed 11/20/13   Page 2 of 18   Page ID #:2

Twin Towers Correctional Facility ("TTCF"), both of which were located in the City of Los Angeles.

2.     The LASD operated computer databases that, among other things, tracked the location of inmates housed in the Los Angeles County Jails and shared the location of those inmates with law enforcement agencies, including federal law enforcement agencies (the "LASD computer databases").

3.     Federal grand juries investigated allegations of violations of federal criminal law in secret proceedings. Federal grand juries issued grand jury subpoenas to obtain documents and testimony from witnesses.

4.     The Federal Bureau of Investigation ("FBI") was a federal law enforcement agency that investigated allegations of violations of federal criminal laws, including those allegedly committed by employees of local law enforcement agencies such as the LASD.  Some of these investigations included allegations of: (a) civil rights abuses, such as deputies using excessive force on inmates in jails; and (b) public corruption offenses, such as deputies smuggling contraband into jails in exchange for bribes. The FBI often conducted investigations in a covert manner so that the subjects of the investigations would be unaware of the existence, manner, and extent of the investigations. Additionally, the FBI often acted as an arm of federal grand juries by, among other things, serving grand jury subpoenas, obtaining evidence to be presented to the grand jury, and interviewing witnesses to alleged crimes being investigated by the grand jury.

//

2

Ex. B-112

Case 2:15-cr-00255-PA  Document 31-3  Filed 05/19/15  Page 4 of 19  Page ID
Case 2:13-cr-00819-PA  Document 1-3  Filed 11/20/13  Page 3 of 18  Page ID #:3
#:217

5.  Federal grand juries obtained the testimony of inmates held in local jails through Writs of Habeas Corpus, which were federal court orders signed by federal district court judges.

6.  The United States Marshals Service ("USMS") was a federal law enforcement agency that, among other duties, helped federal grand juries obtain the testimony of inmates located at local jails.  The USMS served Writs of Habeas Corpus on entities operating local jails, including the LASD, and arranged for the transportation of inmates scheduled to testify before federal grand juries.

7.  Defendant GREGORY THOMPSON ("THOMPSON") was an LASD lieutenant who oversaw its Operation Safe Jails Program and its Jail Investigations Unit, which was tasked with conducting investigations within the Los Angeles County Jails.

8.  Defendants GERARD SMITH ("SMITH"), MICKEY MANZO ("MANZO"), and JAMES SEXTON ("SEXTON") were LASD deputies assigned to the Operation Safe Jails Program.

9.  Defendant STEPHEN LEAVINS ("LEAVINS") was an LASD lieutenant within its Internal Criminal Investigations Bureau, which was tasked with investigating allegations of local crimes committed by the LASD's personnel.

10.  Defendants SCOTT CRAIG ("CRAIG") and MARICELLA LONG ("LONG") were LASD sergeants within the Internal Criminal Investigations Bureau.

11.  Inmate AB was an inmate in the custody of the LASD at the MCJ who was a cooperating witness in the investigation of alleged federal civil rights and public corruption violations committed and being committed by employees of the LASD working

3

Case 2:15-cr-00255-PA Document 31-3 Filed 05/19/15 Page 5 of 19 Page ID
#:218
Case 2:13-cr-00819-PA Document 31-3 Filed 11/20/13 Page 4 of 18 Page ID #:4

at the Los Angeles County Jails. The investigation concerned the alleged use of excessive force by LASD deputies against inmates within the MCJ and TTCF and the alleged smuggling of contraband by LASD deputies into the MCJ and TTCF in exchange for bribes (the "Federal Investigation"). Specifically, Inmate AB was assisting in a covert public corruption investigation of LASD Deputy Gilbert Michel ("Deputy Michel"), who worked at the MCJ. Additionally, Inmate AB was providing information about alleged federal civil rights offenses being committed by employees of the LASD working at the MCJ who were allegedly abusing inmates.

12. Special Agent LM and Special Agent DL were Special Agents with the FBI. Special Agent LM and Special Agent DL were among the FBI agents participating in the Federal Investigation.

13. As part of the Federal Investigation, the FBI conducted an undercover operation to determine whether Deputy Michel would accept a bribe to provide Inmate AB with a cellular phone. In or about late July 2011, Deputy Michel accepted a bribe and provided Inmate AB with a cellular phone. On or about August 8, 2011, the LASD discovered that Inmate AB had in Inmate AB's possession the cellular phone that Deputy Michel had smuggled into the MCJ in return for a bribe.

14. By no later than in or about August 2011, defendants THOMPSON, LEAVINS, SMITH, MANZO, SEXTON, CRAIG, and LONG were aware that the FBI and a federal grand jury were conducting an investigation of the LASD's employees within the Los Angeles County Jails and that Inmate AB was an informant assisting in the Federal Investigation.

4

Ex. B 114

15.   On or about August 25, 2011, a federal judge ordered Inmate AB's appearance as a witness before a federal grand jury as part of the Federal Investigation.  The USMS served this order on the LASD on or about August 25, 2011.

16.   By no later than on or about September 8, 2011, defendants LEAVINS, CRAIG, and LONG were aware that FBI Special Agents could neither be arrested nor prosecuted for violations of state or local laws for acts engaged in while carrying out their duties as federal agents.

17.   By no later than on or about September 26, 2011, defendants LEAVINS, CRAIG, and LONG were aware that there was no probable cause to believe that Special Agent LM had acted outside of her authority as an FBI Special Agent by introducing a cellular phone to Inmate AB through Deputy Michel in an undercover operation designed to determine whether Deputy Michel would smuggle contraband into the MCJ in return for a bribe.

18.   These Introductory Allegations are hereby incorporated into each count of this Indictment as though set forth fully therein.

5

Ex. B-115

COUNT ONE

[18 U.S.C. § 371]

A.    OBJECT OF THE CONSPIRACY

Beginning no later than on or about August 18, 2011, and continuing through on or about October 3, 2011, in Los Angeles County, within the Central District of California, defendants GREGORY THOMPSON, STEPHEN LEAVINS, GERARD SMITH, MICKEY MANZO, JAMES SEXTON, SCOTT CRAIG, and MARICELLA LONG, together with others known and unknown to the Grand Jury, knowingly conspired to corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede, the due administration of justice, in violation of Title 18, United States Code, Section 1503(a).

B.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished in substance as follows:

1.    Defendants THOMPSON, LEAVINS, SMITH, MANZO, and SEXTON would attempt to prevent the FBI from interviewing or contacting Inmate AB knowing that Inmate AB was being utilized by the FBI to investigate illegal acts allegedly being committed by LASD personnel at the MCJ.

2.    Defendants THOMPSON, LEAVINS, SMITH, MANZO, and SEXTON would move Inmate AB from the MCJ to other locations to hide him from the FBI, the USMS, and the federal grand jury.

3.    Defendants THOMPSON, LEAVINS, SMITH, MANZO, and SEXTON would impede any attempt by the FBI and the USMS to find Inmate AB through record searches, including by:

6

Ex. B-116

a. Obtaining Inmate AB's physical file, called a "records jacket," from the LASD's records center so the records center would have no physical record showing that Inmate AB was in the LASD's custody.

b. Making false entries into the LASD computer databases to make it appear as though Inmate AB had been released from the LASD's custody when, in fact, Inmate AB remained hidden in the LASD's custody.

c. Re-booking Inmate AB in the LASD computer databases under false names, with fictitious booking information, and without fingerprinting Inmate AB, so that Inmate AB's true name would not be connected to this fictitious booking information.

4. Defendants LEAVINS, SMITH, CRAIG, and LONG would conduct interviews of Inmate AB and various employees of the LASD to attempt to determine the manner and extent of the Federal Investigation.

5. Defendants LEAVINS, CRAIG, and LONG would attempt to convince potential witnesses and informants not to cooperate with the Federal Investigation, including by:

a. Informing and suggesting to individuals, including Deputy Michel, that the FBI was and would be lying to them, manipulating them, blackmailing them, and threatening them; and

b. Suggesting to Inmate AB that the FBI had abandoned him by informing Inmate AB that the FBI had not come back for him.

//

7

Case 2:15-cr-00255-PA    Document 31-3    Filed 05/19/15    Page 9 of 19    Page ID
Case 2:13-cr-00819-PA    Document 31-3    Filed 11/20/13    Page 8 of 18    Page ID
#:222

6.   Defendants LEAVINS, CRAIG, and LONG would attempt to compel the FBI to disclose the manner and extent of the Federal Investigation, including by attempting to obtain a court order from a California Superior Court in the County of Los Angeles seeking to compel the FBI to provide the LASD with, among other things:

(a)   Investigative records, reports, and notes of all investigations involving the Los Angeles County Jail system since August 5, 2009; and

(b)   The true identity of any agents and the current assignment of those involved in any investigation involving the Los Angeles County Jail system since August 5, 2009.

7.   After the California Superior Court in the County of Los Angeles denied this proposed court order, defendants CRAIG and LONG would attempt to intimidate Special Agent LM and to coerce Special Agent LM into providing details concerning the Federal Investigation by confronting her outside of her home and falsely informing her that defendant CRAIG was in the process of swearing out a declaration for a warrant for her arrest.

8.   Defendant LONG would falsely inform Special Agent LM's supervisor that there was going to be a warrant issued for Special Agent LM's arrest.

C.   OVERT ACTS

In furtherance of the conspiracy and to accomplish the object of the conspiracy, defendants THOMPSON, LEAVINS, SMITH, MANZO, SEXTON, CRAIG, and LONG, and others known and unknown to the Grand Jury, committed various overt acts within the Central

//

8

Ex. B-118

District of California, including but not limited to the following:

1.    On or about August 18, 2011, defendant THOMPSON instructed an employee of the LASD to prohibit "outside" law enforcement from meeting with Inmate AB.

2.    On or about August 23, 2011, after learning that the FBI had interviewed Inmate AB at the MCJ and that the LASD had terminated the interview, defendant LEAVINS informed Inmate AB that he would be moved to a different location.

3.    On or about August 23, 2011, defendant THOMPSON asked a deputy assigned to the MCJ's medical ward whether there was an open cell toward the back of the medical ward.

4.    On or about August 23, 2011, defendants SMITH and MANZO moved Inmate AB to a cell in the MCJ's medical ward.

5.    On or about August 23, 2011, defendants SMITH and MANZO stood guard outside of Inmate AB's cell in the medical ward.

6.    On or about August 24, 2011, defendants THOMPSON, SMITH, and MANZO held a meeting with LASD deputies who were to be assigned to stand guard outside of Inmate AB's cell at all times.

7.    On or about August 24, 2011, defendant THOMPSON directed LASD Deputy A to obtain Inmate AB's records jacket.

8.    On or about August 25, 2011, defendant THOMPSON sent an email to LASD employees stating that the FBI would need approval before interviewing any inmate in LASD custody.

9.    On or about August 25, 2011, defendant THOMPSON caused LASD employees to use intimidation to convince the LASD's

9

Ex. B-119

records center employees to create false entries in the LASD computer databases to show that Inmate AB had been released from the custody of the LASD when, in fact, Inmate AB remained in the LASD's custody.

10. On or about August 25, 2011, defendants THOMPSON, SMITH, MANZO, and SEXTON caused Inmate AB to be booked in the LASD computer databases under the name "John Rodriguez" and with fictitious information, including a false race, a fake date of birth, and with the false statements asserting that Inmate AB had refused to provide his social security number and fingerprints.

11. On or about August 25, 2011, defendants THOMPSON, LEAVINS, SMITH, and MANZO caused Inmate AB to be moved from the MCJ to the LASD's San Dimas station.

12. On or about August 26, 2011, defendant THOMPSON caused a high ranking employee of the LASD's MCJ to instruct MCJ lieutenants and sergeants that:

> If any federal law enforcement agency comes to MCJ with an inmate removal order, visitation order, or ANY OTHER order of the court you shall receive the order and advise the federal officer that before you can proceed, you have to submit the order to the Department's legal advisor for review. DO NOT RELEASE THE INMATE OR ALLOW CONTACT.

13. On or about August 26, 2011, defendants THOMPSON, SMITH, MANZO, and SEXTON caused the LASD computer databases to falsely show that "John Rodriguez" had been released pursuant to a court order.

14. On or about August 26, 2011, defendant LONG informed Inmate AB that the FBI had not "come back for" Inmate AB.

//

10

Ex. B-120

15. On or about August 26, 2011, defendant SEXTON stood guard outside of Inmate AB's cell at the LASD's San Dimas station.

16. In or about late August 2011, defendant SMITH told LASD Deputy A that the FBI was on its way to take custody of Inmate AB and directed LASD Deputy A to physically stop the FBI from taking custody of Inmate AB.

17. On or about August 30, 2011, defendants LEAVINS and CRAIG informed Deputy Michel that the FBI was manipulating, blackmailing, and threatening him in an attempt to convince Michel to be a witness in the Federal Investigation.

18. On or about September 2, 2011, defendants CRAIG and LONG caused the LASD to conduct surveillance of Deputy Michel to determine whether the FBI was following him.

19. On or about September 2, 2011, defendants THOMPSON, SMITH, and MANZO caused Inmate AB to be booked in the LASD computer databases under the name "Chris Johnson" and with fictitious information, including false statements asserting that Inmate AB refused to provide his social security number and fingerprints.

20. On or about September 8, 2011, defendant CRAIG presented a proposed court order to a California Superior Court judge in Los Angeles County in an attempt to compel the FBI to disclose information related to the Federal Investigation.

21. On or about September 13, 2011, defendants CRAIG and LONG caused the LASD to conduct surveillance of Special Agent LM.

//

22. On or about September 14, 2011, defendants CRAIG and LONG caused the LASD to conduct surveillance of Special Agent LM.

23. On or about September 23, 2011, defendants CRAIG and LONG caused the LASD to conduct surveillance of Special Agent LM.

24. On or about September 26, 2011, defendants CRAIG and LONG confronted Special Agent LM outside of her residence and falsely informed her that:

(a) Special Agent LM was a named suspect in a felony complaint; and

(b) Defendant CRAIG was in the process of swearing out a declaration for a warrant for the arrest of Special Agent LM.

25. On or about September 26, 2011, defendant LONG falsely informed Special Agent LM's supervisor at the FBI that there was going to be a warrant issued for Special Agent LM's arrest and that the arrest warrant could be issued as soon as the next day.

26. On or about September 28, 2011, defendants CRAIG and LONG caused the LASD to conduct surveillance of Special Agent LM.

27. On or about September 28, 2011, defendants CRAIG and LONG caused the LASD to conduct surveillance of Special Agent DL.

28. On or about September 29, 2011, defendants CRAIG and LONG caused the LASD to conduct surveillance of Special Agent DL.

12

Ex. B-122

COUNT TWO

[18 U.S.C. § 1503(a)]

From on or about August 25, 2011, to on or about September 12, 2011, defendants GREGORY THOMPSON, GERARD SMITH, MICKEY MANZO, and JAMES SEXTON corruptly endeavored to influence, obstruct, and impede the due administration of justice by: (a) attempting to prevent the FBI from interviewing Inmate AB; and (b) hiding Inmate AB from the FBI, USMS, and the federal grand jury.

13

Case 2:13-cr-00819-PA    Document 1    Filed 11/20/13    Page 14 of 15    Page ID #:14

COUNT THREE

[18 U.S.C. § 1503(a)]

From on or about August 25, 2011, to on or about September 26, 2011, in Los Angeles County, within the Central District of California, defendant STEPHEN LEAVINS corruptly endeavored to influence, obstruct, and impede the due administration of justice by: (a) hiding Inmate AB from the FBI, USMS, and the federal grand jury; (b) convincing and attempting to convince witnesses and potential witnesses not to cooperate with the FBI; and (c) authorizing and directing LASD Sergeants Scott Craig and Maricella Long to approach Special Agent LM outside of her home in an attempt to cause the FBI to disclose the nature and extent of the Federal Investigation.

14

Ex. B-124

Case 2:13-cr-00819-PA Document 1 Filed 11/20/13 Page 15 of 18 Page ID #:15

COUNT FOUR

[18 U.S.C. § 1503(a)]

From on or about August 25, 2011, to on or about October 3, 2011, in Los Angeles County, within the Central District of California, defendants SCOTT CRAIG and MARICELLA LONG corruptly endeavored to influence, obstruct, and impede the due administration of justice by: (a) convincing and attempting to convince witnesses and potential witnesses not to cooperate with the FBI; (b) approaching Special Agent LM outside of her home and threatening to arrest her; and (c) informing Special Agent LM's supervisor that there was going to be a warrant issued for Special Agent LM's arrest and that the arrest warrant could be issued as soon as the next day.

Ex. B-125

COUNT FIVE

[18 U.S.C. § 1001(a)(2)]

On or about September 26, 2011, in Los Angeles County, within the Central District of California, in a matter within the jurisdiction of the executive branch of the government of the United States, namely, the FBI and the United States Attorney's Office for the Central District of California, defendant SCOTT CRAIG knowingly and willfully made the following materially false and fictitious statements and representations to Special Agent LM:

1. Defendant CRAIG falsely stated that Special Agent LM was a named suspect in a felony complaint. In fact, as defendant CRAIG knew, Special Agent LM was not a named suspect in a felony complaint; and

2. Defendant CRAIG falsely stated that he was in the process of swearing out a declaration for a warrant for Special Agent LM's arrest. In fact, as defendant CRAIG knew, he was not in the process of swearing out a declaration for a warrant for Special Agent LM's arrest.

16

Ex. B-126

Case 2:13-cr-00819-PA    Document 1    Filed 11/20/13    Page 17 of 18    Page ID #:17

COUNT SIX

[18 U.S.C. § 1001(a)(2)]

On or about September 26, 2011, in Los Angeles County, within the Central District of California, in a matter within the jurisdiction of the executive branch of the government of the United States, namely, the FBI and the United States Attorney's Office for the Central District of California, defendant MARICELLA LONG knowingly and willfully made the following materially false and fictitious statements and representations to the FBI:

1.   Defendant LONG falsely stated that there was going to be a warrant issued for Special Agent LM's arrest.  In fact, as defendant LONG knew, there was not going to be a warrant issued for Special Agent LM's arrest; and

2.   Defendant LONG falsely stated that a warrant for Special Agent LM's arrest could be issued as soon as the next

//
//
//
//
//
//
//
//
//
//
//
//

17

day.  In fact, as defendant LONG knew, no warrant for Special Agent LM's arrest would be issued on September 27, 2011.

A TRUE BILL

/S/
_____
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section

BRANDON D. FOX
LIZABETH A. RHODES
MARGARET L. CARTER
Assistant United States Attorneys
Public Corruption and Civil Rights Section

18

Ex. B-128