# Exhibit D

THOMAS P. O'BRIEN (SB# 166369)
thomasobrien@paulhastings.com
NICHOLAS J. BEGAKIS (SB# 253588)
nickbegakis@paulhastings.com
KATHRYN C. WANNER (SB# 269310)
kathrynwanner@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Attorneys for Defendant
JAMES SEXTON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GREGORY THOMPSON, et al.,<br><br>Defendants. | CASE NO. CR 13-819-PA<br><br>**DEFENDANT SEXTON'S REDACTED RESPONSE TO GOVERNMENT'S REPLY TO DEFENDANT'S SENTENCING POSITION**<br><br>Sentencing Date: December 15, 2014<br>Time: 8:30 a.m.<br>Judge: Hon. Percy Anderson |

REDACTED RESPONSE ISO DEFENDANT
SEXTON'S SENTENCING POSITION
Ex. D-163

Defendant James Sexton, by and through his counsel of record, hereby submits the following response in further support of his sentencing position. Defendant Sexton's position is based upon the attached memorandum of points and authorities, the previously filed Sentencing Position and supporting exhibits, the files, records and transcripts in this case, and such further evidence and argument as the Court may permit. Defendant Sexton and his counsel reserve all rights to make further remarks at the time of sentencing pursuant to Federal Rule of Criminal Procedure 32(i).

DATED: December 11, 2014     THOMAS P. O'BRIEN
                             NICHOLAS J. BEGAKIS
                             KATHRYN C. WANNER
                             PAUL HASTINGS LLP


                             By:_____/s/_____
                                        Nicholas J. Begakis

                             Attorneys for Defendant
                             JAMES SEXTON

Defendant Sexton submits this brief Response to the Government's recently filed Reply regarding sentencing (Docket No. 682) in an effort to clarify certain misstatements therein.

The Government inexplicably begins its Reply by, as it did in its first sentencing filing, emphasizing the wealth of Defendant Sexton's maternal grandfather.[1] Beyond the obvious fact that a family member's hard earned success is not a sentencing factor to be considered under 18 U.S.C. § 3353, the Government fails to acknowledge the more telling point that Defendant Sexton has always shunned a path towards a much easier life to instead dedicate his life to public service. Defendant Sexton worked hard in the Boy Scouts of America in his youth and achieved the highest rank of Eagle Scout, a rare award that is only earned after years of work to help others. Ex. A, p. 3. Upon high school graduation, he chose to enlist in the United States Army Reserves and completed a grueling year in service to his country at the United States Military Academy Preparatory School. *Id.* pp. 3-4. After completing his higher education, Defendant Sexton did not choose a lucrative career in the private sector, but instead chose to pursue a career in law enforcement in order to continue to help society. Defendant Sexton has never once denied that he made a horrendous decision to follow the questionable orders of his superiors regarding inmate Anthony Brown when he should have chosen a different path, a poor decision that he acknowledged during the very first meeting with the FBI. But when considering the choices Defendant made to serve the public up to that point as a deputy, as well as his repeated attempts to assist the federal government following that multi-week long mistake, Defendant Sexton respectfully

---

[1] Defendant Sexton's maternal grandfather, Leroy McAbee, served in the Korean War and rose to the rank of Staff Sergeant in the Corps of Engineers. Upon leaving the service, Mr. McAbee began a construction company, and after decades of hard work, achieved financial success. *See* Ex. A, Letter to Probation officer A. Berg at p. 2.

asks the Court to consider that he has repeatedly chosen to selflessly serve others instead of himself.

Like nearly every other deputy, Defendant Sexton began his career at the Los Angeles County Sheriff's Department ("LASD") working in custody facilities. No one can seriously dispute that in his capacity as an OSJ deputy, Defendant Sexton operated daily in dangerous conditions seeking to gather intelligence from violent street gang members in an effort to assist law enforcement personnel in solving crimes. Defendant Sexton contributed to the best of his abilities in this regard and "was courteous, responsive and responsible and always fulfilled his responsibilities with integrity." *See* Ex. B, Letter from Assistant Head Deputy District Attorney Phil Stirling. Deputy Sexton's efforts and those of his OSJ colleagues "assisted in solving hundreds of gang related homicides." Ex. C, Commendation from Los Angeles Chief of Police Charlie Beck. The Government's attempt to paint Defendant Sexton as a spoiled child minimizes these significant contributions to society without basis and without any relevance to sentencing considerations.

In its Reply, the Government also asserts that the value of Defendant Sexton's voluntary cooperation with the federal government at personal significant risk was almost non-existent. Significantly, this claim is starkly contradicted by the Government itself. On December 11, 2012, in a meeting between Defendant Sexton, his counsel and the Government, Government counsel highlighted the extent of Defendant Sexton's cooperation and noted how helpful Defendant Sexton's assistance had been to the United States:

-2-

REDACTED RESPONSE ISO DEFENDANT
SEXTON'S SENTENCING POSITION
Ex. D-166

███████████████████████████

Ex. I filed concurrently herewith at p. 1, December 11, 2012 notes of FBI Special Agent David Dahle, memorializing a statement made by AUSA Rhodes to Defendant Sexton and his then-attorney Mays Jemison (emphasis added). The Government's current assertion that Defendant Sexton's assistance was insignificant and should not be considered by the Court at sentencing is contrary to the Government's express position made in the midst of its investigation into LASD. *See also* Ex. J, FBI 302s.

Likewise, the Government's assertion that "Defendant's inculpatory grand jury statements make him similarly situated to three other defendants" is demonstrably untrue based upon the various defendants' testimony and the procedure of this case. Defendant Sexton is the only defendant in this case that, clearly to his detriment, was completely forthright regarding his own and other law enforcement officials' criminal culpability starting from his very first meeting with the Government. During multiple meetings with the FBI and before the grand jury, only Defendant Sexton accepted full responsibility for his conduct and provided intricate details regarding the criminal actions taken by himself and other LASD personnel. Not a single other defendant who testified before the grand jury admitted to any wrongdoing whatsoever. It was Defendant Sexton alone who openly and repeatedly related his own and other officers' criminal culpability before the grand jury, which undoubtedly assisted the grand jurors in reaching their decision to indict all seven defendants. The Government cannot now seriously equate the substance and value of Defendant Sexton's statements before the grand jury with those of the other defendants; otherwise, Defendant Sexton would have

been arraigned alongside the co-defendants and Defendant Sexton's jury trial would not have been the only one severed due to *Aranda-Bruton* issues. Although Defendant Sexton chose to exercise his constitutional right to proceed to trial, that decision does not minimize his early contributions of substantial assistance to the Government's case and the grand jury by providing documents, information, and sworn testimony that ultimately formed the basis of seven indictments and convictions, including his own.

In a similar vein, the Government's argument that threats against Defendant Sexton were exaggerated and not valid rings hollow. First, it is axiomatic in federal civil rights and corruption investigations that a local law enforcement officer that provides incriminating information against fellow officers puts his own safety in jeopardy. For that reason, it is often challenging for the Government to find an officer willing to "cross the thin blue line." Defendant Sexton was such an officer, and provided information to the Government at great personal risk. This fact was acknowledged by the Government in part by providing him with a cellular telephone to facilitate his contacts with the FBI and counsel for the Government. The Government's commendable concerns for Defendant Sexton's safety were further demonstrated when the Government agreed to the unprecedented step of allowing Defendant Sexton to maintain possession of two firearms for self-defense following his arraignment on felony charges in this case and through the conclusion of the second jury trial. The Government's current position that asking Defendant Sexton to smuggle documents out of LASD and provide incriminating information against other uniformed officers was anything but dangerous is without support.

Finally, the Government dismisses any value of Defendant Sexton's "recognition of wrongdoing" in sentencing as it was on his own terms. Once again, Defendant Sexton has never denied that it was wrong to participate in the various movements of inmate Anthony Brown. Not once. But the Government fails to acknowledge that numerous other LASD deputies engaged in exactly the same

-4-

REDACTED RESPONSE ISO DEFENDANT
SEXTON'S SENTENCING POSITION
Ex. D-168

conduct as Deputy Sexton, admitted no wrongdoing, and were never charged with any crime.  The duty schedule set forth in Trial Exhibit 7 (which was not exhaustive), indicates that Deputies Thompson, Pearson, Lane, Kirk, Eiland, Crumlish, Castillo, Haley, Rathbun, Lane, Ortiz, and Colon guarded Inmate Brown.  None of them were indicted.  Deputy Bonner, who testified at Defendant Sexton's second trial, exchanged emails with Lieutenant Thompson regarding removing Inmate Brown from the Computer.  Trial Exhibit 14.  Deputy Rathbun was in possession of Inmate Brown's records jacket and testified before the grand jury that he was told that the Government was looking for Inmate Brown.  Records clerk Gasat Academia testified that he inputted name changes into the computer at the insistence of deputies (not Defendant Sexton) and a Lieutenant.  Perhaps most significantly, Former Undersheriff Paul Tanaka and Captain Tom Carey both testified that the orders given were lawful and that they expected them to be followed.  None of these people have been indicted in the year following the instant case filing.  Defendant Sexton could have, and should have, made the difficult choice to sacrifice his job and report the suspected criminal actions immediately to the FBI, and he will forever suffer for making the wrong decision, but his punishment should reflect the fact that numerous other similarly situated individuals who never stepped up and admitted to wrongdoing will not be punished at all.

The Government correctly states that Defendant Sexton is the least culpable defendant, and has previously told Defendant Sexton that his cooperation was "very helpful." Ex. I p. 1.  "[T]he punishment should fit the offender and not merely the crime.'" *Pepper v. United States*, 562 U.S. __, 131 S. Ct. 1229, 1239-1240 (2011), quoting *Koon v. United States*, 518 U.S. 81, 113 (1996), quoting *Williams v. People of the State of New York*, 337 U.S. 241, 247 (1949).

Defendant Sexton's serious lapse in judgment in deciding to follow orders he believed were wrong, despite no similar acknowledgment from a single leader who

-5-

issued such orders starting with the Sheriff himself, has resulted in felony convictions that will forever bar him from serving the public in his chosen career. After wrestling with that wrong decision to 'just go along' instead of immediately reporting that conduct, Defendant Sexton later risked his life to assist the Government in its investigation into himself and other LASD personnel, and provided information to assist prosecutors on numerous occasions. Defendant Sexton's service to the Boy Scouts of America, United States Army Reserves, and LASD was always focused on helping others, and his service to the community will continue upon his release from federal prison. Given the totality of the circumstances, a sentence of not more than six (6) months is respectfully requested.

DATED: December 11, 2014

THOMAS P. O'BRIEN
NICHOLAS J. BEGAKIS
KATHRYN C. WANNER
PAUL HASTINGS LLP


By:                    /s/
                  Nicholas J. Begakis

Attorneys for Defendant
JAMES SEXTON