EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
BRANDON D. FOX (Cal. Bar No. 290409)
Assistant United States Attorney
Chief, Public Corruption and Civil Rights Section
LIZABETH A. RHODES (Cal. Bar. No. 155299)
Assistant United States Attorney
Public Corruption and Civil Rights Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-0284
    Facsimile:  (213) 894-6436
    E-mail:    Brandon.Fox@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 15-255-PA |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT WILLIAM THOMAS CAREY |
| v. | |
| WILLIAM THOMAS CAREY, | |
| Defendant. | |

1.   This constitutes the plea agreement between WILLIAM THOMAS CAREY ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Count Four of the indictment in United States v. CAREY, CR No. 15-255-PA, which charges defendant with making false declarations in violation of 18 U.S.C. § 1623.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

3.   Defendant further agrees to cooperate fully with the USAO, the Federal Bureau of Investigation, and, as directed by the USAO, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.  This cooperation requires defendant to:

a.    Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b.    Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c.    Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

4.    For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement or pursuant to letter agreements previously entered into by the parties dated December 28, 2012, and August 12, 2015; and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

### THE USAO'S OBLIGATIONS

5.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable

3

Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.    To seek a sentence of no more than the high end of the applicable Sentencing Guidelines range.

6.    The USAO further agrees:

a.    Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the USAO, any Cooperation Information. Defendant agrees, however, that the USAO may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

b.    Not to use Cooperation Information against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the

4

sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable guideline range or the sentence to be imposed. Defendant understands, however, that Cooperation Information will be disclosed to the probation office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

c.   In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d.   Defendant understands that the USAO agreeing to dismiss the remaining counts against defendant is in at least partial consideration for defendant complying with his obligations under paragraphs 2 and 3 above and providing substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"). If the USAO determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and is entitled to a further reduction in his guidelines range based on defendant's substantial assistance, to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a sentence within this reduced range.

<u>DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION</u>

7.   Defendant understands the following:

a.   Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement,

5

obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b.   Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c.   Defendant cannot withdraw defendant's guilty plea if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

d.   At this time the USAO makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide will entitle defendant to a further reduction in his guidelines range pursuant to U.S.S.G § 5K1.1.  The decision whether defendant is entitled to a further reduction in his guidelines range pursuant to U.S.S.G. § 5K1.1 will rest solely within the exclusive judgment of the USAO.

e.   The USAO's determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

## NATURE OF THE OFFENSE

8.   Defendant understands that for defendant to be guilty of the crime charged in Count Four, that is, making false statements, in violation of Title 18, United States Code, Section 1623, the following must be true: (1) defendant testified under oath before a

6

court; (2) the testimony was false; (3) defendant knew the testimony was false; and (4) the false testimony was material to matters before the court; that is, it had a natural tendency to influence, or was capable of influencing, the court.

<u>PENALTIES</u>

9.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1623, is: imprisonment of five years; a three-year period of supervised release; a fine of $250,000; and a mandatory special assessment of $100.

10.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

11.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation,

7

parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

12. Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

## FACTUAL BASIS

13. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts in Attachment A and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 15 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

## SENTENCING FACTORS

14. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures

8

under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

15. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Base Offense Level:          14          U.S.S.G. § 2J1.3(a)

16. The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraphs 5.d. are met. Subject to paragraph 28 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

17. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

9

18. Defendant reserves the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

19. Defendant understands that by pleading guilty, defendant gives up the following rights:

a. The right to persist in a plea of not guilty.

b. The right to a speedy and public trial by jury.

c. The right to be represented by counsel – and if necessary have the court appoint counsel - at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the court appoint counsel – at every other stage of the proceeding.

d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e. The right to confront and cross-examine witnesses against defendant.

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

10

WAIVER OF APPEAL OF CONVICTION

20.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

21.    Defendant agrees that, provided the Court imposes a total term of imprisonment on the count of conviction within the Court-determined applicable guideline range or sixteen months, whichever is shorter, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the court, provided it is within the guidelines range calculated by the Court; (d) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (e) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Orders 318, 01-05, and/or 05-02 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

22.    The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence.

RESULT OF WITHDRAWAL OF GUILTY PLEA

23.    Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds

11

in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement, including in particular its obligations regarding the use of Cooperation Information; (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, or any federal rule, that any Cooperation Information or any evidence derived from any Cooperation Information should be suppressed or is inadmissible; and (c) should the USAO choose to pursue any charge that was dismissed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

24.    This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

25.    Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required

12

certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a. If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

b. The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated to dismiss pursuant to this agreement; and (iii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c.    The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d.    In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

26.    Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was dismissed as a result of this agreement, then:

a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the

14

extent that such defenses existed as of the date of defendant's signing this agreement.

COURT AND PROBATION OFFICE NOT PARTIES

27.    Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

28.    Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 15 are consistent with the facts of this case.    While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

29.    Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.    Defendant

15

understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

30. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

31.    The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

EILEEN M. DECKER
United States Attorney

_____          Aug. 12, 2015
BRANDON D. FOX                            Date
LIZABETH A. RHODES
Assistant United States Attorneys


_____          8/12/15
WILLIAM THOMAS CAREY                      Date
Defendant


_____          8/12/15
ANDREW STOLPER                            Date
Attorney for Defendant

17

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          _____
WILLIAM THOMAS CAREY                      Date
Defendant

18

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am WILLIAM THOMAS CAREY's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____    _____
ANDREW STOLPER                               Date
Attorney for Defendant

19

# ATTACHMENT A

## FACTUAL BASIS

1.      Beginning in April 2010, defendant became the Captain of the Los Angeles County Sheriff's Department's Internal Criminal Investigations Bureau ("ICIB"), which was tasked with investigating allegations of state crimes committed by the LASD's personnel. As Captain, defendant oversaw ICIB and, by 2011, reported directly to co-defendant Paul Tanaka.

2.      Inmate AB was an inmate in the custody of the LASD at the Men's Central Jail ("MCJ"). Inmate AB was a cooperating witness in a federal investigation of alleged federal civil rights and public corruption violations committed and being committed by employees of the LASD working at the Los Angeles County Jails. The federal investigation concerned the alleged use of excessive force by LASD deputies against inmates within the Los Angeles County jails and the alleged smuggling of contraband by LASD deputies into the jails in exchange for bribes. Specifically, Inmate AB was assisting in a covert public corruption investigation of LASD Deputy Gilbert Michel ("Deputy Michel"), who worked at the MCJ. Additionally, Inmate AB was providing information about alleged federal civil rights offenses being committed by employees of the LASD working at the MCJ who were allegedly abusing inmates.

3.      Special Agent LM was a Special Agent with the FBI. Special Agent LM was among the FBI agents participating in the federal investigation.

4.      As part of the federal investigation, the FBI conducted an undercover operation to determine whether Deputy Michel would accept a bribe to provide Inmate AB with a cellular phone. In approximately late July 2011, Deputy Michel accepted a bribe and provided Inmate AB with a cellular phone by smuggling it into the MCJ. On or about August 8, 2011, the LASD discovered that Inmate AB had in his possession a cellular phone, which it later determined that Deputy Michel had smuggled into the MCJ in return for a bribe.

5.      By no later than the end of August 2011, defendant was aware that the United States Attorney's Office, FBI, and a federal grand jury were conducting an investigation of abuse and corruption by LASD's employees working within the Los Angeles County Jails.

6.      By no later than approximately August 20, 2011, defendant had been told that the Assistant Director in Charge of the FBI ("ADIC") had contacted an LASD executive to inform the executive that the LASD had seized a phone from an inmate at MCJ. Defendant was also told that the ADIC stated that the phone belonged to the FBI. Defendant was further told that the ADIC requested that the LASD return the phone to the FBI.

7.      On or about August 20, 2011, defendant received orders from LASD executives, including co-defendant Tanaka, that Inmate AB was not to meet with the FBI without their

1

approval. On August 23, 2011, defendant became aware that the FBI had been allowed to interview Inmate AB at MCJ. Defendant met with co-defendant Tanaka and others to discuss the fact that the FBI had interviewed Inmate AB at the MCJ that day. In the meeting, co-defendant Tanaka approved of defendant and others moving Inmate AB from the MCJ to ensure, in part, no further contact between Inmate AB and the FBI without approval by LASD senior executives. During this time period, defendant, Tanaka, and others discussed that the possibly that the FBI would seek a writ that would have ordered Inmate AB to be removed from County to federal custody.

8.     Later that day, defendant and others under his command interviewed Inmate AB and asked whether the FBI had informed him whether he would be testifying about his allegations of deputy misconduct.

9.     Defendant later learned that, based on health issues, Inmate AB could not be easily moved to a station jail. He caused Inmate AB to be housed in a cell on a medical floor at MCJ, where deputies stood guard outside of his cell.

10.     On or about August 26, 2011, based on his understanding of orders from his superiors, defendant communicated with a high ranking employee of the LASD's MCJ to have the high ranking employee instruct MCJ lieutenants and sergeants:

> If any federal law enforcement agency comes to MCJ with an inmate removal order, visitation order, or ANY OTHER order of the court you shall receive the order and advise the federal officer that before you can proceed, you have to submit the order to the Department's legal advisor for review. DO NOT RELEASE THE INMATE OR ALLOW CONTACT.

11.     On or about the same day, defendant, co-defendant Tanaka, and others met to discuss moving Inmate AB out of MCJ and to a station jail. Inmate AB was later moved to a station jail, where deputies booked him under a fake name using false information.

12.     On or about August 30, 2011, ICIB officials interviewed Deputy Michel and other deputies, in part, to determine whether they were cooperating with the federal investigation. Defendant learned that the FBI had approached Deputy Michel outside of his home and threatened his arrest for accepting bribes in an undercover operation. Defendant also learned that the FBI had served a subpoena on Deputy Michel's girlfriend, who was also an LASD deputy, at the home she shared with Deputy Michel.

13.     On or about September 7, 2011, defendant authorized LASD Sergeant Scott Craig to present a proposed court order to a California Superior Court judge in Los Angeles County in

2

an attempt to compel the FBI to disclose information related to the federal investigation. Defendant later learned that a Superior Court judge denied the proposed court order on the basis that it had no jurisdiction over a federal agency.

14.    Defendant then authorized LASD deputies to conduct surveillance of FBI Special Agent LM, in part, to determine whether LASD employees were cooperating with the federal investigation. That surveillance occurred from September 13 to late September 2011.

15.    Prior to the evening of September 26, 2011, defendant met with co-defendant Tanaka and others to discuss approaching FBI Special Agent LM outside of her home. Defendant believed this was being done, in part, as a "tit for tat" reaction to the FBI and Special Agent LM for threatening to arrest LASD Deputy Michel outside of his home and serving a subpoena on his girlfriend there. At the time, defendant believed that the cellular phone that had been seized on Inmate AB belonged to the FBI and that Special Agent LM was not a rogue agent.

16.    Defendant was aware that sergeants under his command went to Special Agent LM's home on September 26, 2011. He later learned that the sergeants threatened to arrest Special Agent LM. Defendant was not present when anyone ordered the sergeants to threaten to arrest Special Agent LM. However, defendant understood that part of the reason the sergeants were approaching Special Agent LM was to communicate to the FBI the LASD's displeasure in how the FBI was investigating the LASD. Defendant learned after the fact that the sergeants had threatened to arrest Special Agent LM. Defendant did not believe disciplining the sergeants for this conduct was appropriate because it seemed consistent with the message that co-defendant Tanaka and others wanted sent to the FBI.

17.    In or about May 2014, in the Central District of California, a federal criminal jury trial was being conducting in United States v. James Sexton, CR No. 13-819, in which LASD Deputy James Sexton was charged with conspiring to obstruct justice and with obstruction of justice. The reasons for moving Inmate AB from MCJ and concealing Inmate AB's whereabouts within MCJ in August and September 2011 were material to the trial.

18.    On or about May 19, 2014, defendant, while under oath and testifying during the trial mentioned above, knowingly made the following declaration:

Q.    Was there any other reason to move [Inmate AB] under ICIB control other than his safety?

A.    No.

3

19.     This testimony by defendant, as he then knew, was false because defendant knew Inmate AB was moved, in part, so that defendants and others within LASD could determine what Inmate AB had told the FBI about alleged civil rights and public corruption violations. Defendant also knew that the deputies ordered to stand guard over Inmate AB during this time were there, at least in part, so that the FBI could not have access to inmate AB unless there was an order from co-defendant Tanaka or another LASD executive that would have allowed access.

20.     In or about May and June 2014, in the Central District of California, a federal criminal jury trial was being conducted in United States v. Gregory Thompson, et al., CR No. 13-819, in which LASD Lieutenant Gregory Thompson, LASD Lieutenant Stephen Leavins, LASD Sergeant Scott Craig, LASD Sergeant Maricela Long, LASD Deputy Gerard Smith, and LASD Deputy Mickey Manzo were charged with conspiring to obstruct justice, obstruction of justice, and making false statements to the FBI.

21.     On or about June 11, 2014, defendant, while under oath and testifying during the trial mentioned above, knowingly made the following declaration:

Q.     During the time of August 18th through the time when this – your investigation concluded, was it ever your objective to interfere in any way with the FBI investigation?

A:     No, sir.

22.     At the time of this testimony, and during the relevant time frame, defendant knew the orders of co-defendant Tanaka and others were in part to interfere with the federal investigation.

4