H. DEAN STEWARD, Attorney at Law
State Bar No. 85317
107 Avenida Miramar, Suite C
San Clemente, CA 92672
Telephone:    (949) 481-4900
Fax:          (949) 496-6753
Email:        deansteward@fea.net


LAW OFFICE OF JEROME J. HAIG
JEROME J. HAIG, Attorney at Law
State Bar No. 131903
21143 Hawthorne Boulevard, Suite 454
Torrance, California 90503
Telephone:   (424) 488-0686
Fax:         (424) 271-5990
E-mail:      jerome@jeromehaiglaw.com


Attorneys for Defendant
Paul Tanaka

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| THE UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>PAUL TANAKA, et al,<br><br>Defendants. | Case No: CR 15-255-PA<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS INDICTMENT BASED UPON QUALIFIED IMMUNITY AND FAIR NOTICE**<br><br>**Date: September 28, 2015**<br>**Time: 3:00 pm** |

1

MOTION TO DISMISS INDICTMENT BASED UPON
QUALIFIED IMMUNITY AND FAIR NOTICE

TO EILEEN M. DECKER, UNITED STATES ATTORNEY FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND ASSISTANT UNITED STATES ATTORNEYS BRANDON D. FOX AND LIZABETH A. RHODES:

PLEASE TAKE NOTICE that on the 28th day of September, 2015, at 3:00 pm or as soon thereafter as the matter may be heard in Courtroom 15 of the above-entitled Court, Defendant Paul Tanaka will move the Court to dismiss Counts I and II in the Indictment.

The Motion is made pursuant to Fed. R. Crim. Proc. 12(b)(3)(A). The grounds for the motion are:

1.     That defendant's conduct, at all times material to the charges in the Indictment, was authorized and objectively reasonable, and took place during the permitted course and scope of his duties as a Peace Officer in the Los Angeles County Sheriff's Department; and

2.     The proscribed conduct that forms the basis for the charge of Obstruction of Justice, in violation of 18 U.S.C. § 1503(a), as charged in Count II of the Indictment, was not clearly in violation of federal law.

Accordingly, the charges should be dismissed because Mr. Tanaka did not have fair notice that his conduct was unlawful.

The motion is based upon this notice, the attached Memorandum of Points and Authorities, exhibits attached hereto, the files and records of this case, and any further evidence that may be adduced at argument on the matters presented.

2

Dated this 14th day of August, 2015.

                        Respectfully submitted,


                        /s/ H. Dean Steward
                        H. Dean Steward


                        /s/ Jerome J. Haig
                        Jerome J. Haig
                        Attorneys for Defendant Paul Tanaka

3

## I.    Introduction

Defendants Paul Tanaka and William Carey have been indicted for their alleged acts and participation in an authorized law enforcement investigation that was supervised and instigated by Sheriff Leroy Baca, and tacitly approved by United States governmental law enforcement agencies, including the Federal Bureau of Investigation (FBI) and the United States Attorney for the Central District of California (USACDCA).  The investigation was conducted in accordance with state law and procedure, and utilized standard investigative techniques. Moreover, the Sheriff's investigation of the illegal smuggling of a mobile phone and narcotics by a deputy sheriff and the protection of an FBI informant in custody and the Men's Central Jail was known by ranking members of the FBI and USACDCA. Neither federal law enforcement agency objected to the Sheriff's investigation nor asked it stop nor alleged that it was infringing upon a lawful federal grand jury investigation.

Accordingly, Mr. Tanaka's actions at all time relevant to the charges in the indictment should be granted qualified immunity and the charges dismissed under the Tenth Amendment to the United States Constitution.

This prosecution, and the one that proceeded it[1], was the product of a skirmish at the top of the FBI and the Sheriff's Department and is not properly part of a federal prosecution. The defendants herein are entitled to qualified immunity for their actions as they were not inherently unreasonable. Furthermore, failure to grant that protection resulted in a violation of their due process rights to fair notice.

---

[1]See *United States v. Thompson, et al*, CR 13-819-PA.

MOTION TO DISMISS INDICTMENT BASED UPON
QUALIFIED IMMUNITY AND FAIR NOTICE

## II.    Statement of Facts

During a search of an inmate's property on August 8, 2011, deputies of the Los Angeles County Sheriff's Department ("LASD") discovered a contraband cell phone.  The inmate, Anthony Brown, had recently been sentenced to state prison for 423 years to life.  The phone contained pictures of cash and narcotics. The inmate first claimed a nurse had brought him the phone, as well as drugs, including methamphetamine, cocaine and marijuana, which he distributed in  the jail.  He later reported it was a deputy who brought him the phone and drugs,  and said that other deputies were involved in the same activity.  The inmate expressed fear of retaliation from deputies, and fear of other inmates for being an informant.

Ten days after the phone was discovered by LASD,  FBI Assistant  Director in Charge (ADIC) Steven Martinez[2] contacted then Sheriff Leroy Baca and told him the phone belonged to the FBI and he wanted it back.  He also expressed his concern about the inmate's  safety and requested that he be protected from possible harm.[3]  Mr. Brown was at great peril after his status as an undercover informant was compromised. Because he was being used by the FBI in conjunction with

_____

[2]At all relevant times, ADIC Steven Martinez was the ranking member of the FBI in Los Angeles.

[3]See Exhibit A, FBI report dated 8/22/11. On August 18, 2011, ADIC Martinez conceded that the FBI had smuggled a cell phone to county jail inmate Anthony Brown, and that Mr. Brown's status as a confidential informant had been compromised. ADIC Martinez requested of the LASD, through Sheriff Leroy Baca, that inmate Anthony Brown "be placed in a protective unit. Baca assured the safety" of Mr. Brown.

5

MOTION TO DISMISS INDICTMENT BASED UPON
QUALIFIED IMMUNITY AND FAIR NOTICE

their lawful civil rights investigation of misconduct by sheriff's deputies who worked at the men's central jail[4], there was a risk of harm from corrupt deputy sheriffs. In addition, the general status of an informant in a custodial setting always is problematic, creating a palpable risk of death from fellow inmates.

The Sheriff ordered a full investigation into the FBI's actions, including potential violations of state law by the FBI agents who caused the phone to be smuggled to the inmate.  The Sheriff and other high ranking officials issued facially lawful  orders to carry out that investigation and to insure that Mr. Brown was not harmed or intimidated.

The Government has alleged that the Sheriff and other officials issued the facially  lawful orders with the intent to obstruct a federal grand jury investigation into civil  rights violations in the jails, and that Defendant and his alleged co-conspirators carried out the orders with that  same intent.  The Defendant avers he acted in good faith in carrying out the orders or forwarding the Sheriff's orders further down the chain of command, and reasonably believed the orders were lawful and thus lacked the *mens rea* required for criminal conduct.

---

[4]The Los Angeles County Sheriff administers and runs the Men's Central Jail as part of it's lawful and authorized obligation.

6

MOTION TO DISMISS INDICTMENT BASED UPON
QUALIFIED IMMUNITY AND FAIR NOTICE

**III.    This Court has jurisdiction to hear and resolve the issue of immunity and fair notice on a motion to dismiss**.

A motion to dismiss on immunity grounds is properly made pretrial under Fed. R. Crim. R. 12(b). See, *Idaho v. Horiuchi*, 253 F.3d 359, 367 (9th Cir.) (en banc), *vacated as moot*, 266 F.3d 979 (9th Cir.2001); *California v. Dotson*, 2012 U.S.Dist.LEXIS 73250 (S.D. Cal. May 25, 2012), *citing and quoting*, Advisory Comm. Note (1944), Fed. R. Crim. P. 12(b)(2) (identifying "immunity" as a matter that is properly raised by a pretrial motion).

While the *Horiuchi* opinion has since been vacated as moot, it presents sound reasoning supporting a pretrial determination of the issue of immunity. The *Horiuchi* Court ruled that a district court may grant such a motion without an evidentiary hearing "if the facts supporting the immunity claim are not in dispute." Id. 253 F.3d at 367 (citation omitted). Where there are material facts in dispute as to the claim of immunity, the district court is to conduct an evidentiary hearing to resolve them, and then rule on the motion. Id. at 376–77. The Southern District of California recently adopted the reasoning of the *Horiuchi* Court in granting a motion to dismiss on grounds of immunity. *California v. Dotson*, No. 12cr0917, 2012 U.S. Dist. LEXIS 73250 (S.D. Cal. May 25, 2012). That court found that, where the undisputed facts were that the defendant was involved in a high speed collision pursuing a suspected methamphetamine trafficker, the issue of immunity was appropriately resolved on a Rule 12 motion. *Id*. at 3-5. The court relied upon the reasoning set forth in *Horiuchi. Id.* Likewise, the vacated *Horiuchi* opinion, despite its lack of precedential effect, offers valid reasons for adopting this

7

procedure here.

## IV.   Mr. Tanaka did not have fair notice that his actions would subject him to federal prosecution.

The fair warning doctrine set forth in *United States v. Lanier*, 520 U.S. 259 (1997), rests on the principle "that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed," *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964) (quoting *United States v. Harriss*, 347 U.S. 612, 617 (1954)).  Lanier sets forth "three related manifestations of the fair warning  requirement":  vagueness, strict construction and rule of lenity, and the due  process bar on a court applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope.  520 U.S. at 266.

### A.   *Application of the Fair Warning Factors from Lanier*

#### 1.   **Vagueness**

The vagueness doctrine bars enforcement of "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application."  *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926).

The Supreme Court has focused on "the requirement that a legislature

8

MOTION TO DISMISS INDICTMENT BASED UPON
QUALIFIED IMMUNITY AND FAIR NOTICE

establish minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (quoting *Smith v. Goguen*, 415 U.S. 566, 574 (1974)). Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Id*. at 358 (quoting *Smith*, 415 U.S. at 575).

The lack of minimal guidelines for § 1503 is illustrated in the 9th Circuit's recent decision in *United States v. Bonds*, 784 F.3d 582, 585 (9th Cir. 2015) (en banc) (Kozinski, J., concurring) ("The amorphous nature of the statute is also at odds with the constitutional requirement that individuals have fair notice as to what conduct may be criminal."). The same dangers of chilling advocacy by attorneys in our criminal justice system are present when applying the "amorphous" provisions of the omnibus clause to law enforcement officials. The statute is vague and under *Lanier* the Defendants did not have fair notice of its reach.

### 2.    **Strict Construction**

The second *Lanier* factor requires that statutes be interpreted with the "traditional[] . . . restraint" used to avoid lack of notice problems. *United States v. Aguilar*, 515 U.S. 593, 600 (1995). The proper construction of § 1503 in this context is discussed in Sections B and C and is incorporated herein by this reference.

9

MOTION TO DISMISS INDICTMENT BASED UPON
QUALIFIED IMMUNITY AND FAIR NOTICE

### 3.    Novel Interpretation

The federal removal statute, 28 U.S.C. § 1442, provides that when a federal officer is charged with a state crime, that officer can remove the case to federal court for a determination of whether the officer was acting "under color of office." If yes, the case is dismissed and the state takes no further action. If no, the criminal prosecution can proceed in state court. The removal statute is key to understanding why the charges in this case could not have been anticipated by persons of common understanding. *See* 28 U.S.C. § 1442(a). Given the function of § 1442(a), the idea that state law enforcement officers can be charged federally for conducting an authorized state criminal investigation raises serious constitutional questions and militates in favor of finding a lack of fair notice that such conduct was criminal.

A survey of cases considered under § 1442(a), the federal officer removal statute, demonstrates that in no other case has an unsuccessful prosecution resulted in charges being filed against the state police officers who investigated the case in the first instance. In *Kentucky v. Long*, 837 F.2d 727 (6th Cir. 1988), for example, the state sought to prosecute an FBI agent for burglary. The state indictment was based on the action of the agent in using an informant, to commit burglaries of at least two locations. The matter was removed to federal court and eventually dismissed, but not before the federal court held a hearing. There is no indication of later charges against local officers for investigating and indicting the agent for his questionable conduct. Similar cases include *New York v. Tanella*, 374 F.3d 141 (2d Cir. 2004) (DEA agent indicted by State of New York for manslaughter

10

MOTION TO DISMISS INDICTMENT BASED UPON
QUALIFIED IMMUNITY AND FAIR NOTICE

for  shooting and killing drug dealer), *Baucom v. Martin*, 677 F.2d 1346 (11th Cir. 1982)  (FBI agent charged with bribery of state prosecutor), and *Texas v. Carey*, 885 F.  Supp. 940 (W.D. Tex. 1994) (case removed to federal court and then dismissed  after U.S. Fish and Wildlife officer conducting field review in Texas was charged with misdemeanor criminal trespass).  Interpreting § 1503 to extend to the actions  of state law enforcement agents investigating a state crime involving a federal law  enforcement agent would be an impermissibly novel interpretation of the statute.

B.     ***Application of Lanier Mandates Immunity from Prosecution***

***Under  Fair Notice Principles***

The *Lanier* Court held that the fair warning doctrine, as applied to prosecutions under 18 U.S.C. § 242, overlaps with the qualified immunity doctrine applied in the civil liability context.  The Court's analysis was not limited to the § 242 context, however.  And when the holding of *Lanier* is combined with the law in the area of 28 U.S.C. § 1983 qualified immunity cases as applied to state law enforcement officers, it is clear that Defendants lacked fair notice in this case *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1248 (2012), confirms that LASD deputies are entitled to qualified immunity from civil liability for violation of constitutional rights when conducting reasonable investigations with the approval of their supervisors.  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly

MOTION TO DISMISS INDICTMENT BASED UPON
QUALIFIED IMMUNITY AND FAIR NOTICE

incompetent or those who knowingly violate the law." *Id.* at 1244 (internal quotation marks omitted).  The actions of Mr. Tanaka and others below him in rank in the Sheriff's Department were well within the circle of reasonableness and should be immune from prosecution, as Defendants were acting at the direct behest  of the Sheriff and other commanding officers. Sheriff Baca's first contact with the FBI about the cell phone occurred on August  18, 2011, when the FBI learned its phone had been discovered.  ADIC Steven  Martinez called Baca and "requested [that Anthony Brown] be placed in a  protective unit."  According to the FBI's records, "Baca assured the safety of  [Brown]."[5]

While the Sheriff assured the safety of Mr. Brown, he was furious about the FBI's  actions.  The LASD investigation into Brown's cell phone possession revealed additional allegations of smuggled narcotics.  A series of communications ensued, including a meeting with United States Attorney Andre Birotte.  By the time Sheriff Baca  met with USACDCA Birotte, AUSA Lawrence Middleton, and others on August 30, 2011, he was firm in his  position that the FBI broke the law, and he requested that the FBI work jointly with  LASD going forward.

Sheriff Baca repeated this sentiment and legal conclusion in his comments on the  morning news program Good Day LA on September 26, 2011, and in his letter to  Birotte that same day.[6] (("[W]ell, it's illegal, it's a misdemeanor.  And

[5]See Exhibit A

[6]See Exhibit B, letter and attachments from Sheriff Leroy Baca to USACDCA Andre Birotte dated September 26, 2011. The letter explicitly informs the chief federal prosecutor in

12

MOTION TO DISMISS INDICTMENT BASED UPON
QUALIFIED IMMUNITY AND FAIR NOTICE

then there's a conspiracy law that goes along with it.")

The orders Sheriff Baca issued in connection with his concerns were facially lawful  and they were carried out using standard, well-recognized law enforcement and  custodial techniques.  The LASD  was investigating a documented violation of state law as well as several possible additional violations, including the  smuggling of narcotics into MCJ as well as allegations involving prior cell phones  being smuggled into MCJ.  Because § 1983 qualified immunity would apply on  these facts, due process fair notice requirements require the indictment be dismissed.

C.     ***State Law Enforcement Investigation of Criminal Law Violations Is a Power Reserved to the States Under the Tenth Amendment.***

As many commentators have noted, there is tension between the Tenth Amendment of the United States Constitution and the Supremacy Clause.  The "genius of the Founding Fathers to 'split the atom of sovereignty' . . . means in practical terms . . . that within the territory of the very state, two sovereigns—the state government and the federal government—reign cheek to jowl.  From the dawn of the Republic, this unusual arrangement has led to a fair degree of conflict, as the actions of one sovereign have encroached on the prerogatives of the other." *Idaho v. Horiuchi*, 253 F.3d 359, 361 (9th Cir. 2001) (en banc), *vacated as moot*, 266 F.3d 979 (quoting *United States Term Limits, Inc. v. Thornton*, 514 U.S. 779,

---

Los Angeles that the Sheriff was investigating all the activity surrounding the smuggling of the cell phone into the Men's Central Jail, and invited  federal law enforcement to join him in the investigation.

13

838  (1995) (Kennedy, J., concurring)).[7]  The states—and *not* the federal government— "historically have been sovereign" in the area of "criminal law enforcement."  *United States v. Lopez*, 514 U.S. 549, 564 (1995).

The mere fact that one of the targets of a state police agency investigation is a federal law enforcement officer does not render the investigation itself a federal crime.  Federal law enforcement agents do not have prospective immunity from investigation, arrest, and prosecution for violations of state law. *See Mesa v. California*, 489 U.S. 121, 129-33 (1989).  The removal statute sets the boundaries of  this delicate balance in the relationship between state and national sovereigns.

The  right of the state authority to investigate, arrest, and prosecute a federal agent who  has violated a state law is balanced against the federal government's interest in protecting federal laws from undue interference by the state court.  This is a classic  and important concern of a federalist system.  As the Court emphasized in *Mesa*, "The Government's view, which would eliminate the federal defense requirement, raises serious doubt whether, in enacting § 1442(a), Congress would not have 'expand[ed] the jurisdiction of the federal courts beyond the bounds established by  the Constitution.'" 489 U.S. at 136 (quoting *Verlinden B. V. v. Cent. Bank of  Nigeria*, 461 U.S. 480, 491 (1983)).  The Court concluded that § 1442(a)(1) could  not "be broadened by fair construction" to fit the government's proposed  meaning. *Id.* at 139.

As demonstrated above and confirmed by the federal removal statutes, there

---

[7] State governments push back against federal assaults on state sovereignty  in multiple ways. *See* A. Raynor, *The New States Sovereignty Movement*, 90 IND. L.J. 613 (2015).

14

MOTION TO DISMISS INDICTMENT BASED UPON
QUALIFIED IMMUNITY AND FAIR NOTICE

is no provision of law that precludes a state investigation of a federal agent for violation of the state criminal code.  Interpreting § 1503 to cover that conduct does not withstand constitutional scrutiny.  The *Lanier* factors, the Tenth Amendment and proper interpretation of § 1442(a) all weigh in favor of finding that fair notice was lacking.

### V.    Conclusion

For the preceding reasons, the defense urges this Court to dismiss the two counts against Mr. Tanaka.

Dated this 14th day of August, 2015.

Respectfully submitted,

*/s/ H. Dean Steward*

H. Dean Steward

*/s/ Jerome J. Haig*

Jerome J. Haig
Attorneys for Defendant Paul Tanaka

15