EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
BRANDON D. FOX (Cal. Bar No. 290409)
Assistant United States Attorney
Chief, Public Corruption and Civil Rights
LIZABETH ANN RHODES (Cal. Bar. No. 155299)
Assistant United States Attorney
Public Corruption and Civil Rights Section
EDDIE A. JAUREGUI (Cal. Bar No. 297986)
Assistant United States Attorney
General Crimes Section
     1300/1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0284/3541/4849
     Facsimile: (213) 894-6436
     E-mail:    Brandon.Fox@usdoj.gov
                Lizabeth.Rhodes@usdoj.gov
                Eddie.Jauregui@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>                v.<br><br>PAUL TANAKA,<br><br>                Defendant. | No. CR 15-255-PA<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION REQUESTING COURT-ORDERED IMMUNITY FOR DEFENSE WITNESS LEROY BACA<br><br>Hearing date: 9-28-2015<br>Hearing time: 3:00 P.M.<br>Location:    Courtroom of the<br>             Honorable Percy<br>             Anderson |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brandon D. Fox, Lizabeth A. Rhodes, and Eddie A. Jauregui, hereby files its

opposition to defendant Paul Tanaka's motion requesting court-ordered immunity for potential defense witness Leroy Baca.

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 8, 2015          Respectfully submitted,

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

/s/ Brandon D. Fox
BRANDON D. FOX
LIZABETH A. RHODES
EDDIE A. JAUREGUI
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Defendant Paul Tanaka seeks to compel the government to grant immunity to former Los Angeles Sheriff Leroy Baca, "so that [Baca] can testify as a trial witness" for defendant in this case.  Mot. at 2.  According to defendant, while Baca himself has not indicated that he would refuse to testify if called, his attorney has suggested that there is a "strong possibility" that Baca would invoke his Fifth Amendment right against self-incrimination and refuse to testify. Notwithstanding this "possibility," defendant has failed to satisfy the requirements for compelled immunity, and this Court should deny defendant's motion.

**II.    STATEMENT OF FACTS**

The indictment charges defendant with: (1) conspiring to obstruct justice, in violation of 18 U.S.C. § 371; and (2) obstruction of justice, in violation of 18 U.S.C. § 1503.  The charged conduct relates to the actions that defendant and his co-conspirators took after learning that the federal government was conducting a grand jury investigation of civil rights and public corruption violations by deputies working in the LASD's jails.  As detailed below, the indictment alleges that the conspiracy included hiding an informant from the federal government, tampering with several witnesses, and attempting to intimidate an FBI agent assigned to the investigation by threatening to charge and arrest her.

**A.    The Defendant and his Co-Conspirators**

According to the indictment: Defendant was the Undersheriff of the Los Angeles County Sheriff's Department, serving as its second-in-command.  (Indictment p. 2, ¶ 3.)  As is relevant here, his co-

conspirators performed the following functions: (a) Captain William Thomas Carey and Lieutenant Stephen Leavins oversaw the LASD's Internal Criminal Investigations Bureau ("ICIB"), and (b) Sergeants Scott Craig and Maricela Long served under Carey and Leavins within ICIB. (Id. at ¶¶ 4-6.)

**B.    Defendant and His Co-Conspirators Hide Inmate AB from the Federal Government and the Grand Jury**

By no later than August 2011, defendant knew that a federal grand jury was conducting an investigation of the LASD's employees within the Los Angeles County Jails.  (Indictment p. 8, ¶ 18.) Defendant and others attempted to corruptly influence, obstruct, and impede the investigation.  (Id. at p. 10, lines 4-15.)

As part of their obstructive conduct, defendant and his co-conspirators attempted to prevent the federal government and grand jury from interviewing, contacting, or locating Inmate AB, who was an informant in the federal investigation, by falsifying Inmate AB's records and hiding Inmate AB.  (Id. at p. 10-11, ¶¶ 2-3.) Defendant's co-conspirators attempted to find out what information Inmate AB had given to the federal government through interviews of Inmate AB and an undercover operation.  (Id. at p. 11-12, ¶ 4.)  At the same time, defendant's co-conspirators attempted to make Inmate AB feel as though the FBI had abandoned him.  (Id. at p. 11, ¶ 5.)

**C.    Defendant's Co-Conspirators Tamper with Witnesses**

Defendant oversaw his co-conspirators' interviews of LASD deputies believed to be connected to the federal investigation.  (Id. at 12, ¶ 6.)  During these interviews, the co-conspirators: (a) attempted to convince deputies not to cooperate with the federal investigation; (b) informed them and suggested to them that the FBI

2

was manipulating, blackmailing, threatening, and lying to them; and (c) ordered them not to speak to the FBI and to report all contact by the FBI to the co-conspirators. (Id. at p. 12-13, ¶ 6.)

### D. Defendant's Co-Conspirators Threaten to Arrest Special Agent LM

Sergeant Craig unsuccessfully tried to obtain a court order to require the FBI to turn over its investigative records of the LASD, and disclose the true identity of any agent involved in any investigation within the Los Angeles County Jail system in the previous two years. (Id. at p. 13, ¶ 7.) On September 26, 2011, Craig and Long confronted FBI Special Agent LM outside of her home, where Craig falsely informed her that: (a) Special Agent LM was a named suspect in a felony complaint; and (b) Craig was in the process of swearing out a declaration for a warrant for her arrest. (Id. at p. 20, ¶ 30.) Long then falsely informed Special Agent LM's supervisor that there was going to be a warrant for Special Agent LM's arrest, and that the arrest warrant could be issued as soon as the next day. (Id. at p. 20, ¶ 32.)

## III. ARGUMENT

The executive branch has "exclusive authority and absolute discretion to decide whether to prosecute a case." United States v. Alessio, 528 F.2d 1079, 1081-82 (9th Cir. 1976). Therefore, a district court may compel use immunity only to ensure that a criminal trial is conducted in accordance with the Fifth Amendment's due process guarantee. United States v. Straub, 538 F.3d 1147, 1156 (9th Cir. 2008); United States v. Westerdahl, 945 F.2d 1083, 1086 (9th Cir. 1991) (generally, "[a] criminal defendant is not entitled to compel the government to grant immunity to a witness").

3

The Ninth Circuit has held that a defendant seeking immunity for a defense witness must show that:

> (1) the defense witness's testimony was relevant; and (2) either (a) the prosecution intentionally caused the defense witness to invoke the Fifth Amendment right against self-incrimination with the purpose of distorting the fact-finding process; or (b) the prosecution granted immunity to a government witness in order to obtain that witness's testimony, but denied immunity to a defense witness whose testimony would have directly contradicted that of the government witness, with the effect of so distorting the fact-finding process that the defendant was denied his due process right to a fundamentally fair trial.

Straub, 538 F.3d at 1162; see also United States v. Wilkes, 744 F.3d 1101, 1104-05 (9th Cir. 2014).  Defendant has not met this standard.

**A.  Defendant Has Failed to Proffer How Baca's Testimony Would be Relevant**

The first prong under Straub requires that a witness's testimony be relevant.  538 F.3d at 1157.  The Ninth Circuit has described the relevance requirement as "minimal."  Defendant, however, has not met this relatively low-burden because he has not proffered the specific and relevant testimony he anticipates Baca will give.  Defendant asserts generally that Baca will testify "about the matters surrounding the FBI's smuggling of a cell phone" and about the actions taken by Baca's subordinates "upon [Baca's] lawful orders," Mot. at 13, but he does not explain what Baca's testimony will be or its relevance.

While there is "a low showing of relevance to pass the first prong," 538 F.3d at 1163, it is not enough to make general statements and unsupported assertions, such as the assertion that Baca's testimony "will contradict other government evidence and testimony of Mr. Tanaka's culpability for obstruction of

justice and conspiracy." Mot. at 13. As the Ninth Circuit has held, defendant must "offer proof of the substance of a defense witness's testimony beyond the defendant's or defense counsel's unsupported assertions." See Williams, 384 F.3d at 601, n.13 (citing Westerdahl, 945 F.2d at 1086; Prantil v. California, 843 F.2d 314, 318 (9th Cir. 1988)); see also United States v. Reagan, Nos. 08-10068, 08-10069, 2009 WL 1185666, at *1 (9th Cir. May 4, 2009) (not error to refuse to compel immunity where defendant "did not submit an offer of proof regarding the anticipated content" of one witness's testimony "and therefore failed to meet [defendant's] threshold burden of establishing relevance). Defendant has failed to meet the first prong.[1]

**B.   The Government Has Not Intentionally and Purposefully Distorted the Fact-Finding Process**

The second prong in Straub can be met in one of two ways. One way is to show that the government "intentionally caused the defense witness to invoke the Fifth Amendment right against self-incrimination with the purpose of distorting the fact finding process." Id. In making this determination, courts inquire "whether the government or its agents took affirmative actions to prevent a defense witness from testifying." Id. at 1157-58 (citing Williams, 384 F.3d at 601); see also Westerdahl, 945 F.2d at 1086. In Williams, the Ninth Circuit elaborated on this standard, stating that "undue prosecutorial interference in a defense witness's decision to

---

[1] Although defendant attached to his motion a 200+ page transcript of an interview of Baca conducted by the United States Attorney's Office and the FBI in April 2013, he did not direct the Court or the government to any specific part of that interview or explain how it would be relevant.

5

testify arises when the prosecution intimidates or harasses the witness to discourage the witness from testifying, for example, by threatening the witness with prosecution for perjury or other offenses." 384 F.3d at 601-02. The Williams court noted that the prosecutor's conduct "must amount to a substantial interference with a witness's free and unhampered determination to testify before the conduct violates the defendant's right to due process." Id. at 602 (cited in Straub, 538 F.3d at 1158).

Defendant does not accuse the government of intentionally causing Baca to invoke the Fifth Amendment right against self-incrimination "with the purpose of distorting the fact-finding process" because, of course, he cannot. Such an accusation would be wholly unfounded. Indeed, as noted above, Baca has not yet invoked or declared his intention to invoke his Fifth Amendment right, nor has the government taken "affirmative actions" to prevent Baca from testifying. Straub, 538 F.3d at 1157-58.

**C.   There Has Been No Selective Denial of Immunity**

The only other way for defendant to meet the second prong is to show that denying Baca use immunity would so "severely distort[] the fact-finding process at trial" that it would deny defendant his fundamental right to a fair trial. Straub, 538 F.3d at 1160. Under this prong, the testimony that Baca would give if he testified would have to "directly contradict" the testimony of an immunized government witness. Id. at 1158, 1161-62 (citing cases). The Ninth Circuit has referred to this as the "effects test." Id. at 1158, 1160.

6

Under the "effects test," defendant "need not prove that the prosecution acted intentionally to distort the fact-finding process," but he still must show, in addition to relevance:  (i) that the testimony would "directly contradict" the testimony of an immunized government witness;[2] and (ii) that the denial of immunity to defendant's witness "had the effect of so distorting the fact-finding process that the defendant [would be] denied his due process right to a fundamentally fair trial."  Id. at 1162-63.

Although it approved the "effects test," the Ninth Circuit in Straub also reinforced the principle that "[t]he Fifth Amendment does not create a general right for a defendant to demand use immunity," and cautioned that "the courts must be extremely hesitant to intrude on the Executive's discretion to decide whom to prosecute."  538 F.3d at 1166.  The court indicated that such intrusions should occur only in "exceptional cases" where the fact-finding process "may be so distorted" that the defendant's due process right to a fair trial is violated. Id. (citing Alessio, 528 F.2d at 1081-82).

The Straub court recognized that in a "majority of cases" where a defendant seeks to compel immunity for a witness, the "witness's

---

[2] The proffered defense witness testimony "need only support (as opposed to compel) a finding by the jury" that the testimony is "directly contradictory."  Straub, 538 F.3d at 1163.  However, "[d]irect contradiction means more than just different subjective interpretations of the same facts."  United States v. Gage, 331 Fed. App'x 547, 547 (9th Cir. 2009).  As the Ninth Circuit clarified in Wilkes, "a witness directly contradicts another witness if their respective testimonies cannot simultaneously be true . . . ." 744 F.3d at 1106.  Moreover, there is no denial of due process where the testimonies directly contradict "only on minor points."  United States v. Miller, 546 Fed. App'x 709, 710-11 (9th Cir. 2013).

7

testimony will not be 'directly contradictory' to that of the prosecution's witness, or there will have been no distortion of the fact-finding process."  Id. at 1158, 1161 (citing, inter alia, United States v. Alvarez, 358 F.3d 1194, 1216 (9th Cir. 2004) (testimony did not directly contradict statements by government witness); United States v. Brutzman, 731 F.2d 1449, 1452 (9th Cir. 1984) (evidence cumulative or "not exculpatory"); Alessio, 528 F.2d at 1082 (testimony sought by appellant cumulative)).  Indeed, the Ninth Circuit observed in Straub that those cases in which the proffered testimony is "in fact directly contradictory" are "rare."  538 F.3d at 1162.

Defendant has not shown a "selective denial of immunity" in part because he has not provided an offer of proof as to what testimony Baca would give, nor has defendant established whose testimony would be "directly contradicted" by Baca's testimony.  Defendant asserts that former Deputy Mickey Manzo will "be testifying to matters in which Mr. Baca was a percipient witness" and "believes that without contradictory testimony of Mr. Baca, Mr. Manzo's testimony will not be properly contradicted."  Mot. at 12.  But this does not satisfy Straub.  Nowhere does defendant say what testimony either Baca or Manzo would give or how their respective testimonies would directly contradict each other.  Nor does defendant show how Baca's testimony would directly contradict the testimony of any other immunized government witness.[3]

---

[3] Defendant asserts, without any factual basis, that the government has "granted immunity" to all seven defendants in United States v. Thompson, CR 13-819-PA (C.D. Cal.).  This is untrue.  See Under Seal Declaration of Rhodes at ¶ 3, filed concurrently herewith.

Moreover, the government has not deprived defendant of other means of presenting a defense.  See Reagan, 2009 WL 1185666, at *2 (affirming district court's denial of compelled immunity where, among other things, defendants failed to "explain why they could not have obtained evidence from other sources to demonstrate or at least bolster much of the exonerating information they wished to extract from [defense witness]").  Accordingly, this is not the "rare" or "exceptional" case in which the Court should exercise its power to compel immunity of a defense witness.

## IV.    CONCLUSION

For all the foregoing reasons, it is apparent that defendant has failed on every level to meet the standard for compelled immunity.  Accordingly, this Court should deny defendant's motion requesting court-ordered immunity for former Los Angeles Sheriff Leroy Baca.

9