H. DEAN STEWARD, Attorney at Law
State Bar No. 85317
107 Avenida Miramar, Suite C
San Clemente, CA 92672
Telephone:   (949) 481-4900
Fax:         (949) 496-6753
Email:       deansteward@fea.net


LAW OFFICE OF JEROME J. HAIG
JEROME J. HAIG, Attorney at Law
State Bar No. 131903
21143 Hawthorne Boulevard, Suite 454
Torrance, California 90503
Telephone:   (424) 488-0686
Fax:         (424) 271-5990
E-mail:      jerome@jeromehaiglaw.com


Attorneys for Defendant
Paul Tanaka

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| THE UNITED STATES OF AMERICA | Case No: CR 15-255-PA |
|---|---|
| Plaintiff, | |
| vs. | **REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT PAUL TANAKA'S MOTION REQUESTING COURT-ORDERED IMMUNITY FOR DEFENSE WITNESS LEROY BACA** |
| PAUL TANAKA, et al, | |
| Defendants. | |
| | **Date: September 28, 2015** |
| | **Time: 3:00 pm** |

1

DEFENDANT'S REPLY TO GOVERNMENT OPPOSITION TO MOTION
REQUESTING COURT-ORDERED IMMUNITY FOR LEROY BACA

Defendant Paul Tanaka, by and through his counsel of record, submits the following reply to the government's opposition (Doc. No. 83) to his motion to order the Court to grant immunity to Leroy Baca.

Dated this 13th day of September, 2015.

Respectfully submitted,


/s/ Jerome J. Haig
Jerome J. Haig

2

## MEMORANDUM OF POINTS AND AUTHORITIES

The government, in it's Reply to Defendant's motion for an order that immunity be granted to Leroy Baca, asserts that the defense has failed to "proffer how Baca's testimony would be relevant." (See Government's Opposition, p. 4). However, the government ignores the defense's detailed reasons provided in the initial motion to support the relevancy and necessity of Mr. Baca's testimony. Nonetheless, in an effort to provide more specificity, the defense proffers that if called as a witness, Mr. Baca will testify as follows:[1]

1.    Regarding allegations that Mr. Tanaka was part of a conspiracy, and committed acts with other alleged co-conspirators in furtherance of the conspiracy:

    a.    The government must prove a conspiracy existed and that Mr. Tanaka was part of that conspiracy, understanding the criminal objects of the conspiracy and intending to help accomplish it. Even if the government proves that a conspiracy existed between certain members of the LASD during the times relevant in the indictment, it must further show that Mr. Tanaka joined the conspiracy with the intent that it's goals be carried out and committed at least one act in support of the criminal enterprise. (See jury instructions in *U.S. v. Thompson, et al*, Doc. 456.)

    b.    Mr. Baca will testify that while he knew that inmate Anthony Brown was an FBI informant, he only learned so when FBI ADIC Steven Martinez notified him of this fact on August 18, 2011. Based upon

---

[1]The factual assertions are made pursuant to statements made by Leroy Baca to the government on April 13, 2013, statements made to print and television media, a letter written by Mr. Baca to then United States Attorney Andre Birotte, Jr., on September 26, 2011, and the Court record in *U.S. v. Thompson, et al*, CR 13-819-PA.

3

DEFENDANT'S REPLY TO GOVERNMENT OPPOSITION TO MOTION
REQUESTING COURT-ORDERED IMMUNITY FOR LEROY BACA

this discussion, and with the concurrence of the lead law federal law enforcement officer in Los Angeles, Mr. Baca ordered those in his command to protect the inmate. This order was conveyed to Undersheriff Paul Tanaka and to certain deputies in the LASD Internal Criminal Investigations Bureau (ICIB), including Tom Carey and Steven Leavins. Mr. Baca will buttress the defense argument that Mr. Tanaka was not involved with the association, direction, or control of any part of the investigation into the Anthony Brown matter by testifying to the following facts:

i.     Mr. Baca did not order Anthony Brown to be hidden to try to stop the FBI from continuing to investigate allegations of excessive force and corruption in Los Angeles County Jails. He was hidden to protect him from other inmates and from other deputy sheriffs, and because he was asked to do so by FBI ADIC Martinez;

ii.     Mr. Baca directed the investigation of the entire situation regarding the phone, with his points of contact being Mr. Carey and Mr. Leavins;

iii.     Mr. Baca was "macromanaging" the investigation; Carey and Leavins were "micromanaging" it;

iv.     Mr. Baca never ordered an LASD investigation with a goal of stopping the FBI and the federal government from its investigation of the Sheriff's Department;

v.     Mr. Baca never was aware and never ordered anyone in his command to approach FBI S.A. Leah Marx with the goal of intimidating her or arresting her on September 26, 2011;

4

DEFENDANT'S REPLY TO GOVERNMENT OPPOSITION TO MOTION
REQUESTING COURT-ORDERED IMMUNITY FOR LEROY BACA

Likewise, Mr. Baca was not informed beforehand of this plan.

vi. He was never warned by anyone in the LASD to cease the investigation into how and why the phone was smuggled into the jail.

vii. Mr. Baca did not order anyone to tamper with witnesses. He will testify that he gave all the orders and expected them to be followed by subordinates. This is consistent with prior testimony of Mr. Tanaka in the *Thompson, et al*, trials, as well as the defendant's statements to the FBI and testimony before a grand jury.

viii. Mr. Tanaka's role was limited to being made aware of the what was transpiring. Mr. Baca only would relay points about it to the Undersheriff since ICIB was handling the investigation.

c. The only orders given by Mr. Baca were to keep Anthony Brown safe and to investigate the smuggling of the cell phone into the jail. Mr. Baca will testify that those were the sole orders given.  Mr. Tanaka has previously stated that those were the orders that he conveyed down the chain of command. In fact, at the sentencing of the 6 defendants in the prior related prosecution, this Court conceded that there was no evidence of wrongdoing by Mr. Baca and Mr. Tanaka, but only that their *lawful orders* were not followed by others. On

5

September 23, 2014, this Court stated to the convicted defendants:

**"At trial the only evidence of orders you received from those above you in the chain of command were to keep Anthony Brown safe and to investigate the smuggling of the cell phone into the jail. There was no evidence of the trial that any of you were ordered to keep Brown safe in a way that hid him from the FBI and the federal grand jury. There was no evidence at trial that any of you were ordered to tamper with Brown or Deputy Michel. Instead the only evidence is that you chose to encourage both of them to stop cooperating with the federal investigation, not to further your -- your investigation, but to stop the federal investigation. And there was no evidence at trial that you were ordered to confront an FBI agent at her home and threaten to arrest her. You did that**." (See *Thompson, et al, supra*, Doc No. 599, pp. 75-76.)

2.    If Mr. Baca testifies truthfully, he will admit that he believed the FBI committed a crime in it's involvement in smuggling a cell phone to an inmate in the County Jail. Mr. Baca will testify that he believed the FBI was guilty of a misdemeanor and conspiracy to commit a crime.

3.    Mr. Baca will testify that while  inmate Anthony Brown was being protected, he was not being hidden, and that had FBI ADIC Martinez asked him for access to the inmate, it would have been granted.

6

DEFENDANT'S REPLY TO GOVERNMENT OPPOSITION TO MOTION
REQUESTING COURT-ORDERED IMMUNITY FOR LEROY BACA

4. He will also testify that he was duty bound to investigate not only the circumstances but to pursue a criminal investigation of the FBI. Mr. Baca has denied that he was aware of an LASD and ICIB instigated criminal investigation of the FBI, but the defense herein asserts that the circumstantial evidence is strong that he was not only aware of the investigation, but he ordered ICIB to conduct it. The following facts support this inference:

a. Mr. Baca repeatedly alleged, in interviews with the press and in official correspondence to the federal government, that the FBI had committed criminal offenses in violation of California law. With such a state of mind, it would indeed be a dereliction of duty not to order a criminal investigation of the FBI.

b. Leah Marx was approached by LASD deputies on September 26, 2011. The government alleges that LASD deputies Craig and Long threatened her arrest and lied to her about the existence of an arrest warrant.

c. On that same date, Mr. Baca wrote a letter to U.S. Attorney Andre Birotte, Jr,, stating in pertinent part that he was "extremely displeased with the conduct of the FBI" and that their actions were "illegal, unethical, and irresponsible." He closed with the assertion that the FBI "cannot break the law in order to enforce the law."

d. Again, on that same date, Mr. Baca was interviewed on a local television morning news program, and repeated much of what he had alleged of the FBI. He also expressed his resentment and anger, and the fact that he was unsure of the status of the future relationship

7

DEFENDANT'S REPLY TO GOVERNMENT OPPOSITION TO MOTION
REQUESTING COURT-ORDERED IMMUNITY FOR LEROY BACA

between the FBI and the LASD. He closed by urging the FBI to, in essence, get out of the Men's Central Jail.[2]

e.  Mr. Baca told the L.A. Times, in an article published on September 29, 2011, that "we're investigating a crime" in reference to LASD deputies showing up at Agent Marx's residence. This again shows his knowledge of the incident and the likely fact that he approved it and ordered it to happen, all without the knowledge of and not by the direction of defendant Tanaka.

The detailed proffer above shows that Mr. Baca is an indispensable witness for Mr. Tanaka. If the government wants to seek justice, then it should let the facts come out at defendant's upcoming trial. But without Mr. Baca's testimony, a big hole in the evidence will exist. It is clear that the entire saga that produced the instant indictment and the ones that proceeded it began with the phone call between Mr. Baca and ADIC Steven Martinez. From there, Mr. Baca was in the

---

[2] On Fox 11's morning program, Good Day L.A., Mr. Baca was interviewed on air for several minutes:

Q:      Do you resent the FBI's intrusion?
Baca:   Oh Yeah!

Q:      Specifically, this idea about a cellphone. What can you tell us about that?
Baca.:  Well it's illegal. It's a misdemeanor and there's a conspiracy law that goes around with it.

Q:      The phone smuggled in by whom?
Baca:   Well, we know by whom.

Baca:   Well, I think I need to know what the reason is (to smuggle in the cellphone) and quite frankly it's unacceptable regardless of the reason.

Q:      So, what happens next in this thing with you guys and the FBI?
Baca:   Well, were gonna meet tomorrow and talk about it a little bit and I have to weigh my options. And the truth is the Sheriff runs the jail and the Sheriff's responsibilities have to be respected.

Q:      If you don't want the FBI in there, then who polices the police?
Baca:   Well the question. . . we police ourselves and we also have an office of independent review with civil rights lawyer that helps us doing a good job to police ourselves.

8

DEFENDANT'S REPLY TO GOVERNMENT OPPOSITION TO MOTION
REQUESTING COURT-ORDERED IMMUNITY FOR LEROY BACA

center of the matter, issuing opinions, calling meetings, giving interviews, making phone calls, writing letters,  and making orders. His absence from the defendant's trial is caused by one thing and one thing only: the government's refusal to either grant Mr. Baca immunity or charge him with a crime. To do neither is not a quest for justice. Rather, it is the federal government trampling on the rights of Mr. Tanaka in its single-minded goal to secure a conviction and a headline.

## CONCLUSION

For the reasons set forth herein and in the prior motion to compel immunity for Mr. Baca (See Doc. No. 67), the defense asks that it's motion be granted.

Dated this 13th day of September, 2015.

Respectfully submitted,


 /s/ Jerome J. Haig
Jerome J. Haig

9