H. Dean Steward  SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
949-481-4900
Fax: (949) 496-6753

Jerome Haig  SBN 131903
21143 Hawthorne Blvd Ste 454
Torrance, CA 90503
Phone Number: (424) 488-0686
Fax (424) 271-5990

Attorneys for Defendant
PAUL TANAKA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES,<br><br>          Plaintiff,<br><br>     vs.<br><br>PAUL TANAKA<br>          Defendant. | Case No. CR-15-255-PA<br><br>JOINT IN LIMINE MOTION;<br>EXHIBIT "A"<br><br><br>DATE: March 21, 2016<br>TIME: 3:00 PM |
|---|---|

     Comes now the parties, pursuant to the Court's standing order, and submit the below joint in limine motion, containing both the defense and government positions on the admission of four statements by former Sheriff Leroy Baca.

**I. TIMING AND MEET AND CONFER**

     While in limine motions of this type are to be filed along with pre-trial motions, this in limine motion is being filed later due to the new fact of Mr. Baca's statement through his counsel that Mr. Baca will assert the 5th Amendment at the trial herein.

- 1 -

This statement was conveyed to the defense by e-mail on February 17. (See attached declaration of counsel.

The parties conferred by phone on Feb. 26, 2016 (Attorney Steward's office being in Orange County). The parties were unable to agree on the below motion.

## II. DEFENSE POINTS AND AUTHORITIES

### A. BACKGROUND

This motion in limine seeks to admit four statements made by former Los Angeles County Sheriff Leroy Baca on April 12, 2013 during the upcoming trial.[1] The motion also seeks to admit the questions posed by prosecutors on each statement, in order to give full context to the answers.

Mr. Baca gave a lengthy statement that day to Assistant U.S. Attorneys Brandon Fox and Lizabeth Rhodes. Also present was FBI agent Jason Dalton. The statement was given at the offices of law firm Jones, Day in Los Angeles, with counsel for Mr. Baca being present for the entire interview.

The statement lasted several hours. The transcript of the statement runs 216 pages in length and the statement was also audio recorded.

The focus of the questions and answers revolved around Mr. Baca's actions and knowledge in the Summer and Fall of 2011. Specifically, the majority of the questions for Mr. Baca centered on the cell phone incident, obstruction of justice and other allegations contained in the indictment herein.

---

[1] Relevant portions of the interview are attached as joint Ex. "A".

- 2 -

On February 17, 2016, the undersigned counsel received confirmation from the attorney for Mr. Baca that Baca has been duly served with a trial subpoena and that Mr. Baca will assert his privilege under the 5th Amendment and decline to testify at the Tanaka trial. Mr. Baca is therefore unavailable. *U.S. v. Gadson* 763 F.3d 1189 (9th Cir. 2014).

## B. STATEMENTS SOUGHT TO BE ADMITTED[2]

The defense seeks to admit the following statements:

1. Q. [prosecutor]- So you [witness Baca] were macro-managing this. Who would be the person who was, in your opinion, the closest thing to being the leader that is micro-managing what is happening with the [sic] Anthony Brown, Gilbert Michel?

A. That would be Captain Carey.

Statement April 12, 2013, p. 136, line 15-19

This is an admission  that Mr. Baca "macro-managed" the obstruction of justice charged in the instant indictment, and tasked co-defendant Thomas Carey with "micro-managing" the obstruction. It is therefore against Mr. Baca's penal interest.


2.  Q. When did you first hear that somebody within your department had threatened to arrest an FBI agent?

A. When I got that second call from Mr. Martinez.

Q. Okay. And was this -- I assume it was soon after that agent was approached by someone within your department; is that correct?

A. Yes.

---

[2] The defense and the prosecution have conferred, and jointly agree that these statements are not covered by the protective order herein.

Statement of April 12, 2013, p. 27-28, ln. 17-22 & 1-2

Martinez was Asst. Director in Charge of the Los Angeles Office of the FBI Steve Martinez. This is a portion of the factual basis for Mr. Baca's guilty plea in this Court. At p. 6, lines 12- 20 of the Baca plea agreement, Baca admits that he knew that his deputies were going to approach FBI agent LM before the approach was made. Baca admits in his plea agreement that this lie to the federal officials on April 12, 2013 was material, and was to both FBI agents and federal prosecutors. This statement is against his penal interest.

3.   Q. When you're making your decisions [witness Baca] though, who's advice would you go to? If you said, "This is a tough issue. I want to go -- I want to speak [sic] this department, or this person about it." Who is there, that you would go to, in order to discuss a very difficult issue?

A. No one.

Statement, April 12, 2013, p. 134, ln. 10-16

Here, Mr. Baca concedes that he was, during the period of time relevant to the indictment, advised by "no one" on important issues. In essence, he is conceding that the cell phone investigation was his doing alone, unadvised by defendant Tanaka or anyone else. This statement is against his penal interest.

4. [Baca]: You know, I don't want to interfere with the FBI investigation. I have enough knuckleheads of my own that I've been able to discover, that should be out of the system.

Statement April 12, 2013, p. 169, ln. 15-19

- 4 -

In truth, Mr. Baca was instrumental in the obstruction of justice alleged in this matter. He pled guilty to knowing of the approach of agent L.M., and lying to federal officials on April 12, 2013. In his plea agreement, he does not contest a number of other facts that flatly amount to obstruction. This statement is against his penal interest.

### C. THE LAW

The defense acknowledges that the out of court statement by Leroy Baca to federal officials on April 12, 2013 is, in the main, hearsay. However, certain limited portions of the statement come under the exception of the hearsay rule as Statements Against Interest, Fed. Rules of Evidence 804(b)(3)-

> (3) Statement Against Interest. A statement that:
>
> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
>
> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

The Ninth Circuit has set out a specific test for admissibility under this section:

> "To get a statement against penal interest into evidence under 804(b)(3), the proponent must show that: (1) the declarant is

- 5 -

unavailable as a witness; (2) the statement so far tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless he believed it to be true; and (3) corroborating circumstances clearly indicate the trustworthiness of the statement."

*U.S. v. Paguio* 114 F.3d 928, 932 (9th Cir. 1997)

Here, witness Baca has been served with a defense trial subpoena, and his counsel has informed attorneys for Mr. Tanaka that Mr. Baca will assert his right under the 5th Amendment, and decline to testify at the trial in this matter. (Please see attached declaration of counsel). Therefore, Mr. Baca is clearly unavailable.

Next, the statements sought to be admitted go to Mr. Baca's role in the very scheme charged in this case: obstruction of justice in the movement of inmate A.B. and other related activities. Mr. Baca, in fact, pled guilty to statements made in the April 12, 2013 interview with federal officials. The "against interest" requirement of Rule 804(b)(3) applies to remarks that "tend to subject" the declarant to criminal liability. *U.S. v. Magana-Olvera* 917 F.2d 401 (9th Cir. 1990). The statements Baca made are clearly against his penal interest.

That Mr. Baca lied to the officials on April 12, 2013 cannot be questioned. Baca came before this Court and admitted his criminal acts, his lies. His plea agreement and statements in open court are not admissions to obstructing  justice, but rather they are admissions to lying to the officials. The government's

prosecution of Mr. Baca is ample proof that he lied, and corroborates the lies as criminal acts, without doubt against M. Baca's penal interest.

The third prong of the 9th Circuit test is satisfied by the general setting in which the statements were made. The over-all context of the statement is important to admissibility. *U.S.v. Candoli* 870 F.2d 496, 505 (9th Cir. 1989). The statements made by Mr. Baca in April of 2013 in his lawyers' offices were subject to challenge on the spot by federal prosecutors. It is also important to trustworthiness that the statements were made voluntarily, in a private setting. *Padilla v. Terhune* 309 F.3d 614, 620 (9th Cir. 2002). The prosecutors had a full and fair opportunity to contest anything Mr. Baca said, and to prosecute him if he lied. Indeed, that's precisely what happened. This background and context provides ample assurances "indicat[ing] the trustworthiness of the statement."

**D. DEFENSE CONCLUSION**

For the reasons above, the defense asks the Court to consider admitting all four statements of Leroy Baca. Each statement is admissible under Fed. Rules of Evidence 804(b)(3), and each covers an important, critical portion of the defense.

The defense further asks the Court to admit the questions put to Mr. Baca, in order to add need context. Without the questions, the jury would be wondering about the circumstances of the statements.

**3. GOVERNMENT'S POSITION**

Defendant seeks to admit four out-of-court statements made by former Los Angeles County Sheriff Leroy Baca to the government. Defendant claims these statements are admissible hearsay under the theory that they are inherently trustworthy, despite the fact that Baca lied throughout the interview and has admitted to doing so. These statements are not admissible.

Defendant asserts that each of the four statements should be admitted under Rule 804(b)(3) because (i) Baca is unavailable to testify, (ii) the statements "are clearly against [Baca's] penal interest," and (iii) the setting in which the statements were made indicate that the statements are trustworthy. As an initial matter, the government does not dispute that Baca is "unavailable" if he asserts his Fifth Amendment right against self-incrimination and does not testify. *See United States v. Gadson*, 763 F.3d 1189, 1200 (9th Cir. 2014).Nevertheless, Baca's out-of-court statements should not be admitted under Rule 804(b)(3) because they do not satisfy the remaining requirements of the rule.

Rule 804(b)(3) provides for admissibility of hearsay from an absent declarant only where the statement "so far tended to subject the declarant to . . . criminal liability" that a "reasonable person in the declarant's position" would not have made the statement unless that person "believed it to be true."*See United States v. Paguio*, 114 F.3d 928, 932 (9th Cir. 1997); *see also United States v. Lilley*, 581 F.2d 182, 188 (8th Cir. 1978) ("Rule 804(b)(3) is based on the guaranty of trustworthiness which accompanies a statement against interest. To the extent that a statement is not against the declarant's interest, the guaranty of

- 8 -

trustworthiness does not exist and that portion of the statement should be excluded."). The Ninth Circuit has held that such statements must "solidly inculpate" the declarant, *United States v. Monaca*, 735 F.2d 1173, 1176 (9th Cir. 1984); that is, they must be "truly self-inculpatory," *Williamson v. United States*, 512 U.S. 594, 595 (1994).Statements showing that a declarant "might have been criminally liable" do not suffice. *See United States v. Slaughter*, 891 F.2d 691, 701 (9th Cir. 1981) (Wallace, J., concurring in part and dissenting in part), quoted in *United States v. Magnana-Olvera*, 917 F.2d 401, 408 (9th Cir. 1990).

Here, none of the statements offered by the defense are "truly self-inculpatory," nor can they be deemed so trustworthy that they should be admitted at trial, notwithstanding the fact that they are plainly hearsay. The first of the four statements ("That would be Captain Carey"), was offered in response to the following question from the government:

> So you were macro-managing this. Who would be the person that was, in your opinion, the closest thing to being the leader that is micromanaging what is happening with the [sic] Anthony Brown, Gilbert Michel?

Baca Tr. at 136:15-19.

Defendant argues that Baca's statement, together with the government's question, constitutes an admission that Baca macro-managed the "obstruction of justice charged in the instant indictment" and that co-defendant William Thomas Carey micro-managed the obstruction. Baca's answer, identifying Carey as micromanaging something, did not "solidly inculpate" Baca in any crime (much less, specifically, the crime of obstruction of

justice).Baca's suggestion that Carey "micromanaged" "what is happening with the [sic] Anthony Brown, Gilbert Michel" is not a statement against Baca's self-interest at all.

Defendant's argument that Baca admitted he "macro-manag[ed]" the obstruction of justice also fails.  As the question and answer plainly show, Baca did not respond to the government's use of the term.  Additionally, Baca never admitted in the interview to being involved in a scheme to obstruct justice.  To the contrary, as evidence by his plea of guilty, Baca falsely denied being involved in conversations about keeping the FBI from the inmate-information and knowing that LASD deputies were going to approach Special Agent LM before LASD sergeants did so outside of her home.

Moreover, the context in which the statement was made does not support defendant's assertion that the statement was "clearly" against Baca's penal interest. There were two other points in the interview where the government discussed "macro-management" with Baca.  In the first instance, Baca acknowledgedthat he "operat[ed] at a macro level" with regards to the methods used to keep inmate Anthony Brown safe.  Baca Tr. at 35-36.  In the second instance, Baca represented that he did not know the details regarding the level of security surrounding Brown, and agreed with the government's assessment that he macro-managed "instead of micromanag[ed] this."  *Id*. at 53:1-4.  In this context, neither the government's question at page 136 of the transcript, nor Baca's answer, "truly" inculpated him.  Indeed, to the contrary, Baca likely intended the statement to be exculpatory by denying, as he did throughout the interview, knowing about some of the more

outrageous conduct that defendant and his co-conspirators engaged in.

Similarly, Baca's statement that he first learned about the approach of FBI Special Agent LM after she was approached by sheriff's deputies is not admissible under Rule 804(b)(3). On its face, Baca's statement was not self-inculpatory at all; in other words, it was not a statement that "so far tended to subject [Baca] to . . . criminal liability" that a "reasonable person in [his] position" would not have made the statement unless he "believed it to be true." *Paguio*, 114 F.3d at 932. Again, given the facts of this case, the statement appears to have been intended to be exculpatory.

Further, a reasonable person in Baca's position would not have made the statement at all because it was not true. As defendant notes, Baca has now admitted that he lied when he made that statement to the government. But that fact further establishes that the statement is inadmissible under Rule 804(b)(3). The rule explicitly requires that, to be admissible, a statement must be "supported by corroborating circumstances that clearly indicate [the statement's] trustworthiness . . . ." Fed. R. Evid. 804(b)(3)(B). Here, the statement's lack of trustworthiness and reliability is established by the fact of Baca's guilty plea. Indeed, defendant claims that the statement is admissible because it was against Baca's self-interest to lie, which he nevertheless did. It is axiomatic, however, that a statement is hearsay if the proponent seeks to offer it for the truth of the matter asserted. Defendant seemingly wants to introduce it for its falsity. Baca's out of court lie has no relevance and is not admissible in this

trial.  Accordingly, the Court should not allow the statement to come in as exception to the hearsay rule, particularly under an exception premised on the idea that certain hearsay statements carry "guarantees of trustworthiness."*See Lilley*, 581 F.2d at 188.

Next, defendant seeks to admit Baca's statement that he sought advice from "no one" when making decisions on "tough issues." Defendant's asserts that in so responding, Baca "in essence" conceded that "the cell phone investigation was his doing alone, unadvised by defendant Tanaka or anyone else."  The Court should decline this invitation to read into this statement something that is not there.  Baca does not say, either explicitly or "in essence," that the "cell phone investigation" was "his doing alone," nor can that statement be inferred from the surrounding portions of the interview. Moreover, what Baca does say – that he does not consult with anyone on very difficult issues – is not an inculpatory statement, nor one that would tend to subject him to criminal liability.  The statement is pure, inadmissible hearsay.

Finally, defendant seeks to admit Baca's statement that he did not want to "interfere with the FBI investigation" and that "I have enough knuckleheads of my own that I've been able to discover, that should be out of the system."  Defendant suggests that given Baca's plea, this statement was a lie and constitutes a statement against Baca's penal interest.  Again, the statement on its face does not inculpate Baca in obstruction of justice, as defendant suggests. It is yet another exculpatory statement by Baca, and again one arguably meant to curry favor or deflect blame, particularly because Baca states in the present tense, "I don't want to interfere with the FBI. . . . So the nature of this mission is not

inconsistent with what I want." Baca Tr. at 169:13-21; *see Gadson*, 763 F.3d at 1200. But even so, the statement is unsupported by circumstances corroborating its trustworthiness, in light of the fact of Baca's guilty plea. Accordingly, it is not admissible under Rule 804(b)(3).

Dated: March 4, 2016

Respectfully submitted,


H. Dean Steward

H. Dean Steward
Jerome Haig
Counsel for Defendant Paul Tanaka

Brandon Fox

Brandon Fox
Lizbeth Rhodes
Eddie Jauregi
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED THAT:

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672.

I am not a party to the above entitled action. I have caused, on March 4, 2016, service of the defendant's:

**IN LIMINE MOTION**

On the following parties electronically by filing the foregoing with the Clerk of the District Court using its ECF system, which electronically notifies counsel for that party.

**AUSA's EDDIE JAUREGI, BRANDON FOX AND LIZABETH RHODES**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on MARCH 4, 2016

s/ H. Dean Steward

H. Dean Steward

- 14 -