H. Dean Steward, Attorney at Law
SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
(949)481-4900
Fax: (949) 496-6753
deansteward@fea.net

LAW OFFICE OF JEROME J. HAIG
Jerome Haig, Attorney at Law
SBN 131903
21143 Hawthorne Bl., Ste. 454
Torrance, CA90503
(424) 488-0686
fax- (424)271-5990
jerome@jeromehaiglaw.com

Attorneys for Defendant
Paul Tanaka

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES, | Case No.  CR-15-255-PA |
|---|---|
| Plaintiff, | DEFENSE WITNESS PROFFER |
| vs. | |
| PAUL TANAKA | Date: APRIL 3, 2016 |
| Defendant. | |

     Comes now defendant, together with counsel, and provides this Court, pursuant to the IN CHAMBERS ORDER dated April 1, 2016 (Doc 146), its proffer of testimony of prospective defense witnesses and its list of witnesses

- 1 -

that apply to each of its defenses.

Dated: April 3, 2016          */s/ H. Dean Steward*
                              H. Dean Steward
                              Jerome J. Haig
                              Counsel for Defendant
                              Paul Tanaka

Defense witness proffer:

**Evidentiary Witnesses:**

Leroy Baca

   Mr. Baca, at all times relevant herein, was the Los Angeles County Sheriff. As this Court has been advised in multiple filings and oral argument, Mr. Baca has asserted his right against self-incrimination under the 5th Amendment to the United States Constitution. Accordingly, he is not available to testify. If he were to testify, he would provide the following crucial evidence:

- He was notified on August 18, 2011, that Anthony Brown was an FBI informant who had smuggled a cell phone into Men's Central Jail with the assistance of a deputy sheriff and an FBI agent
- He ordered Mr. Brown removed from the list of sentenced inmates to be transported to State Prison
- He ordered Anthony Brown isolated and protected.
- He ordered the matter of the cellphone, and the involvement of the corrupt deputy and the role of the FBI investigated.
- Captain Tom Carey, the ranking officer at ICIB, was tasked with the investigation.
- Mr. Baca was "macro-managing" the investigation while Mr. Carey was "micro-managing" the investigation.

- 3 -

- Baca, not defendant Tanaka, ordered critical events to occur that are now charged against defendant Paul Tanaka. Baca:
- wanted the FBI off the investigation, and LASD should do it alone (Tanaka grand jury, read to this jury);
- ordered ICIB to investigate the Brown/cell phone incident: "Get to the bottom of it." (witness Manzo and others);
- ordered ICIB to maintain Anthony Brown in the Los Angeles County Jail system (several witnesses who attended the "Saturday meeting", August 19, 2011);
- "took Brown off the bus" to state prison (witness Manzo);
- ordered (or at least did not veto and was fully briefed ahead of time) the approach of Agent Marx, with the statement, "Just don't put cuffs on her" Baca's plea documents;
- sought information constantly from others lower in his chain of command (Ex. 360, e-mail from Tanaka to Leavins: "This case is consuming his [Baca's] entire thought process. Providing him with updated tidbits helps to ease his mind.", plus phone records of calls to and from Baca)

-4-

Andre Birotte

    Former U.S. Attorney in this district during 2011. Will testify to:
- the general duties and responsibilities of the U.S. Attorney
- the relationship between the U.S. Attorney's office and the FBI
- meetings with Leroy Baca on the cell phone/Brown incident-
  • Aug. 29, 2011- large meeting with many U.S. Attorney personnel and a number of Sheriff's personnel, including Leroy Baca and Paul Tanaka. Birotte will testify that Baca did most of the talking, he was angry, and accused the FBI of breaking the law by their actions with the insertion of the cell phone into the jail facility. Tanaka said nothing during the meeting.
  • Sept. 27 meeting- Baca, Birotte, and FBI ADIC Martinez- Baca finally calmed down
    Also, will authenticate Sept. 26 letter, Baca to Birotte, angrily denouncing the FBI's actions, threatening to stop all cooperation with the FBI, and calls the FBI's actions, "illegal, unethical and irresponsible". [Ex. 352].

Paul Yoshinaga

    Mr. Yoshinaga will testify to the following facts:

    He is employed as an attorney with the County of Los Angeles, Office of County Counsel. At all times relevant to the charges herein, he was so employed and was the legal advisor to the Los Angeles County Sheriff's Department. His office was in Sheriff's Department Headquarters in Monterey Park, CA.

He verified that he was consulted by Baca, Leavins, and Carey regarding different aspects of the Anthony Brown matter.

He approved of the approach by Baca:

- Isolate the inmate
- investigate the smuggling of the phone
- to see if there was criminal activity and who may be responsible, including federal agents
- to learn steps to take to make sure that a deputy does not get compromised by an inmate to commit a crime
- ability to locate and confiscate smuggled items before they can do harm and to prevent breaches of security that impact the safety of the jail and of the public

Mr. Baca was very occupied with the matter. He accompanied Baca and Tanaka to the August, 2011 meeting at U.S. Attorney's office. He confirmed that Baca did all the talking and that no U.S. Government office objected when told that they would be investigated.

He does not recall ever being consulted by defendant Paul Tanaka regarding the matter. He had no idea about Mr. Tanaka's involvement but said that Mr. Tanaka and he would discuss matters very frequently. He surmised that the lack of inquiry from Mr. Tanaka meant that he either did not have legal questions or he was not involved.

He reviewed (email from Steve Leavins dated 8/31/11 containing attached memo from Tom Carey to Sheriff Baca dated 8/29/11 summarizing investigation.) He recalled reviewing the memo and approving its contents. Paul Tanaka was not involved in this activity. This document will be marked as defense Exhibit 362.

He will be shown 9/26/11 letter from Sheriff Baca to Andre Birotte. (Exhibit 352).  He did not write the letter but did approve of its contents before being sent. He did contribute legal information in page 2 of the letter regarding the CA Penal Code sections involved in the purported illegal conduct of FBI S.A. Marx.

The defense has advised the defense that Mr. Yoshinaga and Mr. Tanaka are life long friends. As such there is a deep personal bond between the two gentlemen.  As the defense has other character witnesses, it does not intend to use Mr. Yoshinaga in such a capacity. However, this

-7-

information has been revealed to the Court and to the Government.

Cecil Rhambo

Mr. Rhambo is retired from the Los Angeles County Sheriff's Department. At the time of the matters alleged in the indictment, he was Assistant Sheriff. As such he was directly below the chain of command of Sheriff Leroy Baca and Undersheriff Paul Tanaka.

He will testify to the following facts:

- Mr. Tanaka did not disapprove of the mission of internal affairs. Mr. Rhambo did two tours with internal affairs and it never affected his promotion in the LASD.

- Many older supervisors resented Mr. Tanaka because of the defendant's fast assent through the ranks of LASD. The resentment was the result of simple jealously, a difference of opinion regarding how the department should operate, and the fact that the department was dominated by older Cauasian men. Many older supervisors did not like Mr. Tanaka because he was "that little Japanese guy" and they especially did not like them telling them what to do.

- Mr. Tanaka was very dedicated in his work. He would not tolerate a deputy breaking the law or crossing over the line between right and wrong.

- 8 -

- Mr. Tanaka did have a desire for power and liked to be in control
- Sheriff Leroy Baca used to use Mr. Tanaka as his foil. Specifically, he would order Mr. Tanaka to discipline a member of the LASD. Afterwards, Mr. Baca would meet with the disciplined deputy and try to smooth over what had happened.

Regarding the matters related to the Anthony Brown investigation:

Mr. Rhambo observed Mr. Baca's obsession with the matter and the FBI's intrusion into what he thought was his domain. At one point he pointedly told Mr. Baca: "don't fuck with the FBI!"

Documents related to his testimony:

Mr. Rhambo will be asked to review Exhibit 337, a 9-page document containing an email sent at his direction on August 23, 2011 reflecting enforcement of the policy regarding persons entering LASD custodial facilities.

Charles Antuna

Mr. Antuna is employed by the LASD, with a current rank of Captain. The areas of inquiry will include:

- When Mr. Antuna was a Lieutenant at Twin Towers Correctional Facility (TTCF), Mr. Tanaka was

- 9 -

Assistant Sheriff over custody. In or around 2005, Mr. Antuna was assigned to TTCF at the request of Mr. Tanaka. He will testify that at no time did he approve of unlawful use of force by deputies on inmates. The defendant never instructed the supervisors at the jail to impede or obstruct the ACLU or the FBI in any of their investigations, or to hamper the ACLU in their mission to collect evidence, monitor inmates, and collect evidence.

- Command of TTCF was a very demanding assignment as the facility employed many young deputies who could benefit from Mr. Antuna's vast work experience and demonstrated leadership qualities.

- Mr. Tanaka ordered that Mr. Antuna stay at TTCF for two years to provide guidance and stability. A quicker turnover would be detrimental to providing consistent leadership to young deputies. Mr. Antuna agreed even though such an assignment was not the most desired in the department.

- That Mr. Tanaka was a very demanding boss, but one who demanded of himself the same as he expected from others. He was not one to try to be liked and would be a difficult boss to work for if he was not pleased with one's performance.

- He did not believe that Mr. Tanaka was the "final word" on promotions

- Mr. Tanaka did not condone an "ends justify the means" approach to policing. He never condoned or

encouraged anyone to go over the line from lawful to unlawful conduct.

Kevin Hebert

Mr. Hebert is currently a Commander with the LASD. He is under subpoena but may not be called as a witness. The defense believes he is a relevant and necessary witness. However, the defense has been advised by his attorney that he is out of town on a family emergency until Tuesday, April 5, 2016. There is a slight possibility that he will be available on Monday, April 4, 2016.  Commander Hebert will testify to the following matters:

- Upon his promotion to Lieutenant in 2005, the defendant requested that he be transferred to watch commander at Men's Central Jail.
- Mr. Hebert was assigned to MCJ for many of the same reasons Charles Antuna was assigned to TTCF.
- Past LASD practice had always dictated that good supervisors never spent more than one year working in custody as patrol captains were always looking for highly regarded lieutenants and sergeants. However, because such quick turnover was detrimental to providing consistent leadership to young deputies, Mr. Hebert was expected to spend 2 years at MCJ before requesting a transfer.

- Mr. Hebert will testify that Mr. Tanaka demanded that Lieutenants and watch commanders be proactive in their supervision of deputies. This included "walking the floors" to interact with deputies, provide guidance and corrections, and view the relationships with the inmates.

David Real

Character related evidence:

David Real joined the US Marine Corps shortly after high school. After getting back from his 3rd overseas combat deployment, his wife wanted to settle down and start a family. He wanted to be a peace officer but no departments were hiring. It was the middle of the recession and cities were cutting back. So Mr. Real put himself through the LASD academy and graduated. A short while later he was hired on as a police officer with Gardena P.D.. At that time he didn't know defendant Paul Tanaka.

He was suffering from PTSD related to his combat tours. But either his pride or lack of understanding prevented him from getting care. This led to forgetfulness, mistakes, not sleeping, and other related issues. All of this prevented him from doing his police work correctly. He was let go from Gardena P.D. at the end of his 6-month probationary period.

Even though he was recently fired and out of work, he was asked to speak at a Gardena event. His speech impressed the defendant and GPD chief Ed Medrano. After the event, Mr. Tanaka asked him what he was doing and he said he'd just be let go as a Gardena cop. This surprised the defendant. Mr. Tanaka asked if he'd like to work at LASD. Real responded that he'd take any job. He needed to support his family and was desperate. A short while later Real got a call from LASD CPT Hebert, who told him there were no deputy openings (hiring freeze or all positions full) but that he could possibly get a job as a security officer. Real said he would take it. Hebert asked him to apply for a deputy position in case there was a future opening so he could eventually be considered for it even if he got the security officer position.

At the same time, the defendant spoke to Gardena Police Chief Ed Medrano. Apparently Medrano did not know Real or anything about his history. Because he had been discharged, Medrano couldn't bring him back (at least not right away) as a police officer. So he offered him a job as a jailer. The next day he was offered the security position with LASD. But since he accepted the job with Gardena as a jailer, he turned it down.

In 2011, he heard that LASD was hiring deputies. Because he had already gone through their academy, he was hired in August 2011. He was put to work right away at MCJ, working on the 3000 floor and on 1700 floor (called "high power").

- 13 -

His work as a deputy on 3000

Deputy Real worked on 3000 floor of MCJ for 3 years, beginning in August 2011. He's still assigned to MCJ but is on loan to the homicide gang task force. This is what he said about 3000:

- inmates housed there were at the highest level of general population, called level 8
- includes gang members, murders, rapes, armed robbery, etc
- K-10 inmates are also housed there. A K-10 is a "keep away" from everyone else in the jail, and is usually in leg irons and waist chains when outside a cell.
- There were lots of inmate attacks on guards.  This included physical attacks and "gassing."  "Gassing" is when an inmate assaults a deputy with any single or mixture of bodily excretions, including blood, shit, piss, spit, etc.
- When Deputy Real was helping move an inmate, he was attacked and jumped on. He suffered a torn labrum and rotator cuff. He was IOD for 6 months.
- The whole 3000 boys thing was a problem but also overblown. But the problem deputies were dealt with (fired, suspended, moved) and the floor got a little better as far as UOF were concerned.

- 14 -

The 3000 floor now houses a different mix of inmates. The level 8 inmates have been moved to other areas. Therefore, UOF is down on 3000 but probably higher on the floors where the high-risk inmates are now housed.

**Character witnesses:**

Ed Medrano

Mr. Medrano is the Chief of Police for the City of Gardena. He has known Mr. Tanaka for over 15 years. He has worked closely with him in matters related to the defendant's role as Mayor of Gardena. He trusts him and believes him to be an honest person in all his dealings. He also supported the defendant when he ran for Los Angeles County Sheriff in 2014.

Helen Hayase

Ms. Hayase is a practicing attorney. She is currently employed as a senior staff attorney with the California Court of Appeal, 2nd Judicial District. Her office is in the Ronald Reagan Building and Courthouse in Los Angeles. She is from Gardena and is life-long friends with the defendant. She has maintained close contact with him and views him as an honorable and honest person.

Carlos LiFosjoe

Mr. LiFosjoe is the owner of Gardena Nissan, and new and used car dealership in the City of Gardena. He has known the Mr. Tanaka since he was elected to the Gardena City Council in 1999.  As one of the largest retail businesses in Gardena, Mr. LiFosjoe has had frequent dealings with Mr. Tanaka and the City of Gardena. He knows the defendant to be fair and honest in all these encounters.

Charlotte Lynch

Ms. Lynch has been active in a wide range of civic projects and endeavors in Gardena for many years. She has had an opportunity to work with, meet and see Mr. Tanaka on a regular basis for years. She has discussed him with other members of the community for years. She will testify that Mr. Tanaka's reputation in the community is that he is a truthful person.

**Defenses and related witnesses:**

The following witnesses apply to the defenses of public authority and "following orders"[1]:

Andre Birotte

Cecil Rhambo

Paul Yoshinaga

Leroy Baca


Based upon the current state of the evidence, the defense of advice of counsel will no longer be pursued.


Dated: April 3, 2016                    _/s/ H. Dean Steward_
                                        H. Dean Steward
                                        Jerome J. Haig
                                        Counsel for Defendant
                                        Paul Tanaka

---

[1] The defense believes that public authority is the legal equivalent of "following orders." However, as the term "following orders" is cited in the Court's order, then it will be utilized here.

- 17 -