



# County of Los Angeles

## Sheriff's Department Headquarters

### 4700 Ramona Boulevard

### Monterey Park, California 91754-2169

LEROY D. BACA, SHERIFF

September 26, 2011

The Honorable Andre Birotte
United States Attorney
312 Spring Street
Los Angeles, California 90012

Dear Mr. Birotte:

This letter will serve to confirm and thank you for agreeing to hold the responses due for various Federal Bureau of Investigation (FBI) requests seeking voluminous documents concerning employees at the Men's Central Jail of the Los Angeles County Sheriff's Department (LASD).

The requests are as follows:

(1) Subpoena dated August 24, 2011, requesting documents and information on all employees at the Men's Central Jail from January 2009 to the present, regarding among other things: use of force, internal investigations, external investigations, taser use, equipment requests, personnel performance information, discipline, critical incident forms or reports, inmate deaths, medical record information, etc., for production on September 28, 2011, at 9:30 a.m.

(2) Subpoena dated August 24, 2011, for personnel information on twenty three (23) specific named employees of LASD, including by reference to "all deputies with the last name 'Gomez' and 'Rodriguez'" for production on September 21, 2011, at 9:30 a.m.

(3) Subpoena dated August 24, 2011, requesting information, including medical and health care records for twenty (20) specifically named inmates for production on September 14, 2011, at 9:30 a.m.

(4) Request for Preservation of Records dated August 25, 2011, for all email accounts for ninety two (92) email addresses of LASD employees.

*A Tradition of Service*

> **EXHIBIT**
> tabbies®
> 352

A73367

The Honorable Andre Birotte                    -2-                    September 26, 2011

As I indicated at our prior meeting, I am extremely displeased with the conduct of the FBI in causing the introduction of a cell phone into the jail system as illegal, unethical, and irresponsible.  The Sheriff's Department will be conducting an investigation into the breach of security of the jail system and will be examining inmate Anthony Brown's allegations that he received a cell phone from a deputy who received it from an FBI agent.  The FBI admitted the cell phone was their property after it was discovered during a search of the jail.  The Sheriff's Department's investigation of this matter will encompass possible violations of California Penal Code Sections 4575 and 4573, conspiracy, entrapment, coercion, and civil rights violations.  The Sheriff's Department will also fully investigate allegations regarding excessive force by deputies at the Men's Central Jail during the period from January 2009 to the present.  The deputy involved with the cell phone has since resigned from the Sheriff's Department. The Sheriff's Department is continuing its investigation of his involvement in this matter.

The expertise and experience of the Sheriff's Department in conducting these types of investigations are considerably contrasted by the FBI's actions in this case.  The FBI has no experience in the running of a jail system of such magnitude as the Los Angeles County Jails nor have they completed any where near the number of investigations involving matters emanating from within the confines of a jail system. Their lack of qualification combined with unethical and illegal actions in this instance demonstrates the need to allow the Sheriff's Department to conduct its own investigation free from the encumbrance of the FBI's attempt to justify their actions retroactively by now seeking information with an over broad request for documents. Given that the FBI's sweeping requests asks for sensitive personnel information affecting numerous employees, my concern also encompasses knowing what their basis is for this inquiry.  One request asks for records for all personnel who worked at Men's Central Jail over a three year period.  This request alone encompasses records of hundreds of employees.  It is estimated that it will take more than 1,000 man-hours to retrieve all of the documents asked for in the subpoenas.  It is also estimated that it could take the FBI more than a year to review all of these documents once they are gathered.  Clearly the requests are not focused on issues pertaining to specific allegations concerning excessive use of force, but rather, are a fishing expedition designed to speculatively seek anything that might be interpreted as an indication of culpability. Acquisition of documents prior to the Sheriff's Department's completion of its own investigation will likely taint the fair and truthful completion of a properly focused investigation.

I am also entitled to know what specific evidence there is, if any, for initiating an investigation into Sheriff's Department personnel without my knowledge and what would be the source initiating the FBI's involvement in this matter.  I am at a loss to determine what would justify the taking of illegal actions by the FBI in order to investigate unspecified allegations of excessive use of force.  I also do not understand what was important enough for an investigation of this Department to

EXHIBIT
352

A73368

The Honorable Andre Birotte                   -3-                      September 26, 2011

proceed while assuming there are no grounds for cooperation by our respective law enforcement agencies.  The FBI's decision to proceed without input or participation by the Los Angeles County Sheriff's Department is not in the best interests of truth or justice, particularly since there is now confirmed information that FBI investigators participated in the sanctioning of criminal acts in furtherance of an investigation by their admission of ownership of the cell phone that was discovered in the jail.

A further related issue is the allegation of excessive uses of force at the Twin Towers Correctional Facility made by Esther Lim, ACLU Jail Monitor.  Ms. Lim claimed that she observed excessive force as described in a declaration filed in court.  That matter was investigated by the Sheriff's Department at the outset and has also been investigated by the Office of Independent Review.  It is my understanding that the FBI has interviewed Ms. Lim as well, but the FBI refuses to share the results of the interview with Sheriff's Department investigators who are seeking a complete and thorough review of that matter.

I invite the U.S. Attorney to participate in the Sheriff's Department investigation in this instance by monitoring our progress along with the Office of Independent Review.  The Sheriff's Department will provide regular updates on the status of the investigation at your request.  I also ask the United States Attorney to instruct the FBI to withdraw their above referenced requests for information and documents until the Sheriff's Department has completed its investigation, whereupon the results of the full investigation will be shared.  Due to the FBI's apparent aforementioned incompetence in investigating alleged civil rights violations concerning force taken by deputy sheriffs, I am requesting the United States Attorney's Office ameliorate support of the FBI's actions and support the Sheriff's Department's investigation until its conclusion.  I am very hopeful of a mutually agreeable resolution, but if not, the Sheriff's Department will not be able to continue participation with the FBI in many ongoing joint task force missions due to the breach of trust which will undoubtedly take time and much corrective action to heal.

The cardinal rule of all law enforcement agencies, local or federal, is simple.  One cannot break the law in order to enforce the law.

Attached to this letter please find questions pertaining to this matter that must be answered in furtherance of our investigation.  Thank you for your courtesy and cooperation.  I look forward to your response.

Sincerely,

LEROY D. BACA
SHERIFF

**EXHIBIT**

352

A73369

## AMERICAN CIVIL LIBERTIES UNION (ACLU)

- Subsequent to a 1979 United States District Court judgment, the Court, in 1985, accepted a Sheriff's Department's agreement for the ACLU to monitor the jails. To what extent were the FBI agents trained or supervised regarding the rules the ACLU is required to follow?

- Concerning the FBI Civil Rights Unit, did the personnel direct or encourage the ACLU monitor(s) to violate the rules of inmate complaints by not reporting the complaints to the Sheriff's Department?

**EXHIBIT**

tabbies®

352

A73370

# CRIMINAL ACTS

- When did the FBI decide to investigate the conduct of deputies working in the County jails?

- Who authorized the investigation?

- Which office in the FBI was tasked to conduct the investigation?

- What are the names of the agents who are conducting the investigation?

- What were the specific reasons for the investigation and the specific reasons for not notifying my office?

- What was the purpose of introducing a cell phone into the County jail for a specific inmate?

- Why was inmate Brown who was convicted of armed robbery facing more than 400 years in prison, selected to be a principle supporter of the FBI investigation?

- What are the name(s) of the agent who gave an FBI cell phone to a deputy and instructed the deputy to give the phone to inmate Brown?

- Was the inmate who received the cell phone promised any specific or general favors for accepting the cell phone?

- Was there any money promised to the deputy for assisting the FBI in introducing the cell phone into the jail?  If so, how much money was promised?

- How much money was given to the deputy, if any?

- How many FBI agents and their supervisors were involved in the decision to place a cell phone into the County jail?

- Did the agents and their supervisors who decided to give inmate Brown a cell phone seek the advice or consent of the U.S. Attorney's Office?

- Was the U.S. Attorney's Office told that a cell phone would be introduced into the County jail prior to introducing the cell phone?

- If so, what advice was given to the FBI by the U.S. Attorney's Office and by whom?

EXHIBIT 352
tabbies

A73371

## POLICY

- To what extent is the FBI familiar with LASD policies concerning use of force standards, training and procedures used by Sheriff Department personnel;

- Did the FBI have any familiarity with the above policies prior to introducing the cell phone into the County jail?

- Concerning use of force reporting and investigative procedures, to what extent were the FBI investigative agents familiar with these policies?

- Concerning the County Office of Independent Review (OIR); to what extent were the FBI agents who are involved in the jail probe familiar with the OIR?

- Were the supervisor(s) of the investigative agents familiar with the purpose and practices of the OIR when the authorization for the jail probe occurred?

- Concerning the Sheriff's Department's personnel performance index, does the jail probe investigation agents and their supervisors have any training or familiarity with this index?

- What advice did the U.S. Attorney provide the FBI prior to the FBI introducing the cell phone into the County jail?

**EXHIBIT**

352

A73372

## RISK MANAGEMENT

- Concerning the tactics of having FBI agents using inmates as investigative aides, were any risk related issues raised by the agents or their supervisors?  If so, to what specific extent?

- Concerning force allegations by inmates in jails or prisons, did the FBI agents and their supervisors assigned to the probe receive any training as to how to conduct the investigation?  If so, what specific training was provided?

- Concerning the California Penal Code, were the FBI agents and their supervisors prior to the jail probe, authorized and trained in criminal law regarding:
    - Illegal contraband in the County jails and California prisons.
    - Bribery.
    - Conspiracy to commit a crime.
    - Entrapment.

  If so, to what extent did this training have on the agents' and supervisors' decision to conduct a secret investigation?

  If so, to what extent did this training have on the agents' and supervisors' decision to give a cell phone to an incarcerated inmate?

- What are the location(s) of any additional cellular telephones, currently in use, owned or deployed by the FBI within the confines of the Los Angeles County Jail System?

- Please disclose any and all items of contraband given to any Los Angeles County Jail inmate(s), through any means, including a description of the item, the identity of the inmate receiving the item and the date, time, and location of occurrence.

- Regarding information relative to or in support of any ongoing LASD criminal investigation into inmate abuse, please provide the identity of any deputy(s) involved in the physical abuse of inmates, specifically of those cases where the abuse is alleged to be still occurring.

- Is the FBI working in conjunction with the ACLU in investigating alleged abuse in the Los Angeles County Jail?  Is the ACLU, at the direction of the FBI, currently instructing inmate witnesses and/or victims not to cooperate with Sheriff's Department investigation?



**EXHIBIT**

352

A73373

## RISK MANAGEMENT  (Continued)

- Are the jail probe agents familiar with any ongoing investigations by LASD of alleged inmate abuse and one homicide in the jails? Are the FBI or the U.S. Attorney aware that the ACLU is also charged with being court monitor for the county jails, thus could be involved in issues raising conflicts of interest with the parties involved?

**EXHIBIT**

352

tabbies®

A73374