H. Dean Steward
SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
949-481-4900
Fax: (949) 496-6753
deansteward@fea.net

LAW OFFICE OF JEROME J. HAIG
Jerome Haig, Attorney at Law
SBN 131903
21143 Hawthorne Bl., Ste. 454
Torrance, CA90503
(424) 488-0686
fax- (424) 271-5990
jerome@jeromehaiglaw.com

Attorneys for Defendant
Paul Tanaka

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>PAUL TANAKA<br><br>　　　　Defendant. | Case No.　CR-15-255-PA<br><br>MEMORANDUM OF POINTS AND AUTHORITIES TO EXCLUDE EVIDENCE RELATED TO "VIKINGS"<br><br>Date: APRIL 4, 2016<br>Time: 7:30 AM |

Comes now defendant, together with counsel, and moves this honorable Court for an order excluding any reference to the word "Vikings" as it may relate to Mr. Tanaka.

Dated: April 3, 2016　　　　　　　 _/s/ H. Dean Steward_
　　　　　　　　　　　　　　　　 H. Dean Steward
　　　　　　　　　　　　　　　　 Jerome J. Haig
　　　　　　　　　　　　　　　　 Counsel for Defendant
　　　　　　　　　　　　　　　　 Paul Tanaka

- 1 -

I. BACKGROUND

At the commencement of the defense case, defendant Paul Tanaka testified. At the commencement of cross-examination by Assistant United States Attorney Brandon Fox, the government inquired about the defendant's membership in what it derisively described as a "clique" while assigned to Lynwood Station. The government then asked about the "Vikings." A defense objection resulted and the Court conducted a conference outside the presence of the jury. At the conclusion of the conference, the Court invited written argument regarding the admissibility of the line of questioning.

II. ALL REFERENCE TO "VIKINGS" SHOULD BE EXCLUDED

The proffered evidence is irrelevant

The relevance of the Vikings to this case is simply non-existent. There has been no reference to any of the defendant's conduct outside the time frame set forth in the indictment. Specifically, Mr. Tanaka was not asked about any specific conduct while a deputy sheriff outside of his time as Assistant Sheriff or Undersheriff with the exception of one supervisory role, in 1991, that related to his position as watch commander at a custodial facility. To the extent that questions were asked, it was merely to establish his promotional history in the LASD.

Moreover, the defense did not, as counsel intimates, "simply gloss over" certain details to inoculate him from criticism. Instead, the focus was on fighting the government's smear campaign against him from current and former LASD employees who did not like him when he was assistant sheriff and undersheriff, and now sense an opportunity to get back at their one-time supervisor, a campaign that clearly extended to its first few questions on cross-examination. This appears to be a move of desperation by the prosecution, not as a valid method of providing relevant facts to the jury to assist it their fact-finding mission.

Indeed, had the Government not alleged multiple acts well outside the time frame of the alleged criminal misconduct herein, the defense would have not needed to go into any conduct prior to August 18, 2011, that did not directly relate to the alleged obstruction of the federal grand jury proceeding.

The government, in it's moving papers supporting questioning on this irrelevant and inflammatory topic, do not cite to a single incident involving the defendant or a single witness that can say the defendant did anything contrary to his trial testimony.[1]

Lastly, the government refers to a civil lawsuit in which Mr. Tanaka was neither a defendant nor a witness.

---

[1] In the government filing, it quotes extensively from trial transcripts herein that the defense has not seen and has not been supplied.

The proffered evidence is unduly prejudicial

Any relevance of this evidence must be weighed against the potential for serious prejudice. See Federal Rules of Evidence 403. The Rule 403 weighing process-that of balancing the probative value of the proffered evidence against its potential for unfair prejudice or confusion of issues-is primarily for the district court to perform. United States v. Layton, 767 F.2d 549, 553 (9th Cir.1985); see also United States v. Rincon, 28 F.3d 921, 925 (9th Cir.), cert. denied, 513 U.S. 1029 (1994).

The Ninth Circuit has historically looked askew at a prosecution's attempts at using improper, inflammatory, and prejudicial evidence to distort the fact-finding mission of the jury. In United States v. Miller, 874 F.2d 1255(9th Cir. 1989), the court reversed multiple convictions based in part upon the erroneous admission of irrelevant and prejudicial evidence. The Court held:

> "We conclude that the district court abused its discretion in admitting extensive testimony concerning the polygraph examinations that Miller failed. ***We also conclude that the district court improperly permitted the evidence concerning Miller's alleged bribe of Grayson to be used to establish intent for all of the charges for which Miller was tried.*** Lastly, we hold that the prosecution improperly invited the jury to use expert testimony

-4-

as character evidence. In light of these errors, we conclude that Miller's conviction on all counts must be reversed." Id. at 1280(emphasis added)

In U.S. v. Bradley 5 F.3d 1317 (9th Cir. 1994), the defendant was charged with felon in possession of a firearm. The prosecution successfully entered into evidence a separate homicide. The Ninth Circuit reversed the conviction, finding that the homicide evidence was of "dubious value". Id. at p. 1321: "Our review of the record leads us to conclude that the trial judge abused his discretion in admitting the evidence of the … homicide." Id. at p. 1320.

In many other cases, the Ninth Circuit has been very cautious in the area of admission of inflammatory evidence with marginal or no connection to issues. U.S. v. Bland 908 F.2d 471 (9th Cir. 1990), (details of murder inadmissible); U.S. v. Layton,  supra,(unduly prejudicial tapes of multiple suicides, conviction reversed). U.S. v. Ellis 147 F.3d 1131, 1136 (9th Cir. 1998), (defendant charged with receiving and concealing stolen explosives. Trial court allowed evidence of the destructive capability of the stolen explosives. Reversed: the evidence was "unfairly prejudicial and had virtually no probative value *to the actual charges Ellis faced*." [emphasis added]) Accord: U.S. v. Merriweather 78 F.3d 1070 (6th Cir. 1996), (taped conversations relating to uncharged conspiracy were

more substantially prejudicial than probative and should not have been admitted, conviction reversed).

The proffered evidence is remote in time

The conduct for which the Government is urging the Court's consideration happened in the late 1980s and early 1990s. The relevance of this evidence, if it ever was so in relation to Mr. Tanaka, has certainly withered with age. Moreover, the government can point to no conduct either during his time at Lynwood Station, before it, or after it, that in any way supports any conduct ascribed to the defendant in a civil lawsuit.

Rebutting the baseless allegations will consume undue time. There is no basis for the allegation that Mr. Tanaka is a "neo-nazi," "white supremacist," or espouses views of such groups. The defendant is of Japanese ancestry and surely would not be allowed in such a group. Indeed, the discrimination of Japanese Americans in the United States is a matter of public record and common knowledge.

In order to counter the proffered evidence, the defense will need to present counter witnesses and evidence, including:

1. The defendant's spouse, who is Latino
2. Other members of Lynwood Sheriff's station, many of whom share the racial and ethnic diversity of Los Angeles.

3. The fact that other "alleged Vikings" were African-American, Latino, Asian, mixed-race, and Caucasian. Many hold prominent positions in public and private life, with no one ever accusing them of taking part in or condoning the offensive behavior the government seeks to introduce.

4. That Mr. Tanaka has been involved as an elected city councilmember and Mayor of Gardena since 1999. He has had 5 successful elections to city-wide office, including three as Mayor. On the last two contested mayoral elections, the defendant received 62% of the vote.

5. According to the 2010 United States Census, Gardena is a racially diverse city, with the following racial makeup:

    a. 9.3% Caucasian

    b. 24.4% African American

    c. 26.2% Asian

    d. 37.7% Latino

III. CONCLUSION

For the above reasons, and those set forth on the record of this case, the defense urges this Court to sustain its objection and not allow the Government to pursue its line of questioning.

Dated: April 3, 2016                    __/s/ H. Dean Steward__
                                        H. Dean Steward
                                        Jerome J. Haig
                                        Counsel for Defendant
                                        Paul Tanaka

- 8 -