H. Dean Steward  SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
949-481-4900
Fax: (949) 496-6753
deansteward@fea.net

Jerome J. Haig  SBN 131903
21143 Hawthorne Bl. #454
Torrance, CA  90503
424-488-0686
jerome@jeromehaiglaw.com

Attorneys for Defendant
Paul Tanaka

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>            Plaintiff,<br><br>    vs.<br><br>PAUL TANAKA<br><br>            Defendant. | Case No.  CR-15-255-PA<br><br>SENTENCING BRIEF;<br>EXHIBITS A THROUGH C<br><br>Date: JUNE 27, 2016<br>Time: 8:30 AM |

Comes now defendant, Paul Tanaka, together with counsel, and submits the

below sentencing brief for the Court's consideration. Counsel and defendant represent

that they have each read the Pre-Sentence Report herein and discussed it.

Dated: June 14, 2016                 /s/ H. Dean Steward
                                       H. Dean Steward
                                       Jerome Haig
                                       Counsel for Defendant
                                       Paul Tanaka

- 1 -

TABLE OF CONTENTS

I.      Introduction                                                        p. 4

II.     Pre-Sentence Report Objections and Amplifications      p. 6

        Obstruction                                                        p.7

        Altered Records                                                    p. 7

        Finances                                                           p. 7

III.    Paul Tanaka is Unjustly Taking the Fall for Leroy Baca-
        Sentencing Disparity in Spades                              p. 8

IV.     The Government has Distorted Paul Tanaka's Record of
        Accomplishments and Who Mr. Tanaka Really Is
        Under 18 USC §3553(a)                                        p. 10

V.      Support from Family, Friends and the Community       p. 13

VI.     Bail on Appeal                                                    p. 13

VII.    Conclusion                                                        p. 13

Proof of Service                                                          p. 15

TABLE OF CASES

Cases

*U.S. v. Cooper*, 394 F. 3d 172 (3rd Cir. 2005)                    p. 12, 13

*U.S. v. Serafini*, 233 F. 3d 758 (3rd Cir. 2000)                  p. 12


Statutes

18 USC §3553(a)                                                   p. 10, 14


Other Sources

*Daily Breeze*  4-7-16                                             p. 12

*Good Day LA* TV news program                                     p. 8

*Jewish Journal*   5-31-16                                        p. 9, n. 1

## I. Introduction

The government has distorted the facts as to Paul Tanaka in this case from day one. To write in their sentencing memo:

"[T]he evidence showed instead that he was the ringleader from the beginning."

Govt. sentencing position, docket 169, p. 1

is at best mis-leading, and at worst a knowing distortion of crystal clear facts. The truth is that the crimes charged in this case were planned, directed and carried out by Leroy Baca, the former Sheriff for the County of Los Angeles. None of this would have happened if Baca had simply cooperated with the FBI at the beginning.

While the government has extended to Baca what can only be described as a sweet-heart kiss of a deal, *by Baca's own admissions*, this was Baca's operation, carried out by Capt. Tom Carey. In the lengthy statement given to FBI agents and prosecutors on April 12, 2013, Baca said:

1. Q. [prosecutor]- So you [Leroy Baca] were macro-managing this. Who would be the person who was, in your opinion, the closest thing to being the leader that is micro-managing what is happening with the [sic] Anthony Brown, Gilbert Michel?

A. That would be Captain Carey.

Statement April 12, 2013, p. 136, line 15-19

2. Q. When you're making your decisions [Sheriff Baca] though, who's advice would you go to? If you said, "This is a tough issue. I want to go -- I want to speak [sic] this department, or this person about it." Who is there, that you would go to, in order to discuss a very difficult issue?

A. No one.

- 4 -

Statement, April 12, 2013, p. 134, ln. 10-16

In light of these and other Baca admissions, and the over-all facts presented at trial, Paul Tanaka was not "the ringleader from the beginning". Baca himself told federal officials that he, Leroy Baca, called the shots on the Brown/cell phone incident. The boots on the ground were the Thompson series of defendants, who were simply following Baca's orders. These facts could not be any clearer.

As for the government statement in their brief that Paul Tanaka "fostered a culture that led to the significant problems in the Los Angeles County jails", the statement is patently ridiculous.  Mr. Tanaka was a fearless executive in the Department who fought to weed out problem deputies, not encourage them. The only culture he fostered was excellence and he made daily efforts to accomplish it.

For example, while the jury heard only an edited form of the facts on the notorious deputy Christmas party incident in December of 2010 at the Quiet Cannon restaurant in Montebello, the truth is that in the aftermath of the incident, Mr. Tanaka was a member of the committee that fired all of those deputies. He fully supported that action, and countless other personnel actions eliminating problem deputies from the force over many years.

Mr. Tanaka coddled no one in the Department. His fast rise in the Department, his decisive personnel actions and occasionally abrupt management style garnered him enemies along the way. These enemies (several of whom testified at trial) have been vocal and aggressive in pushing the government's agenda throughout the investigation and trial of this matter. Their interest is personal, not professional, and they have delighted in helping the government.

/

/

/

## II. Pre-Sentence Report Objections and Amplifications

FACTS

1. §7-13 and 21-23- these cases are not related cases. They had zero to do with the Brown/cell phone incident and/or Paul Tanaka.

2. §30- as the Court is aware, ADIC Steve Martinez called Baca and only said, "I want my phone back." He did not reveal the FBI investigation.

3. §32, last sentence- no one knew at this point about Brown being an FBI informant.

4. §33- no evidence that Tanaka stood up and slammed table, nor did he say anything. Tanaka told no one he was "in control", or any words to that effect.

5. §35- call to Carey was not "to have the interview terminated".

6. §38- no evidence that Carey and Tanaka discussed moving Brown, "in order to keep him away from the FBI".

7. §40- inaccurate. The policy mentioned was already in place and had to do with law enforcement visits generally. The interaction on the policy was between Mr. Tanaka's assistant Chris Nee and Thompson only.

8. §42- at trial, and now, the defense disputes that a writ via fax was sent to the Sheriff's from the U.S. Marshals.

9. §43- the defense disputes this paragraph. Mandatory MCJ interviews were not required.

10. §47- the FBI took no steps to locate Brown, other than a weak review of the public access on-line website of prisoner locations. They also did not attempt to re-interview Brown again until he was in state prison.

11. §51- no evidence that "Carey took this information to Tanaka".

12. §72- no evidence that Tanaka "made changes to a draft policy" regarding law enforcement interviews of inmates.

13. §75 & 76- here the Probation Office simply parrots the government's closing argument. The two paragraphs appear to have been authored by government counsel. Regardless of authorship, such pro-government, unbalanced rhetoric has no place in a pre-sentence report. The two paragraphs and the two level increase are inappropriate and should be stricken.

OBSTRUCTION §57& 77

The defense objects to the PSR's suggestion that Mr. Tanaka may have obstructed justice at §57. The passage cited by Probation in the PSR is not obstructive testimony, and is literally true.

Additionally, the government, at page 12 of their sentencing memo, also suggests double counting obstruction as an additional two level enhancement. Common sense and Guideline law do not allow such action. The portion of the trial record cited shows nothing more than truthful testimony by Mr. Tanaka. There is no factual basis for this additional enhancement.

ALTERED RECORDS §65

Factually, since the government did not attempt to contact, locate or speak with Brown after the meeting where the FBI agents fled from MCJ, this two level addition does not apply. The actions of the deputies did not halt Agent Marx in any way. The deputies' actions were not material to obstruction because Agent Marx did nothing more to locate Brown than check a public record website. Marx never picked up the phone to try to locate Brown, or make any other efforts. Indeed, ADIC Steve Martinez could have simply called Leroy Baca again, and asked for access to or physical custody of Brown. He failed to do so.

FINANCES

In the section of the PSR starting at §124, several inaccuracies are presented. First, because of the huge financial strain this case has caused the Tanaka family, Mr. Tanaka's wife has tried to increase her monthly income by working extra shifts. This added work supplied around $5,000 extra for family support. She will be unable to

continue this pace and workload much longer. §130 of the PSR recognizes this problem in the last sentence.

Second, should the conviction withstand appellate review, Mr. Tanaka's monthly pension will be significantly reduced. It is likely that the reduction per month will be in the $1,500 range. He may also have to re-pay some of the funds he has received by way of pension.

Third, in reviewing Mr. Tanaka's taxes, 2013 included a one-time, lump sum payment for funds the County owed Mr. Tanaka at the end of his employment. A 60% tax was paid by Mr. Tanaka on these funds. This money was routine for all senior County employees upon ending their public service careers, and included items like unused sick pay and vacation. Mr. Tanaka's financial picture is better portrayed in the 2014 an 2015 tax returns.

The defense asks the Court to keep in mind the above points when considering any fine.

**III. Paul Tanaka is Unjustly Taking the Fall for Leroy Baca- Sentencing Disparity in Spades**

Baca's total control of the operation, to which Paul Tanaka was ordered by Baca to participate for a short period of time, is proven by the fact that while Leroy Baca was on vacation in the Far East from September 8, 2011 to September 22, 2011, ***nothing happened in this case.*** (See timeline attached as Ex. "A"). When Baca returned, he continued his anger with the FBI, giving a strident interview to the *Good Day LA* TV news program, and writing a combative, accusatory letter to ADIC Steve Martinez, attached as Ex. "B". In the letter, Baca labels the FBI's conduct as "illegal, unethical and irresponsible". (Attached Ex. "B', page 2) Mr. Tanaka was not mentioned in either the interview or the letter.

In addition, the testimony and statements of others support the concrete reality that Baca was in charge and ran the entire incident:

► Capt. Carey- Baca ordered the investigation- Baca's orders: "conduct an investigation, get to the bottom of it, keep Brown safe."

Sexton trial testimony 5-14-14, p. 109 & 115

Carey grand jury 8-19-15 p. 56

► Capt. Carey- "Baca's mentality was one of, how dare the FBI smuggle a phone in the jail without telling 'me'"

Carey statement 12-28-12, p. 7

Further, at the beginning of the case, ADIC Martinez called Leroy Baca about the cell phone, not Paul Tanaka. Baca then called the Saturday meeting (where he arrived in a track suit), not Paul Tanaka. Baca later had Brown pulled off the bus to state prison, per trial testimony. Tanaka was uninvolved.

Even more telling, during the big meeting with then-U.S. Attorney Andre Birotte, it was Baca who did all the talking, per now-Judge Birotte during trial testimony. Baca sought constant updates from deputies, not Paul Tanaka. Tanaka merely passed on to Baca what was conveyed to him. Still further, it was Leroy Baca who drafted, edited and signed the letter of acidic complaint to Andre Birotte on September 26, 2011. (See attached Ex. "B", attachments excluded) Again, Paul Tanaka was uninvolved.

In their sentencing memo, the government feigns concern about disparity in sentencing. And yet they offered and agreed to a deal, that if accepted by this Court, gives Leroy Baca the gift of no more than 6 months in jail, while they gleefully request 5 years for Mr. Tanaka. In light of the facts in this case, the government's position *creates* tremendous disparity.

The government may respond that Baca is different, as he has issues that were submitted to this Court under seal, and revealed to the defense. However, these alleged

facts fly in the face of Leroy Baca's speech and acceptance of honors from a local religious group last month.[1]

**IV. The Government has Distorted Paul Tanaka's Record of Accomplishments and Who Mr. Tanaka Really Is Under 18 USC §3553(a)**

The government and the media have sought to demonize Paul Tanaka throughout this process. This a distortion. Below is a verbatim letter[2] in support of Mr. Tanaka, showing the real, caring compassionate person he is:

*June 7, 2016*

*The Honorable Percy Anderson*

*U.S. District Judge*

*United States District Court for the Central District of California United States Courthouse*

*312 North Spring Street Los Angeles, CA 90012*

*RE: United States of America v. Paul Tanaka*

*Dear Judge Anderson:*

*I write to you on behalf of Paul Tanaka. I have probably interacted with Mr. Tanaka a total of six times. I haven't had many conversations with him, and truthfully, I do not know much about him.*

---

[1] *Jewish Journal* 5-31-16  "Ex-sheriff Baca is Honored by Congregation Bais Naftoli While Awaiting Sentencing"
[2] This letter is also included in the package of letters, attached as Ex. "C".

*However, I do know this. My son and his son attend the same school and are in the same grade, 1st grade. They have been in the same classroom since Kindergarten. My son, Malcolm, is autistic. My wife and I have decided to try and "mainstream" Malcolm's education. He attends school and sits in class with non-autistic children, such as Mr. Tanaka's son. As you can imagine, this is not always easy. Malcolm has to face, and overcome, many daily challenges both academically and socially.*

*Mr. Tanaka has been one of the bright spots in Malcolm's development. In Kindergarten, Mr. Tanaka volunteered his time with helping and assisting in the classroom. The Kindergarten teacher noticed Malcolm was particularly anxious and nervous about reading in the classroom. Mr. Tanaka took it upon himself to personally work with Malcolm on his reading. They would sit in a quiet room and work on his reading together. Malcolm thrived in this arrangement. He became more confident in his reading skills and looked forward to his time with Mr. Tanaka.*

*Since this interaction, Malcolm, as a first grader, just finished reading the first book in the "Harry Potter" series. This is Malcolm' s accomplishment for sure, but it is due in part to the time and energy Mr. Tanaka spent with Malcolm.*

*Beyond the academics, Mr. Tanaka has encouraged his son to make sure Malcolm is not alone or isolated socially. His son makes sure that Malcolm is playing with other kids and is included in their activities. We hear from Malcolm's aides that Mr. Tanaka's son has taken it upon himself to "watch out" for Malcolm.*

*The lessons, ideas, and principles that Mr. Tanaka is instilling are making a difference in not only Malcolm's life, but Mr. Tanaka's son's as well. His son, like Malcolm, is still young. Their minds and hearts still have so much shaping to take place. At a time in our society when we see so much anger, hate and despair, Mr. Tanaka is teaching his son to accept, love and tolerate. That is what will make a lasting difference for the future of our world. My hope is that people like Mr. Tanaka will be given the opportunity to continue to help make that difference.*

*Christopher T. Hicks*

In addition, as the PSR points out, Mr. Tanaka has been mayor or a council person of 60,000 residents in Gardena, California for more than 17 years. He's done a superb job as mayor. He brought his CPA skills and experience to benefit the city and is credited with helping to pull the city out of near-bankruptcy in 2006. He was instrumental in clearing up a $26 million debt owed because of two failed city programs initiated by the prior administration. *Daily Breeze* 4-7-16, "Despite Conviction, Gardena Embraces Mayor Paul Tanaka Until the Bitter End".

Community service such as the above has long been a solid ground for downward departures/variances. In *U.S. v. Serafini*, 233 F3d 758 (3rd Cir. 2000), the court approved a three level downward departure for, "exceptional community service." Serafini himself was also an elected official. Important to the court of appeals was the unique service that Serafini had rendered, "Several constituents and friends described situations in which Serafini extended himself to them in unique and meaningful ways during times of serious need." *Id.* at p. 770.

In *U.S. v. Cooper,* 394 F.3d 172 (3rd Cir. 2005), the District Court received 24 letters pleading for leniency because of Cooper's charitable donations and activities. *Id.*

at 174. The Judge granted a four-level downward departure on that basis, and sentenced Cooper to six months' house arrest and another 30 months' probation, expressing his belief that Cooper's "community and charitable activities have been truly exceptional, and that's just not the amount of money he spent on the things, but also the amount of personal effort, and work, and help that he has given to so many people." *Id.* at 175.

Now, post-Booker, downward variances have by in large supplanted the traditional Guideline downward departure. A variance is appropriate here, based on the attached letters, which describe personal deeds and efforts on behalf of community members well beyond the scope of the job of mayor.

### V. Support from Family Friends and the Community

Attached hereto and made a part hereof is Ex. C", a series of letters from people who know Mr. Tanaka. They are in a unique position to share with the Court their impressions and observations of the personal factors surrounding him. The letters are heartfelt and insightful.

### VI. Bail on Appeal

As the defense understands it, the government will not oppose bail on appeal for Mr. Tanaka. However, if the Ninth Circuit affirms the convictions of the Thompson series of defendant's, the government will seek a status conference regarding issues to be presented to the Ninth Circuit by Mr. Tanaka, and continued bail on appeal.

Mr. Tanaka is, without question, not a flight risk or a danger to the community. The Thompson defendants presented around twelve issues to the Ninth Circuit. The Circuit had earlier held that the issues were substantial, and granted bail to those defendants. Mr. Tanaka would present many of those same issues, plus several more, unique to this case.

- 13 -

**VII. Conclusion**

In the sentencing brief the government filed in regard to the seven defendants in the Thompson case, at no point do they argue that Paul Tanaka was the "ringleader from the beginning". Indeed, they could not argue it there, and they cannot here- the facts do not support the assertion.

The government also brushes past the many accomplishments of Paul Tanaka, all positive: respected law enforcement leader for 30+ years, extensive community service work, CPA license used to help both the LASD and the City of Gardena, city council member, mayor, and as set out in Mr. Hicks letter above, caring father and valued community member.  The government asks the Court to ignore all of this, contra to the demands of 18 USC §3553(a).

Given all of the factors presented in this case, plus the mitigating information presented here and in the PSR, a probationary sentence would be fair and reasonable. On the grounds of sentencing disparity alone, viewing the Leroy Baca plea bargain, probation for Paul Tanaka is appropriate, reasonable and fair.

Dated: June 14, 2016                    /s/ H. Dean Steward

                                        H. Dean Steward
                                        Jerome Haig
                                        Counsel for Defendant
                                        Paul Tanaka

- 14 -

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED THAT:

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age.

My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672.

I am not a party to the above entitled action. I have caused, on June 15, 2016, service of the defendant's:

**Defense Sentencing Brief**

On the following parties electronically by filing the foregoing with the Clerk of the District Court using its ECF system, which electronically notifies counsel for that party.

**AUSA Brandon Fox, Liz Rhodes, Eddie Jauregie**

**and by E-mail to USPO Laurene Harding**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 15, 2016

/s/ H. Dean Steward
H. Dean Steward