UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---

HONORABLE PERCY ANDERSON, JUDGE PRESIDING

---

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | )No. CR **15-255**PA |
| VS | ) |
| | ) |
| **PAUL TANAKA,** | ) |
| | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Reporter's Transcript of Proceedings
**SENTENCING**
Los Angeles, California
MONDAY, JUNE 27, 2016

ANNE KIELWASSER, CRR, RPR, CSR
Federal Official Court Reporter
312 North Spring Street, Room 432
Los Angeles, California 90012
Telephone: (213) 894-2969
anne.kielwasser@gmail.com
AKtranscripts.com

UNITED STATES DISTRICT COURT

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:

**Brandon D Fox**
AUSA - Office of the US Attorney
312 North Spring Street 12th Floor
Los Angeles, CA 90012
213-894-0284
Fax:  213-894-0141
E-mail:  Brandon.fox@usdoj.gov

**Lizabeth A Rhodes**
AUSA - Office of US Attorney
Public Corruption and Civil Rights Section
312 North Spring Street 13th Floor
Los Angeles, CA 90012
213-894-3541
Fax:  213-894-6436
E-mail:  Lizabeth.rhodes@usdoj.gov

**Eddie A Jauregui**
AUSA - Office of the US Attorney
General Crimes Section
312 North Spring Street 12th Floor
Los Angeles, CA 90012
213-894-4849
Fax:  213-894-0141
E-mail:  Eddie.jauregui@usdoj.gov


ON BEHALF OF THE DEFENDANT:

**H Dean Steward**
H Dean Steward Law Offices
107 Avenida Miramar
Suite C
San Clemente, CA 92672
949-481-4900
Fax:  949-496-6753

**Jerome J Haig**
Law Office of Jerome J Haig
21143 Hawthorne Boulevard Suite 454
Torrance, CA 90503
424-488-0686
Fax:  424-271-5990
E-mail:  Jerome@jeromehaiglaw.com

MONDAY, JUNE 27, 2016                                    8:30 A.M.

~ ~ ~

P R O C E E D I N G S

~ ~ ~

COURT CLERK:  Calling Item No. 1, CR 15-255.  USA versus Paul Tanaka.

Counsel, state your appearances, please.

**MR. FOX:**  Good morning, Your Honor.  Brandon Fox, Lizabeth Rhodes, and Eddie Jauregui on behalf of the United States.

**THE COURT:**  Good morning.

**MR. STEWARD:**  Your Honor, Dean Steward on behalf of Mr. Tanaka.  He's present.

**MR. HANK:**  And Jerome Hank on behalf of Mr. Tanaka.

**THE COURT:**  Good morning.

**MR. STEWARD:**  Good morning, Your Honor.

**THE COURT:**  Would you and your client approach the lectern, please.

This matter is before the Court for the pronouncement of judgment and the imposition of sentence.  Is there any reason why judgment and sentence should not be imposed at this time?

**MR. STEWARD:**  No, Your Honor.

**THE COURT:**  The Court is contemplating imposing

UNITED STATES DISTRICT COURT

4

several conditions of supervised release.  I want to give you notice of those conditions so that if you have any objections, we can take them up now, or I'll put the matter over to allow you to file written objections.

And those conditions are as follows:  The defendant shall comply with the Rules and Regulations of the United States Probation Office, General Order 05-02 and General Order 01-05, including the three special conditions delineated in General Order 01-05.

During the period of community supervision, the defendant shall pay the special assessment and any Court ordered financial obligation in accordance with the judgment's orders pertaining to such payment.

The defendant shall apply all moneys received from income tax refunds to any outstanding court ordered financial obligation.  In addition, the defendant shall apply all moneys received from lottery winnings, inheritances, judgments, and any anticipated or unexpected financial gains to any outstanding Court ordered financial obligation, and the defendant shall cooperate in the collection of a DNA sample.

Do you wish to confer with your client?

**MR. STEWARD:**  Not on those conditions, Your Honor, no.

**THE COURT:**  Do you have any objections to any of

UNITED STATES DISTRICT COURT

those conditions?

**MR. STEWARD:**  No, Your Honor.

**THE COURT:**  Was the Presentence Report timely disclosed to both parties?

**MR. FOX:**  Yes, Your Honor.

**MR. STEWARD:**  Yes, Your Honor.

**THE COURT:**  The Court has received, read, and considered the Presentence Report, letters received on behalf of the defendant and the parties' sentencing memoranda. Apart from any issues raised in your Sentencing Memoranda, which we'll address shortly, is the Presentence Report factually accurate?  Do you have any objections, corrections, or additions?

**MR. FOX:**  None from the government, Your Honor.

**MR. STEWARD:**  Other than what's contained in our sentencing brief, Your Honor, no.

**THE COURT:**  All right, why don't we address first the factual objections and corrections of the defendant; and after that, we'll address any potential enhancements in the Presentence Report.

All right, I believe there was an objection to paragraphs 7 through 13 and 21 through 23.

Do you wish to be heard on -- on that?

**MR. STEWARD:**  Only, Your Honor, to state the obvious, that they were not related to Mr. Tanaka, the Brown

cell phone incident or anything having to do with this case.

**THE COURT:**  Does the government wish to be heard?

**MR. FOX:**  Yes, Your Honor, just briefly.

First of all, we did want paragraphs 7 and 8 to reflect to the extent you want to keep those paragraphs in the PSR, that the two defendants listed in 7 and 8 have both been convicted at this point of civil rights abuses.

As we stated in our sentencing Reply, and I'll just state it briefly here, these were offenses that came out of the federal government's investigation of civil rights abuses in the jails.  It is the investigation that Mr. Tanaka sought to obstruct.  So, we think it is appropriately in the PSR.

**MR. STEWARD:**  Your Honor, if I may reply.  He, Mr. Tanaka, didn't seek to obstruct anything having to do with those particular cases.  Under that theory, there is probably another dozen cases out there that they could throw in as somehow related because Mr. Tanaka was the undersheriff at the time, and I think these are improperly added.

**THE COURT:**  You think -- well, the Court doesn't believe this is going to have any effect on the Guideline calculation or the defendant's sentence; however, the Court does find by a preponderance of the evidence that each of these cases resulted from the FBI's investigation into the jails, which the defendant stands convicted of attempting to

obstruct and is related to this case.  So, therefore, that objection is overruled.

I believe you also had an objection to paragraph 30.

**MR. STEWARD:**  Correct, Your Honor.  And I'm going to guess the government may agree with me on this.

**THE COURT:**  Well, I don't know.

**MR. FOX:**  And I believe that he's referring to the portion about what Mr. Martinez informed Mr. Baca about in the initial phone call.

We provided in our Reply a 302, a portion of a 302, that discusses how Mr. Martinez informed Mr. Baca exactly what's stated in the PSR.  So, we think that this is an appropriate statement in the PSR.

**MR. STEWARD:**  Relying on trial testimony, Your Honor, I think several people talked about the fact that nobody knew what the FBI -- whether there even was an investigation at that point at that initial phone call, and it was just:  "I want my phone back."

**THE COURT:**  The Court believes there is sufficient evidence in the record to support the inclusion of that paragraph into the PSR; and, therefore, the objection is overruled.

You also objected to paragraph 32.

Do you wish to be heard on that?

MR. STEWARD:  Same objection as paragraph 30, Your Honor.

MR. FOX:  And, Your Honor, I can add on that point that the recording is -- the first recording is of Gerard Smith and Mickey Manzo interviewing Anthony Brown to show that they knew at that point he was an informant; and at the very end of that recording, they -- they sum up what they learned that day, instead of -- *if we take that to our supervisor, is that accurate;* and Anthony Brown basically says:  Yes, that's accurate.

So, given that there was a meeting between Mr. Tanaka and all those parties later, we think that this is an accurate reflection of the facts.

THE COURT:  And the Court finds by a preponderance of the evidence that that paragraph was properly included in and is supported by the evidence at trial; and, therefore, the objection is overruled.

I believe you also had an objection to paragraph 33?

MR. STEWARD:  I'll submit that, Your Honor.

THE COURT:  Does the government wish to be heard?

MR. FOX:  No, Your Honor.

THE COURT:  All right.  The Court finds that there was sufficient evidence in the record to support the inclusion of that paragraph; and thus that objection is

overruled.

You also objected to paragraph 35, and I believe the government does agree with you that...

**MR. FOX:** Yes, Your Honor.

**THE COURT:** All right. So, that objection is sustained, and that reference will be stricken from the Presentence Report.

You also had an objection to paragraph 38.

**MR. STEWARD:** We submit, Your Honor.

**MR. FOX:** No response, Your Honor.

**THE COURT:** The Court finds that there is sufficient evidence in the record to support the inclusion of paragraph 38; and, therefore, that objection is overruled.

There is also an objection to paragraph 40.

**MR. STEWARD:** Yes, Your Honor. We'll stand on our objection in the -- in the sentencing brief.

**MR. FOX:** Same with the government, Your Honor.

**THE COURT:** All right.

That objection is overruled. The Court finds by a preponderance of the evidence that the paragraph is supported by the evidence at trial including the exhibit itself.

You also had an objection to paragraph 42.

**MR. STEWARD:** Yes, Your Honor, we'll stand on the trial testimony on that issue.

**MR. FOX:**  That's fine, Your Honor.

**THE COURT:**  All right, the Court believes that there is sufficient evidence to support that a writ was faxed to the sheriff's department; and, therefore, that paragraph is supported by sufficient evidence in the record, and any objection is overruled.

You also had an objection to paragraph 43?

**MR. STEWARD:**  Submit.

**MR. FOX:**  Same, Your Honor.

**THE COURT:**  The Court finds that Exhibit 34 supports the inclusion of paragraph 43, and there was sufficient evidence in the record; and, therefore, that objection is overruled.

There was also an objection to paragraph 47.

**MR. STEWARD:**  Yes, Your Honor.  Our two-sentence objection is, literally true, supported by the record, and we stand by it.

**MR. FOX:**  Your Honor, I'm not even sure what the objection really is here.  It -- it doesn't appear that he's challenging any of the factual assertions in the paragraph.

So, it seems like he's just trying to add portions to the paragraph; and we think that those portions are not accurate that he wants to add.  He's saying that there is no evidence that the FBI took steps to locate Brown.

As Your Honor is aware, not only did the FBI

come on August 23rd; but after that date, they searched for him in the LASD'S computer system, could not find him.  They issued a writ for him, could not -- asked the district court to issue a writ for him.  That was ignored by the sheriff's department.

And then later asked the sheriff's department if they could interview Anthony Brown, and Mr. Carey's e-mail to Mr. Leavins discussing the formal request for an interview, it shows that the federal government continued to look for Anthony Brown while he was within the sheriff's department system and being hidden.

**MR. STEWARD:**  We disagree with that view, Your Honor.  We stand by our two-sentence objection in paragraph 47, No. 10 of our objections.

**THE COURT:**  The objection is overruled.

The Court finds that there is sufficient evidence in the record to support the inclusion of paragraph 47 in the Presentence Report.

You also had an objection to paragraph 51.

**MR. STEWARD:**  We'll submit, Your Honor.

**MR. FOX:**  Same with the government, Your Honor.

**THE COURT:**  There is sufficient evidence --

The Court finds that there is sufficient evidence in the record to support the inclusion of that paragraph in the Presentence Report; and, therefore, the

objection is overruled.

You also had an objection, I believe, to paragraph 72.

MR. STEWARD:  Submit as well, Your Honor.

MR. FOX:  That's fine, Your Honor.

THE COURT:  The Court finds there is sufficient evidence in the record or by the trier of fact -- could have found that there was -- and from that exchange -- that there was -- that there is a preponderance of the evidence that the defendant participated in making changes to that policy; and, therefore, the objection is overruled.

All right, I'd like to turn to the *enhancements*, unless there are additional objections.

MR. STEWARD:  Your Honor, we had also objected to 75 and 76 paragraphs as conclusions and opinions that are not properly within a Presentence Report.

And that's on page 7 of our Sentencing Brief at the top.

MR. FOX:  Your Honor, I think those are the enhancements you're referring to.

THE COURT:  I believe those are the enhancements. So, why don't we turn to those next.

Why don't we turn first to the *obstruction* enhancement.  And I'll hear from the government.

MR. FOX:  Your Honor, the defendant committed a

further -- significant further obstruction by lying under oath at trial.  The two that we pointed out that the probation department agrees could be the two statements that he made that were provable and proven false at trial were, one, that Mr. Tanaka stated he could not provide updates to Mr. Baca when Mr. Baca asked for them because the quote was, from Mr. Tanaka, he wasn't handling the investigation in a way that he could provide the answers that Mr. Baca needed.

And then the second one was that Mr. Tanaka would have the investigator call Mr. Baca when he was asked for updates.

And as the trial -- the cross-examination showed, on the last point there was, I think, one call between anybody and Mr. Baca besides Mr. Tanaka, anyone involved in the case besides Mr. Tanaka, only one time was somebody in contact with Mr. Baca.

Meanwhile, the phone records showed that Mr. Tanaka was in tremendous communication with -- a tremendous amount of communication with those involved in the obstruction scheme beneath him, and also he had significant contacts with Mr. Baca according to the phone records.

And I think the evidence also showed to the first point that Mr. Tanaka was getting updates all the time, and he was somebody who was very aware of what was going on. The jury agreed with that.  The jury convicted him and

rejected his defense.

So, the government proved its case beyond a reasonable doubt, and I believe that Mr. Tanaka's testimony was proven false also.

THE COURT:  Does the defense wish to be heard?

MR. STEWARD:  Yes, Your Honor, on both of those points.

First, with the Court's permission, let me read the exact sentence that counsel has just talked about.

Mr. Tanaka's response to Mr. Hague's question.  Mr. Hague asks:  "Why couldn't you answer?"  Answer Baca, of course.  The exact words are:  "Because I wasn't handling the investigation or involved in a way that I could provide him the answers that he needed."

The part about "I wasn't handling the investigation" is demonstrably true.  Carey was handling the investigation, not Tanaka.

The "involved in a way that I could provide him with answers" is that he was not physically on top of what was going on.  He was receiving information periodically and passing it to Baca, and that's all.  He was not part of the investigation.

And as he said in the transcript shortly thereafter, Mr. Tanaka has never been an investigator in his entire career.  It wasn't the sort of thing that he did; and,

15

therefore, this particular sentence is absolutely true.

The second part about the constant updates and the rest of that, counsel has conceded that a lot of that is based upon phone records. We have no idea what phone conversations were happening with a cold AT&T phone record.

Mr. Tanaka, as the Court is well aware, was in charge of far more within the sheriff's department than this particular incident.

He ran everything, and I mean everything, of an 18,000 employee organization on a day-to-day basis.

The phone calls cannot show obstruction of justice.

And we would submit.

**MR. FOX:** Your Honor, may I reply to that, please?

**THE COURT:** Yes.

**MR. FOX:** Okay, on the last point, it doesn't matter what anybody was speaking to Mr. Baca about. The -- the bottom line is that there was one call between Mr. Baca and any of these people.

The statement that Mr. Tanaka said on the stand was that he would have the investigator call Mr. Baca because Mr. Tanaka didn't have answers.

There were no calls beside one between Mr. Baca and those individuals. So, that shows that Mr. Tanaka lied on the stand about that point, because they were not

calling him.  And of course if he ordered somebody to do something, they would have listened to him.

On the first point, Mr. Tanaka told everybody on August 20th that he was in charge of the operation, that from that point on Mr. Tanaka was being updated.  Even his own witness, Mr. Yoshinaga, stated that Mr. Tanaka was involved in meetings that he saw regarding this issue.

So, Mr. Steward talks about how Mr. Tanaka was never an investigator.  That was also a theme they tried to draw out at trial, tried to paint him as a CPA and not somebody who actually knew anything about any investigations.

That was untrue.  He was a deputy who worked in the jails, he was a deputy who worked in patrol, he supervised both of those areas.  He is somebody who supervised investigations.  And whether he was the one doing the investigations or not, he was handling the investigation in his own way.  We believe that both of these statements that he made are perjurious statements.

**MR. STEWARD:**  Just, finally, Your Honor, even if everything counsel just said is true, which we dispute, but even if it's all true, it still doesn't amount to obstruction of justice.  You have to plug in a phone record here and take a statement over here and do this and do that.  It's not clear, and it's not sufficient to make a finding for obstruction of justice.

**THE COURT:**  All right, the Court finds that the government has not sustained its burden of showing that the defendant in essence perjured himself; and, therefore, the objection is sustained.

I'm going to next turn to the enhancement for altering and fabricating records, which I believe the defense has objected to.

**MR. STEWARD:**  We have, Your Honor.

**THE COURT:**  All right, do you wish to be heard?

**MR. STEWARD:**  Briefly, Your Honor.

Our position is that even if those people below Mr. Tanaka took the actions, and it appears they did, it's not material, and it comes back to our argument of a few moments ago about what the FBI did or did not do.

It's our position that the alterations weren't material in a sense that the FBI was not actively looking for Mr. Brown at that point, that the changes and the names didn't make any difference one way or the other.  And again, they didn't try to interview Brown until he was actually in state prison.

They had what they wanted from Mr. Brown; and, therefore, the lack of materiality should defeat this enhancement.

**MR. FOX:**  Your Honor, the jury was instructed about the materiality requirement for the offense itself.

This -- this enhancement doesn't say anything about materiality.  But the jury was instructed that in order to find the defendant guilty, they had to find the materiality component to it.

And Mr. Steward is focused on one aspect of the obstruction of justice, Mr. Brown.  Even in doing so, he's misrepresented the facts because the FBI was looking for Mr. Brown as the evidence showed.

But that ignores the number of weeks that this was going on, the -- the fact that they told deputies not to talk to the FBI, not to talk to the federal government, that they said that the FBI and the federal government were manipulating the witnesses and so on.  It also ignores several weeks later how they went out, conducted surveillance of FBI agents and threatened to arrest an FBI agent.

This was extensive in scope, and it involved the creation, fabrication, alteration of many records.  So, it meets the criteria under 2J1.2b3a and b3c.

**THE COURT:**  In this case the evidence was clear that coconspirators altered and fabricated records to prevent the FBI from contacting Inmate Brown.  They created false records within the department's computer system showing that Brown was in protective custody when, in fact, he was in the medical ward on the 8000 floor, and they falsified records

indicating that Brown had been released.

The original record's jacket was taken and additional fabricated records were created when the coconspirators rebooked Brown under various aliases.

In a conspiracy a defendant can be held accountable for the actions of another; and the commentary to the sentencing commission guidelines provide that a defendant is not just accountable for his own conduct but also the actions of others committed in furtherance of a jointly undertaken criminal activity.

The Court finds that that enhancement was properly applied. It applies under a number of different sections because this offense involved the alteration or fabrication of a substantial number of records and documents hiding inmate Brown from the federal government.

It also applies because this offense was extensive in scope as it involved numerous participants and occurred over a substantial period of time and involved witness tampering and the threatened arrest of an FBI agent.

So, the objection is overruled.

Let's turn next to the *abuse of trust* enhancement.

Do you have an objection?

MR. STEWARD: Yes, we do, Your Honor.

Under probation's analysis, all law

enforcement personnel would be -- would have this enhancement added. We think that's a wrong position; and given Mr. Tanaka's actions in the case, there was no breach of trust, and we would submit it.

**MR. FOX:** Just briefly, Your Honor, Mr. Tanaka was in a position where he supervised everybody in the sheriff's department. He, as Mr. Steward said, he was involved in the day-to-day operations of all these people.

He used these people in order to commit this obstruction of justice. He abused his position in that way. So, anybody who is a law enforcement officer who abuses their position in the way that Mr. Tanaka did is certainly subject to this enhancement.

That's what the PSR states, that's what the probation officer states, and that is a correct reading of the law especially given these facts, Your Honor.

**THE COURT:** All right, the Ninth Circuit has held that police officers are accorded public trust to enforce the law. The public, including fellow law enforcement agents, expect that police officers will not violate the laws that they're charged with enforcing.

The defendant took advantage of that trust to adversely influence a grand jury investigation. And this is precisely the type of situation contemplated by Section 3B1.3 as an abuse of a position of public trust.

And, therefore, the defendant's objections are overruled.

And the Court finds that the probation officer correctly concluded that the defendant's use of his position as the second highest ranking employee in the sheriff's department constitutes an abuse of a position of public trust.

All right, I believe you also had certain objections to certain financial conditions.

I'll hear from you if you want to be heard on those.

MR. STEWARD: Your Honor, it wasn't as much objections as it was amplifications and -- and clarifications, trying to give the Court an accurate picture of Mr. Tanaka's finances.

It would appear from the Presentence Report that he's doing far better than he, in fact, is; and perhaps it's because it doesn't take into account the extra overtime his spouse has incurred, the expenses of this particular case, and the projected loss of retirement income as we set out in the brief.

I would submit it to the Court with those comments.

MR. FOX: Your Honor, we don't have a response.

THE COURT: All right, I don't believe that the

inaccuracies cited by the defendant will have a meaningful effect on the defendant's ability to satisfy any Court ordered financial obligation.

All right, I believe we've covered the enhancements to which the defendant had an objection.

Has the defendant and both counsel read the Presentence Report and the addendum to the Presentence Report?

**MR. FOX:**  Yes, Your Honor.

**MR. STEWARD:**  Yes, Your Honor, we have.

We did have the four-level enhancement parole in the offense.

**MR. FOX:**  Your Honor, I do not remember seeing that as an objection, but we are prepared to argue it if...

**THE COURT:**  I don't remember seeing it as an objection, either.

**MR. STEWARD:**  If I blew that, then I'm objecting now orally.

**THE COURT:**  All right.

**MR. STEWARD:**  This really dovetails with another argument, Your Honor; and that is, the government's comment about how Mr. Tanaka is somehow a ringleader in all of this. We hotly dispute that.

I think it's clear from the beginning that there was only one ringleader in this case, and that was

Leroy Baca.  Mr. Baca -- if you --

Perhaps the most telling thing is the timeline that we submitted to the Court, and this is Exhibit A of our Sentencing Brief.  This is one page of about seven pages of the entire case.

But what's really striking is that in the middle of all of this, from September 8 to September 22nd, 2011, Mr. Baca is on vacation in Taiwan.  During that period of time, nothing happened in this case.  Absolutely nothing.

Government counsel will say:  Well, they were -- the deputies were still surveilling the agent in this case.  That was ordered before Baca left; and, really, there were no activities or actions that we heard about until he returns.

He returns on September 22nd, four days later he does two things.  This is former Sheriff Baca.  One, he gives an interview to ABC's Good Day LA where he talks about his resentment of the intrusion into the sheriff's department by the FBI.

He also sends what I've called a steaming letter to U.S. Attorney Andre Birotte, which we attached to our sentencing brief, also bitterly complaining about everything that the FBI has done and how it may well be illegal.  None of these type of activities happened from September 8 to September 22nd.

Mr. Tanaka was in his office, serving as usual as the under-sheriff, and none of this other stuff happened.

Baca himself has told anybody that will listen that this was his operation. He was the one that ordered all of this. He was the one that took that initial phone call; and, indeed, if he had simply cooperated with Steve Martinez from the FBI, day 1, we wouldn't be here right now. None of us would be here.

So, to call Mr. Tanaka a ringleader is simply unfair. His role in all of this was to collect the information as ordered by Leroy Baca and give the information to Baca.

At various times there was frustration on Mr. Tanaka's part that we heard about in trial, that he couldn't get the information that Baca was looking for. But even that doesn't matter.

What matters here is that if there was a ringleader, it was Leroy Baca and nobody else.

This comes, all the way circled back to role in the offense. Mr. Tanaka's role in this case was not a four-level enhancement type. It was not a two-level enhancement type.

And, again, to the extent the government has labeled him a ringleader, we object; and the facts do not

25

support that label.

Thank you, Your Honor.

THE COURT:  Does the government wish to be heard?

MR. FOX:  Yes, Your Honor.

You saw plenty of e-mails.  You heard plenty of testimony discussing how Mr. Tanaka was the one who was in charge, Mr. Tanaka was the one who was receiving all of this information.  They were discussing strategy with Mr. Tanaka.

The people were reporting directly to Mr. Tanaka, the people from both ICIB and OSJ.

And, importantly, nothing that Mr. Steward says about Mr. Baca's roles, even if that were correct, would matter, because the comment No. 4 to the *aggravating role enhancement* says:  "There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy."

So, even if Mr. Steward were correct about Mr. Baca's role, and I think that Mr. Baca would dispute that, but even if he were correct, they could both be leaders.

And given Mr. Tanaka's role, the number of people who were reporting to him, in fact; and, again, the e-mails and the testimony you heard about his involvement, we believe that this enhancement is appropriate.

THE COURT:  All right, for the reasons set forth

by the government, the Court finds that the role enhancement was properly applied in the Presentence Report; and, therefore, the objection is overruled.

All right, putting aside for the moment the objections, has the probation office correctly analyzed and applied the guidelines in this case?

**MR. STEWARD:**  Other than the comments I've made this morning, Your Honor, and in our sentencing brief, yes.

**MR. FOX:**  Yes, Your Honor.

**THE COURT:**  Does the defense wish to be heard?

**MR. STEWARD:**  Yes, Your Honor, we'd like to.  If we may visit the 3553(a) factors for a moment.

The government seems to discount the community service Mr. Tanaka has performed over the years. Cynically, they called it being in politics is in the business of making friends.

I've represented many, many public servants over the years, and I find that view most cynical.

Mr. Tanaka was involved in politics and city government in Gardina for one reason and one reason only, it was to make his own city a better place, which he did.  We have letter after letter explaining that to the Court, and these are not people that Mr. Tanaka sought out so he could get a letter from them later in court.

These are people genuinely in the community

UNITED STATES DISTRICT COURT

who live in Gardina every day and can see the improvements that he's been responsible for.

I have a very short quote from Brenda Jackson of the Raleigh Park Homeowners Association.  This was in an April edition of the Daily Breeze.

Ms. Jackson says:  "Paul is very receptive.  When we thought there was a lot of drug dealing going on in the park, he came and talked to us.  He talked to the police.  He even sat there at the park for a couple of days to see what was going on.  Who does that?  He's totally honest, open, and extremely transparent."

And, Your Honor, this is the kind of statement that the Court sees in letter after letter as those that were attached to our brief.  It's community service of the highest order, not for any personal gain, not for any personal reason other than, as I said before, to make Gardina a better place.

And 60,000 people in that city, most of them will say since Mr. Tanaka has been associated with city government, things have gotten better, including the financial side, which is obviously very, very important.

We submit it, and I quoted the entire letter from Mr. Hicks in my brief.  I've never done that before.  I thought that the letter was insightful, and I wanted to share that with the Court and highlight it, which is the reason I

put it in.

But reading that letter, you come away with the -- the impression that Mr. Tanaka is caring, helpful, and compassionate man.  That's a 180 degrees from what the government has tried to portray him from the beginning of this case, and it's much more unfortunate.

The people who have written the letters to the Court are the people that truly know Mr. Tanaka.  They're family friends, they're people he went to grade school with, people he's interacted with for 40 years, and all of them present a marvelous picture of someone who is a good father, he's a good husband, he's a good member of the community, he's a good brother, generally a good person.

My other comment, Your Honor, has to do with disparity, and I noticed that in the probation department's addendum, the very last sentence they -- they point out that this may well be a grounds for a variance, downward departure.

I don't know what to say about the situation with Mr. Baca, and I understand the Court hasn't ruled on whether or not the Court is going to accept the plea bargain negotiated for Mr. Baca.  But just the cold record, looking at the disparity between a potential six-month sentence and what the government seeks here can only be described as stunning.

Mr. Baca's role in this case, I would submit, he himself laid out in the two-and-a-half hour statement he made to federal officials; and we quoted parts of that both in pretrial motions and in our sentencing brief.  It just seems that it would be simply unfair, wholly disparate for Mr. Tanaka to receive a sentence like the government is asking for, and Mr. Baca to end up with no more than six months in custody.

I can't put words any clearer than that.  It just seems wholly unfair to me, and we would leave it to the Court to sort that out.

Regardless of what happens to Mr. Baca, let's take him off the table for a moment, our view is that the guideline range here should be a Level 14.

We've already expressed our objection to the other enhancements.

He has a criminal history of category 1 with a range of 15 to 21 months.

Given Mr. Tanaka's tremendous community service, his exemplary conduct as a father, husband, brother, and community leader, and given the facts of this case, we suggest that a probationary sentence is fair and reasonable under 18 U.S.C., Section 3553(a).

Thank you.

**THE COURT:**  Does government wish to be heard?

**MR. FOX:** Yes, Your Honor.

Mr. Steward discusses disparity, and he ignores the sentences already imposed by this Court.

Steve Leavins, 41 months, a lieutenant that served under Mr. Tanaka by several levels. He received a sentence of 41 months.

Greg Thompson, 37 months. Again, a lieutenant serving under Mr. Tanaka by several levels.

So, disparity actually works both ways. You should look at the sentences that the Court has already imposed and not just one that might be pending before this Court.

As we addressed in our briefs, there is a difference in many different ways between Mr. Baca and Mr. Tanaka. If you look at the quality and quantity of evidence, that's one of the issues; and if you look also at the crimes they pled guilty to, in addition to Mr. Baca's health issues that we have addressed with the Court.

Mr. Tanaka, according to Mr. Steward, has made Gardina a better place. We're not here to contest that one way or the other. What I will say is that he did not make the Los Angeles County Sheriff's Department a better place. He did the opposite.

Mr. Tanaka, standing before you, has shown absolutely no remorse. Instead, he's thumbed his nose at the

justice system, at the federal government at every step.

When he learned that Anthony Brown was a federal informant, he kept Anthony Brown away from the federal government.  When he learned that deputies might be talking to the federal government, he went to Men's Central Jail and made sure that his underlings ordered them not to speak to the federal government.

When the Superior Court told the sheriff's department it had no jurisdiction over any federal agency, the people under Mr. Tanaka did not take no for an answer, nor did Mr. Tanaka.  They went out, they aggressively conducted surveillance and confronted an FBI agent and threatened her arrest.

And when testifying under oath several times before this Court in three trials for people under him and his own trial, he significantly minimized his role in this obstruction of justice conspiracy, blaming both the people below him and the one person above him.

Unfortunately, given everything that we know about Mr. Tanaka now, this is not a surprise when you consider his career as an executive and a supervisor within the sheriff's department.

As a sergeant, he got a tattoo of the Vikings, a logo that represented something amongst deputies below him.  Now, he could characterize this as just a group

32

or a logo meaning nothing; but when a federal judge finds that the Vikings are Neo-Nazi cliques of deputies, and then he continues to have that tattoo, not only then as a supervisor but as he's rising through the ranks of the sheriff's department, not getting it removed, keeping it on him, it shows what he believes.

It shows that he believes that deputies come before citizens, that law enforcement officers should show loyalty to each other instead of showing loyalty to the citizens that they are supposed to protect.

This speaks volumes of the man that Mr. Tanaka is and the supervisor that he was, the executives that he was.

And then you learned about how others tried to reform the sheriff's department, break up cliques, protect the people that they was supposed to serve, and the defendant transferred those reformers.

He showed loyalty with, again, to those troubled deputies who were creating the problems within the department.

Your Honor, I once had a boss, a leader of -- of the U.S. Attorney's office that I used to work for in Chicago, and he would --

MR. STEWARD:  Objection to the personalization, Your Honor.  Improper.

**MR. FOX:**  Your Honor, I'm just explaining the differences between two different leaders, and I think that this is just a story.  This is not facts.  It's a story.

**MR. STEWARD:**  Object to the story.

**THE COURT:**  Go ahead.

**MR. FOX:**  Thank you, Your Honor.

When we would discuss difficult issues around a conference table, he would end every meeting by saying what is the right thing to do, what is the right thing that we should do here, and we would all discuss what we thought the right thing was to do -- what we were supposed to do, which was the right thing.

Mr. Tanaka did not do that.  Instead, he asked himself what the spiteful thing was to do whenever a tough issue would come before him.  He would attack those who were trying to reform the sheriff's department, whether that was the FBI, whether that was a sergeant below him who thought that deputies should be supervised more, whether that was a captain or a commander who felt that people under him were not doing their jobs.

The sentence that we've asked for, Your Honor, is 60 months.  He was the ringleader.  We think that sentence is still appropriate for Your Honor when you consider the 3553(a) factors.

Thank you.

THE COURT:  Have you been aware of whether there were any victims who wished to address the Court?

MR. FOX:  No, Your Honor.

THE COURT:  Does the defendant wish to be heard?

MR. STEWARD:  Thank you, Your Honor, but no.

THE COURT:  The Court adopts the factual finding in the Guideline applications set forth in the Presentence Report, finds that the advisory guidelines establish the total offense level of 22, a criminal history category of 1, which results in an Advisory Sentencing Guideline range of 41 to 51 months of incarceration.

Does either counsel wish to be heard on the mathematical calculation of the Guidelines?

MR. FOX:  No, Your Honor.

MR. STEWARD:  Your Honor, we'd submit on my previous comments and our sentencing brief.

THE COURT:  Okay.  The Court will turn to the 3553 factors.

This defendant appears before the Court after having been convicted by a jury of conspiring to obstruct justice and obstruction of justice.  Like thousands of other sworn and civilian employees of the Los Angeles County Sheriff's Department, this defendant devoted his career to that department.  He spent more than 30 years there.

This defendant was raised in a working class

household in the Gardina area.  He obtained a college degree in accounting and joined a local police force immediately upon graduation.

Two years after that in 1982, he joined the Los Angeles County Sheriff's Department.  He rose through the ranks becoming a lieutenant by 1998.  That year Sheriff Baca was elected, and the defendant went to work for him at headquarters continuing on a management track.

He was promoted to captain, then commander. By 2002, he was a chief, and by 2005, he was an assistant sheriff and one of the executives in the department.

Between 2005 and 2007, he served as the assistant sheriff in charge of custody and had oversight responsibility for the jails.

While in that position, he derailed efforts to address excessive force at Men's Central Jail when he vetoed a job rotation plan in 2006.

After the plan was announced, he held a meeting with deputies about the knowledge or presence of supervisors in a subsequent meeting berated supervisors who attempted to hold deputies accountable for their conduct.

These actions undermine the authority of supervisors, systems of accountability, result in a breakdown in the chain of command and perpetuated an environment of aggressive deputy conduct.

Ultimately, this set the stage for a sharp increase in the number of force incidents later in 2006 and for the reemergence of use of force problems later on.

In June of 2011, he was promoted to undersheriff, second in command to Sheriff Baca. He was working at this job when the offenses he was convicted of occurred in August and September of 2011. He remained undersheriff until he retired in August of 2013.

As the evidence at trial showed, not only did he fail to identify and correct problems in the jail, he exacerbated them. Over the course of several years, he encouraged deputies to push the legal boundaries of law enforcement activities and created an environment that discouraged accountability for misconduct.

His statements that deputies should work in an undefined gray area contributed to the perception by some deputies that they could use excessive force in the jails and that their aggressive behavior would not result in discipline.

The undersheriff also made statements disparaging the internal affairs bureau and the disciplinary process, remarks that undermine the authority of IAB and the ability of the department's supervisors to control or remedy inappropriate deputy behavior.

At trial, we heard testimony about many

UNITED STATES DISTRICT COURT

problems within the sheriff's department.  We heard about corrupt deputies.  We heard about the physical abuse of inmates.  We heard testimony that from their first days of the academy, deputies were instructed about an us-versus-them mentality and unwritten codes that taught deputies that when an inmate in the county jails dared to even attempt to harm a deputy, the deputies were told to respond with enough force to send that inmate to the hospital.

Deputies were taught how to cover up abuses committed by their fellow deputies, how to look the other way, how to shield the department from embarrassment.

As the undersheriff, the defendant was responsible for the day-to-day operations of the entire department.  In that role, as he had throughout his rise to the ranks, he rewarded those loyal to him with promotions.

Many of the deputies this Court has already sentenced demonstrated that they were all too willing to do what he wanted even if what he wanted them to do was unlawful.  He fostered this misplaced loyalty to enhance his own power and authority, to reward and protect his friends while derailing the careers of his critics.

Your ambition and arrogance had been on display in each of the four occasions that you testified in this court.  Your testimony was evasive, combative and not credible.  You've not shown any acceptance of responsibility

for your own actions or for the actions of your handpicked team who all took actions calculated to shield dirty deputies from the consequences of their crimes.

You and your coconspirators attempted to cover up the abuse occurring at the MCJ because it would reflect poorly on your leadership.

At trial, the evidence was overwhelming that you and your coconspirators had no interest in pursuing a case against a corrupt deputy who had accepted a bribe but to find out what the FBI knew and to get the informant to stop cooperating with the federal grand jury investigation.

Your coconspirators interviewed the deputy who had accepted the bribe. Again, their goal was not to build a case against the deputy but to convince him not to cooperate with the FBI, to not turn on the department and provide evidence against other deputies.

Your coconspirators conducted surveillance on an FBI agent that they knew was part of an authorized and legitimate federal investigation into the abuses committed by their fellow deputies.

They confronted her outside her home and threatened to arrest her despite not having probable cause.

They did this to intimidate the FBI.

They did all these things to derail the federal grand jury investigation.

And all of this was completely consistent with how you've operated throughout your career at the Los Angeles County Sheriff's Department and how you expected your loyal subordinates to act, to work in the gray area, to value loyalty above honor.

One of the most troubling things about this sorry chapter in the Los Angeles County Sheriff Department's history is that despite the convictions of you and your fellow coconspirators, your efforts to shield dirty deputies from the consequences of their actions have been largely successful.

Although the government has obtained convictions against a number of deputies who physically abused inmates, the public has little confidence that all of the abusive and corrupt deputies in the department have been brought to justice are appropriately disciplined.

Those convicted deputies represent a small fraction of the deputies who were abusing inmates. Some of those who are part of your clique of deputies remain in the department. Some because of promotions you arranged are in positions of authority.

By obstructing justice, you prevent a full accounting of the failures that occurred under your leadership. You did this in service to your own ambition and at the expense of the public's trust in the vital work

performed by the sheriff's department.

Indeed, your actions and those of your coconspirators was a gross abuse of the public's trust, undermines public confidence in law enforcement and our democratic values.

The Sentencing Guidelines do not fully account for the incalculable harm that you've caused this community.

Specifically among the factors the Court must consider are to promote respect for the law and to afford an adequate deterrence to criminal conduct.  And while the Court is aware of the work you've performed as an elected official in Gardina and the contributions that you've made, and I have taken this into account in formulating the Court's sentence, that work and those contributions do not excuse the obstruction of justice, nor does your attempt to shift the blame solely to Sheriff Baca absolve you responsibility for your actions.

The Court, therefore, concludes that an above guideline sentence is warranted in this case.  To do otherwise under the circumstances would trivialize the seriousness of this offense, the need for a just punishment, the need to promote respect for the law, to promote deterrence and to avoid unwarranted sentencing disparities.

Nobody in a position of authority like you

should ever be tempted to emulate the way that you obtained and wielded the power and responsibility entrusted to you.

I've considered the kinds of sentences available, including the defendant's request for a probationary sentence.

The Advisory Guideline range, as well as the Sentencing Factors enumerated at Title 18 United States Code, Section 3553, and the Court finds that a sentence of 60 months of imprisonment followed by a two-year term of supervised release, a fine of $7,500 and a $200 special assessment reflects the seriousness of the offenses, provides for a just punishment, promotes respect for the law, will deter others of engaging in similar conduct, and is sufficient but not greater than necessary to achieve the statutory goals of sentencing.

Are there any objections that were not previously addressed?

MR. FOX:  No, Your Honor.

MR. STEWARD:  No, Your Honor.

THE COURT:  Is there any legal reason why sentence should not be imposed at this time?

MR. FOX:  No, Your Honor.

MR. STEWARD:  Other than the previous comments, Your Honor, no.

THE COURT:  It's ordered that the defendant shall

pay the United States the special assessment of $200, which is due immediately.  Any unpaid balance shall be due during the period of imprisonment at a rate of not less than $25 per quarter and pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program.

It's ordered that the defendant shall pay the United States a total fine of $7,500 consisting of the following:

Count One, a fine of $3,750.

Count Two, a fine of $3,750.

The total fine shall bear interest as provided for by law.

The fine shall be paid in full immediately.

The defendant shall comply with the General Order 01-05.

Pursuant to the Sentencing Reform Act of 1984, it's the judgment of the Court that the defendant is hereby committed on Counts One and Two of the Indictment to the custody of the Bureau of Prisons for a term of 60 months.

This term consists of 60 months on each of Counts One and Two of the indictment to be served concurrently.

Upon release from the imprisonment, the defendant shall be placed on supervised release for a term of two years.  This term consists of two years on each of Counts

One and Two of the Indictment, all such terms to run concurrently, under the following terms and conditions:

The defendant shall comply with the Rules and Regulations of the United States Probation Office, General Order 05-02 and General Order 01-05, including the three special conditions delineated in General Order 01-05.

During the period of community supervision, the defendant shall pay the special assessment and fine in accordance with the judgment's orders pertaining to such payment.

The defendant shall apply all moneys received from income tax refunds to the outstanding Court ordered financial obligations.  In addition, the defendant shall apply all moneys received from lottery winnings, inheritances, judgments, and any anticipated or unexpected financial gains to the outstanding Court ordered financial obligations.

The defendant shall cooperate in the collection of a DNA sample.

The drug testing condition mandated by statute is suspended based upon the Court's determination that the defendant poses a lower risk of future substance abuse.

Sir, you have the right of appeal from the judgment and sentence within 14 days from today's date.  The

failure to appeal within that 14-day period will cause to the waiver of your right to appeal.

You're also advised you're entitled to the assistance of counsel in taking an appeal; and if you're unable to afford a lawyer, one will be provided to you.

If you're unable to afford the filing fee, the clerk of the court will be directed to accept the notice of appeal without such a fee.

Does the defendant wish to have a self-surrender date?

MR. STEWARD:  Your Honor, we request bail on appeal.

THE COURT:  You can make a motion for bail on appeal.

MR. STEWARD:  In that case, if we can stretch out the surrender date so that we'll have sufficient time to make such a motion.

THE COURT:  Does the government have any objection to a self-surrender date for the defendant?

MR. FOX:  No, Your Honor.

THE COURT:  How much time would you need to get your --

MR. STEWARD:  I'd ask the Court for six weeks.

THE COURT:  Not for the filing of that motion.

MR. STEWARD:  No, no, of course not, Your Honor.

Two weeks on the motion, six weeks on the surrender.

The Thompson appeal is being heard a week from tomorrow which may shed light for all of us on where the Ninth Circuit is going.

THE COURT:  So you could have your motion for bond on appeal by the 11th of July.

MR. STEWARD:  I can, Your Honor.

THE COURT:  And how much time will the government need?

MR. FOX:  I think a week will be sufficient, Your Honor.

THE COURT:  I'm going to order the defendant to surrender himself to the institution designated by the Bureau of Prisons on August 1st by noon.  In the absence of such a designation, the defendant will report on or before that date and time to the United States Marshal's Office located in the Roybal Federal Building.

What's the defendant's bond?

MR. STEWARD:  Your Honor, unique as to this series of defendants, is $100,000 fully secured with real property.

THE COURT:  The defendant's bond will remain in effect.  Any violation of the defendant's bond could result in your immediate incarceration.

Is that clear?

UNITED STATES DISTRICT COURT

THE DEFENDANT:  Yes, sir.

THE COURT:  The defendant's bond will be exonerated upon his self-surrender in court.

All right, is there anything else?

MR. FOX:  No, Your Honor.

MR. STEWARD:  Your Honor, excuse me, only one comment.  It's my understanding the government is not opposing bail on appeal at this point.  Does the Court still want us to file a motion?

THE COURT:  You know, there's some times when I agree with the government, and there's some times I don't.

MR. STEWARD:  Understood, Your Honor.

THE COURT:  So, you'll need to make your motion, and anything that you think that I ought to consider in determining bond on appeal, you should include in your motion.

MR. STEWARD:  We'll do, Your Honor.  Thank you.

THE COURT:  All right, anything else?

MR. FOX:  No, Your Honor.

THE COURT:  All right, thank you very much.

(Proceedings concluded at 9:34 a.m.)

C E R T I F I C A T E

I hereby certify that the foregoing is a true and correct transcript of the stenographically recorded proceedings in the above matter.

Fees charged for this transcript, less any circuit fee reduction and/or deposit, are in conformance with the regulations of the judicial conference of the United States.


/S/Anne Kielwasser                    07/18/2016
_____        _____
Anne Kielwasser, CRR, RPR, CSR         Date
Official Court Reporter

**$**

$100,000 [1] - 45:21
$200 [2] - 41:10, 42:1
$25 [1] - 42:3
$3,750 [2] - 42:9, 42:10
$7,500 [2] - 41:10, 42:7

**/**

/S/Anne [1] - 47:10

**0**

01-05 [5] - 4:8, 4:9, 42:15, 43:5, 43:6
05-02 [2] - 4:7, 43:5
07/18/2016 [1] - 47:10

**1**

1 [4] - 3:5, 24:8, 29:17, 34:9
10 [1] - 11:14
107 [1] - 2:19
11th [1] - 45:7
12th [2] - 2:5, 2:14
13 [1] - 5:22
13th [1] - 2:9
14 [2] - 29:14, 43:25
14-day [1] - 44:1
15 [1] - 29:18
15-255 [1] - 3:5
15-255PA [1] - 1:10
18 [2] - 29:23, 41:7
18,000 [1] - 15:10
180 [1] - 28:4
1982 [1] - 35:4
1984 [1] - 42:17
1998 [1] - 35:6
1st [1] - 45:15

**2**

2002 [1] - 35:10
2005 [2] - 35:10, 35:12
2006 [2] - 35:17, 36:2
2007 [1] - 35:12
2011 [3] - 23:8, 36:4, 36:7
2013 [1] - 36:8
2016 [2] - 1:17, 3:1
20th [1] - 16:4
21 [2] - 5:22, 29:18

21143 [1] - 2:23
213 [1] - 1:24
213-894-0141 [2] - 2:6, 2:15
213-894-0284 [1] - 2:6
213-894-3541 [1] - 2:10
213-894-4849 [1] - 2:15
213-894-6436 [1] - 2:11
22 [1] - 34:9
22nd [3] - 23:7, 23:15, 23:25
23 [1] - 5:22
23rd [1] - 11:1
27 [2] - 1:17, 3:1
2J1.2b3a [1] - 18:19

**3**

30 [3] - 7:4, 8:1, 34:24
302 [2] - 7:11, 7:12
312 [4] - 1:23, 2:5, 2:9, 2:14
32 [1] - 7:24
33 [1] - 8:19
34 [1] - 10:10
35 [1] - 9:2
3553 [2] - 34:17, 41:8
3553(a [2] - 26:12, 33:24
3553(a) [1] - 29:23
37 [1] - 30:7
38 [2] - 9:8, 9:13
3B1.3 [1] - 20:24

**4**

4 [1] - 25:13
40 [2] - 9:14, 28:10
41 [3] - 30:4, 30:6, 34:10
42 [1] - 9:23
424-271-5990 [1] - 2:25
424-488-0686 [1] - 2:24
43 [2] - 10:7, 10:11
432 [1] - 1:23
454 [1] - 2:23
47 [3] - 10:14, 11:14, 11:18

**5**

51 [2] - 11:19, 34:11

**6**

60 [4] - 33:22, 41:8, 42:19, 42:20
60,000 [1] - 27:18

**7**

7 [4] - 5:22, 6:4, 6:6, 12:17
72 [1] - 12:3
75 [1] - 12:15
76 [1] - 12:15

**8**

8 [4] - 6:4, 6:6, 23:7, 23:25
8000 [1] - 18:25
894-2969 [1] - 1:24
8:30 [1] - 3:1

**9**

90012 [4] - 1:24, 2:5, 2:10, 2:14
90503 [1] - 2:24
92672 [1] - 2:20
949-481-4900 [1] - 2:21
949-496-6753 [1] - 2:21
9:34 [1] - 46:21

**A**

A.M [1] - 3:1
a.m [1] - 46:21
ABC's [1] - 23:17
ability [2] - 22:2, 36:23
absence [1] - 45:15
absolutely [3] - 15:1, 23:9, 30:25
absolve [1] - 40:17
abuse [7] - 19:21, 20:25, 21:6, 37:2, 38:5, 40:3, 43:23
abused [2] - 20:10, 39:14
abuses [5] - 6:7, 6:11, 20:11, 37:9, 38:19
abusing [1] - 39:18
abusive [1] - 39:15
academy [1] - 37:4
accept [2] - 28:21, 44:7

acceptance [1] - 37:25
accepted [2] - 38:9, 38:13
accordance [2] - 4:12, 43:9
accorded [1] - 20:18
according [2] - 13:21, 30:19
account [3] - 21:18, 40:7, 40:14
accountability [2] - 35:23, 36:14
accountable [3] - 19:6, 19:8, 35:21
accounting [2] - 35:2, 39:23
accurate [6] - 5:12, 8:9, 8:10, 8:13, 10:23, 21:14
achieve [1] - 41:14
Act [1] - 42:16
act [1] - 39:4
actions [12] - 17:12, 19:6, 19:9, 20:3, 23:13, 35:22, 38:1, 38:2, 39:10, 40:2, 40:18
actively [1] - 17:16
activities [3] - 23:13, 23:24, 36:13
activity [1] - 19:10
add [3] - 8:3, 10:21, 10:23
added [2] - 6:19, 20:2
addendum [2] - 22:7, 28:16
addition [3] - 4:16, 30:17, 43:13
additional [2] - 12:13, 19:3
additions [1] - 5:13
address [5] - 5:11, 5:17, 5:19, 34:2, 35:16
addressed [3] - 30:13, 30:18, 41:17
adequate [1] - 40:11
adopts [1] - 34:6
advantage [1] - 20:22
adversely [1] - 20:23
advised [1] - 44:3
advisory [1] - 34:8
Advisory [2] - 34:10, 41:6
affairs [1] - 36:21
afford [3] - 40:10, 44:5, 44:6
agency [1] - 31:9
agent [5] - 18:16, 19:19, 23:11, 31:12,

38:18
agents [2] - 18:15, 20:19
aggravating [1] - 25:13
aggressive [2] - 35:25, 36:18
aggressively [1] - 31:11
ago [1] - 17:14
agree [3] - 7:6, 9:3, 46:11
agreed [1] - 13:25
agrees [1] - 13:3
ahead [1] - 33:5
aKtranscripts.com [1] - 1:25
aliases [1] - 19:4
allow [1] - 4:4
alteration [2] - 18:18, 19:13
alterations [1] - 17:15
altered [1] - 18:21
altering [1] - 17:6
ambition [2] - 37:22, 39:24
AMERICA [1] - 1:8
amount [2] - 13:19, 16:21
amplifications [1] - 21:13
analysis [1] - 19:25
analyzed [1] - 26:5
ANDERSON [1] - 1:4
Andre [1] - 23:21
Angeles [10] - 1:17, 1:24, 2:5, 2:10, 2:14, 30:22, 34:22, 35:5, 39:3, 39:7
Anne [1] - 47:11
ANNE [1] - 1:22
anne.kielwasser@ gmail.com [1] - 1:25
announced [1] - 35:18
answer [3] - 14:11, 14:12, 31:10
answers [4] - 13:8, 14:14, 14:19, 15:22
Anthony [6] - 8:5, 8:9, 11:7, 11:10, 31:2, 31:3
anticipated [2] - 4:18, 43:15
apart [1] - 5:10
appeal [11] - 43:24, 44:1, 44:2, 44:4, 44:8, 44:12, 44:14, 45:3, 45:7, 46:8, 46:15
appear [2] - 10:19,

UNITED STATES DISTRICT COURT

21:16
**appearances** [1] - 3:7
**applications** [1] - 34:7
**applied** [3] - 19:12, 26:2, 26:6
**applies** [2] - 19:12, 19:16
**apply** [4] - 4:14, 4:16, 43:11, 43:14
**approach** [1] - 3:18
**appropriate** [3] - 7:14, 25:24, 33:23
**appropriately** [2] - 6:13, 39:16
**April** [1] - 27:5
**area** [3] - 35:1, 36:16, 39:4
**areas** [1] - 16:14
**argue** [1] - 22:14
**argument** [2] - 17:13, 22:21
**arranged** [1] - 39:20
**arrest** [4] - 18:15, 19:19, 31:13, 38:22
**arrogance** [1] - 37:22
**aside** [1] - 26:4
**aspect** [1] - 18:5
**assertions** [1] - 10:20
**assessment** [4] - 4:11, 41:11, 42:1, 43:8
**assistance** [1] - 44:4
**assistant** [2] - 35:10, 35:13
**associated** [1] - 27:19
**association** [1] - 25:16
**Association** [1] - 27:4
**AT&T** [1] - 15:5
**attached** [2] - 23:21, 27:14
**attack** [1] - 33:15
**attempt** [2] - 37:6, 40:16
**attempted** [2] - 35:21, 38:4
**attempting** [1] - 6:25
**Attorney** [4] - 2:4, 2:8, 2:13, 23:21
**Attorney's** [1] - 32:22
**August** [5] - 11:1, 16:4, 36:7, 36:8, 45:15
**AUSA** [3] - 2:4, 2:8, 2:13
**authority** [5] - 35:22, 36:22, 37:20, 39:21, 40:25
**authorized** [1] - 38:18
**available** [1] - 41:4
**Avenida** [1] - 2:19

**avoid** [1] - 40:24
**aware** [5] - 10:25, 13:24, 15:6, 34:1, 40:12

**B**

**b3c** [1] - 18:19
**Baca** [34] - 7:9, 7:12, 13:6, 13:8, 13:10, 13:14, 13:16, 13:21, 14:12, 14:21, 15:17, 15:18, 15:21, 15:24, 23:1, 23:8, 23:12, 23:16, 24:4, 24:12, 24:13, 24:16, 24:19, 25:18, 28:20, 28:22, 29:7, 29:12, 30:14, 35:6, 36:5, 40:17
**Baca's** [4] - 25:12, 25:18, 29:1, 30:17
**bail** [3] - 44:11, 44:13, 46:8
**balance** [1] - 42:2
**bargain** [1] - 28:21
**based** [2] - 15:4, 43:21
**basis** [1] - 15:10
**bear** [1] - 42:11
**becoming** [1] - 35:6
**beginning** [2] - 22:24, 28:5
**behalf** [4] - 3:9, 3:12, 3:14, 5:8
**BEHALF** [2] - 2:3, 2:17
**behavior** [2] - 36:18, 36:24
**believes** [4] - 7:20, 10:2, 32:6, 32:7
**below** [4] - 17:12, 31:18, 31:25, 33:17
**beneath** [1] - 13:20
**berated** [1] - 35:20
**beside** [1] - 15:23
**better** [6] - 21:17, 26:21, 27:17, 27:20, 30:20, 30:22
**between** [8] - 8:11, 13:14, 15:18, 15:23, 28:23, 30:14, 33:2, 35:12
**beyond** [1] - 14:2
**Birotte** [1] - 23:21
**bitterly** [1] - 23:22
**blame** [1] - 40:17
**blaming** [1] - 31:17
**blew** [1] - 22:17
**bond** [6] - 45:6, 45:19, 45:22, 45:23, 46:2, 46:15

**boss** [1] - 32:21
**bottom** [1] - 15:18
**Boulevard** [1] - 2:23
**boundaries** [1] - 36:12
**Brandon** [2] - 2:4, 3:8
**brandon.fox@usdoj. gov** [1] - 2:7
**breach** [1] - 20:3
**break** [1] - 32:15
**breakdown** [1] - 35:23
**Breeze** [1] - 27:5
**Brenda** [1] - 27:3
**bribe** [2] - 38:9, 38:13
**Brief** [2] - 12:17, 23:4
**brief** [9] - 5:16, 9:16, 21:21, 23:22, 26:8, 27:14, 27:23, 29:4, 34:16
**briefly** [4] - 6:3, 6:9, 17:10, 20:5
**briefs** [1] - 30:13
**brother** [2] - 28:13, 29:20
**brought** [1] - 39:16
**Brown** [15] - 5:25, 8:5, 8:9, 10:24, 11:7, 11:10, 17:17, 17:19, 18:22, 18:24, 19:1, 19:4, 19:15, 31:2, 31:3
**brown** [3] - 17:21, 18:6, 18:8
**build** [1] - 38:14
**Building** [1] - 45:18
**burden** [1] - 17:2
**Bureau** [3] - 42:4, 42:19, 45:14
**bureau** [1] - 36:21
**business** [1] - 26:16

**C**

**CA** [5] - 2:5, 2:10, 2:14, 2:20, 2:24
**calculated** [1] - 38:2
**calculation** [2] - 6:22, 34:13
**CALIFORNIA** [1] - 1:2
**California** [2] - 1:17, 1:24
**cannot** [1] - 15:11
**captain** [2] - 33:19, 35:9
**career** [4] - 14:25, 31:21, 34:23, 39:2
**careers** [1] - 37:21
**Carey** [1] - 14:16
**Carey's** [1] - 11:7
**caring** [1] - 28:3

**case** [20] - 6:1, 7:1, 13:15, 14:2, 18:20, 20:3, 21:20, 22:25, 23:5, 23:9, 23:12, 24:21, 26:6, 28:6, 29:1, 29:21, 38:9, 38:14, 40:20, 44:15
**cases** [3] - 6:16, 6:17, 6:24
**category** [2] - 29:17, 34:9
**caused** [1] - 40:7
**cell** [1] - 6:1
**Central** [2] - 31:5, 35:16
**CENTRAL** [1] - 1:2
**certain** [2] - 21:8, 21:9
**certainly** [1] - 20:12
**certify** [1] - 47:2
**chain** [1] - 35:24
**challenging** [1] - 10:20
**changes** [2] - 12:10, 17:17
**chapter** [1] - 39:7
**characterize** [1] - 31:25
**charge** [4] - 15:7, 16:4, 25:7, 35:13
**charged** [2] - 20:21, 47:5
**Chicago** [1] - 32:23
**chief** [1] - 35:10
**circled** [1] - 24:20
**Circuit** [2] - 20:17, 45:5
**circuit** [1] - 47:5
**circumstances** [1] - 40:21
**cited** [1] - 22:1
**citizens** [2] - 32:8, 32:10
**city** [4] - 26:19, 26:21, 27:18, 27:19
**Civil** [1] - 2:9
**civil** [2] - 6:7, 6:10
**civilian** [1] - 34:22
**clarifications** [1] - 21:14
**class** [1] - 34:25
**clear** [4] - 16:24, 18:20, 22:24, 45:25
**clearer** [1] - 29:9
**Clemente** [1] - 2:20
**clerk** [1] - 44:7
**CLERK** [1] - 3:5
**client** [2] - 3:18, 4:22
**clique** [1] - 39:19
**cliques** [2] - 32:2, 32:15

**coconspirators** [8] - 18:21, 19:4, 38:4, 38:8, 38:12, 38:17, 39:9, 40:3
**Code** [1] - 41:7
**codes** [1] - 37:5
**cold** [2] - 15:5, 28:22
**collect** [1] - 24:11
**collection** [2] - 4:20, 43:19
**college** [1] - 35:1
**combative** [1] - 37:24
**command** [2] - 35:24, 36:5
**commander** [2] - 33:19, 35:9
**comment** [4] - 22:21, 25:13, 28:14, 46:7
**commentary** [1] - 19:6
**comments** [4] - 21:23, 26:7, 34:16, 41:23
**commission** [1] - 19:7
**commit** [1] - 20:9
**committed** [5] - 12:25, 19:9, 37:10, 38:19, 42:18
**communication** [2] - 13:18, 13:19
**community** [9] - 4:10, 26:14, 26:25, 27:14, 28:12, 29:19, 29:21, 40:8, 43:7
**compassionate** [1] - 28:4
**complaining** [1] - 23:22
**completely** [1] - 39:1
**comply** [3] - 4:6, 42:14, 43:3
**component** [1] - 18:4
**computer** [2] - 11:2, 18:23
**conceded** [1] - 15:3
**concluded** [2] - 21:4, 46:21
**concludes** [1] - 40:19
**conclusions** [1] - 12:15
**concurrently** [2] - 42:22, 43:2
**condition** [1] - 43:20
**conditions** [9] - 4:1, 4:2, 4:5, 4:8, 4:23, 5:1, 21:9, 43:2, 43:6
**conduct** [6] - 19:8, 29:20, 35:21, 35:25, 40:11, 41:13
**conducted** [3] - 18:14, 31:12, 38:17
**confer** [1] - 4:22

**conference** [2] - 33:8, 47:7
**confidence** [2] - 39:14, 40:4
**conformance** [1] - 47:6
**confronted** [2] - 31:12, 38:21
**consequences** [2] - 38:3, 39:10
**consider** [4] - 31:21, 33:24, 40:10, 46:14
**considered** [2] - 5:8, 41:3
**consistent** [1] - 39:1
**consisting** [1] - 42:7
**consists** [2] - 42:20, 42:25
**conspiracy** [3] - 19:5, 25:16, 31:17
**conspiring** [1] - 34:20
**constant** [1] - 15:2
**constitutes** [1] - 21:6
**contact** [1] - 13:16
**contacting** [1] - 18:22
**contacts** [1] - 13:21
**contained** [1] - 5:15
**contemplated** [1] - 20:24
**contemplating** [1] - 3:25
**contest** [1] - 30:20
**continued** [1] - 11:9
**continues** [1] - 32:3
**continuing** [1] - 35:8
**contributed** [1] - 36:16
**contributions** [2] - 40:13, 40:15
**control** [1] - 36:23
**conversations** [1] - 15:5
**convicted** [6] - 6:7, 6:25, 13:25, 34:20, 36:6, 39:17
**convictions** [2] - 39:8, 39:13
**convince** [1] - 38:14
**cooperate** [3] - 4:20, 38:15, 43:18
**cooperated** [1] - 24:7
**cooperating** [1] - 38:11
**correct** [7] - 7:5, 20:15, 25:12, 25:17, 25:19, 36:10, 47:2
**corrections** [2] - 5:12, 5:18
**correctly** [2] - 21:4, 26:5

**corrupt** [3] - 37:2, 38:9, 39:15
**Corruption** [1] - 2:9
**counsel** [7] - 14:9, 15:3, 16:20, 22:6, 23:10, 34:12, 44:4
**Counsel** [1] - 3:7
**Count** [2] - 42:9, 42:10
**Counts** [3] - 42:18, 42:21, 42:25
**County** [5] - 30:22, 34:22, 35:5, 39:3, 39:7
**county** [1] - 37:6
**couple** [1] - 27:9
**course** [5] - 14:12, 16:1, 25:14, 36:11, 44:25
**court** [6] - 4:15, 11:3, 26:24, 37:24, 44:7, 46:3
**COURT** [59] - 1:1, 3:5, 3:11, 3:16, 3:18, 3:25, 4:25, 5:3, 5:7, 5:17, 6:2, 6:20, 7:7, 7:20, 8:14, 8:21, 8:23, 9:5, 9:11, 9:18, 10:2, 10:10, 11:15, 11:22, 12:6, 12:21, 14:5, 15:15, 17:1, 17:9, 18:20, 20:17, 21:25, 22:15, 22:19, 25:3, 25:25, 26:10, 29:25, 33:5, 34:1, 34:4, 34:6, 34:17, 41:20, 41:25, 44:13, 44:18, 44:21, 44:24, 45:6, 45:9, 45:13, 45:22, 46:2, 46:10, 46:13, 46:18, 46:20
**Court** [55] - 1:23, 3:20, 3:25, 4:11, 4:19, 5:7, 6:20, 6:22, 7:20, 8:14, 8:23, 9:11, 9:19, 10:2, 10:10, 11:16, 11:23, 12:6, 15:6, 17:1, 19:11, 21:3, 21:14, 21:22, 22:2, 23:3, 26:1, 26:22, 27:13, 27:25, 28:8, 28:20, 28:21, 29:11, 30:3, 30:10, 30:12, 30:18, 31:8, 31:15, 34:2, 34:6, 34:17, 34:19, 37:16, 40:9, 40:11, 40:19, 41:8, 42:17, 43:12, 43:16, 44:23, 46:8, 47:11
**Court's** [3] - 14:8,

40:14, 43:21
**cover** [2] - 37:9, 38:5
**covered** [1] - 22:4
**CPA** [1] - 16:10
**CR** [2] - 1:10, 3:5
**created** [3] - 18:22, 19:3, 36:13
**creating** [1] - 32:19
**creation** [1] - 18:18
**credible** [1] - 37:25
**Crimes** [1] - 2:13
**crimes** [2] - 30:17, 38:3
**criminal** [5] - 19:10, 25:15, 29:17, 34:9, 40:11
**criteria** [1] - 18:19
**critics** [1] - 37:21
**cross** [1] - 13:12
**cross-examination** [1] - 13:12
**CRR** [2] - 1:22, 47:11
**CSR** [2] - 1:22, 47:11
**custody** [4] - 18:24, 29:8, 35:13, 42:19
**cynical** [1] - 26:18
**cynically** [1] - 26:15

**D**

**Daily** [1] - 27:5
**dared** [1] - 37:6
**Date** [1] - 47:11
**date** [6] - 11:1, 43:25, 44:10, 44:16, 44:19, 45:16
**day-to-day** [3] - 15:10, 20:8, 37:13
**days** [4] - 23:15, 27:9, 37:3, 43:25
**dealing** [1] - 27:7
**Dean** [3] - 2:18, 2:19, 3:12
**defeat** [1] - 17:22
**defendant** [41] - 1:13, 4:6, 4:11, 4:14, 4:16, 4:20, 5:9, 5:18, 6:25, 12:10, 12:25, 17:3, 18:3, 19:5, 19:7, 20:22, 22:1, 22:5, 22:6, 32:16, 34:4, 34:19, 34:23, 34:25, 35:7, 37:12, 41:25, 42:6, 42:14, 42:17, 42:24, 43:3, 43:8, 43:11, 43:13, 43:18, 43:22, 44:9, 44:19, 45:13, 45:16
**DEFENDANT** [2] -

2:17, 46:1
**defendant's** [9] - 6:22, 21:1, 21:4, 22:2, 41:4, 45:19, 45:22, 45:23, 46:2
**defendants** [2] - 6:6, 45:21
**defense** [4] - 14:1, 14:5, 17:6, 26:10
**degree** [1] - 35:1
**degrees** [1] - 28:4
**delineated** [2] - 4:9, 43:6
**democratic** [1] - 40:5
**demonstrably** [1] - 14:16
**demonstrated** [1] - 37:17
**department** [24] - 10:4, 11:5, 11:6, 11:11, 13:3, 15:7, 20:7, 21:6, 23:18, 31:9, 31:22, 32:5, 32:15, 32:20, 33:16, 34:24, 35:11, 37:1, 37:11, 37:14, 38:15, 39:15, 39:20, 40:1
**Department** [4] - 30:22, 34:23, 35:5, 39:3
**Department's** [1] - 39:7
**department's** [3] - 18:23, 28:15, 36:23
**departure** [1] - 28:18
**deposit** [1] - 47:6
**deputies** [29] - 18:10, 23:11, 31:4, 31:24, 32:2, 32:7, 32:19, 33:18, 35:19, 35:21, 36:12, 36:15, 36:17, 37:2, 37:4, 37:5, 37:7, 37:9, 37:10, 37:16, 38:2, 38:16, 38:20, 39:9, 39:13, 39:15, 39:17, 39:18, 39:19
**deputy** [8] - 16:12, 16:13, 35:25, 36:24, 37:7, 38:9, 38:12, 38:14
**derail** [1] - 38:24
**derailed** [1] - 35:15
**derailing** [1] - 37:21
**described** [1] - 28:24
**designated** [1] - 45:14
**designation** [1] - 45:16
**despite** [2] - 38:22, 39:8

**deter** [1] - 41:13
**determination** [1] - 43:21
**determining** [1] - 46:15
**deterrence** [2] - 40:11, 40:24
**devoted** [1] - 34:23
**difference** [2] - 17:18, 30:14
**differences** [1] - 33:2
**different** [3] - 19:12, 30:14, 33:2
**difficult** [1] - 33:7
**directed** [1] - 44:7
**directly** [1] - 25:9
**dirty** [2] - 38:2, 39:9
**disagree** [1] - 11:12
**disciplinary** [1] - 36:21
**discipline** [1] - 36:19
**disciplined** [1] - 39:16
**disclosed** [1] - 5:4
**discount** [1] - 26:13
**discouraged** [1] - 36:14
**discuss** [2] - 33:7, 33:10
**discusses** [2] - 7:12, 30:2
**discussing** [3] - 11:8, 25:6, 25:8
**disparaging** [1] - 36:21
**disparate** [1] - 29:5
**disparities** [1] - 40:24
**disparity** [4] - 28:15, 28:23, 30:2, 30:9
**display** [1] - 37:23
**dispute** [3] - 16:20, 22:23, 25:18
**district** [1] - 11:3
**DISTRICT** [2] - 1:1, 1:2
**DNA** [2] - 4:20, 43:19
**documents** [1] - 19:14
**done** [2] - 23:23, 27:23
**doubt** [1] - 14:3
**dovetails** [1] - 22:20
**downward** [1] - 28:17
**dozen** [1] - 6:17
**draw** [1] - 16:10
**drug** [2] - 27:7, 43:20
**due** [2] - 42:2
**during** [4] - 4:10, 23:8, 42:2, 43:7

4

## E

**e-mail** [5] - 2:7, 2:11, 2:16, 2:25, 11:7
**e-mails** [2] - 25:5, 25:23
**Eddie** [2] - 2:12, 3:9
**eddie.jauregui@ usdoj.gov** [1] - 2:16
**edition** [1] - 27:5
**effect** [3] - 6:21, 22:2, 45:23
**efforts** [2] - 35:15, 39:9
**either** [2] - 22:16, 34:12
**elected** [2] - 35:7, 40:12
**embarrassment** [1] - 37:11
**employee** [2] - 15:10, 21:5
**employees** [1] - 34:22
**emulate** [1] - 41:1
**encouraged** [1] - 36:12
**end** [3] - 8:7, 29:7, 33:8
**enforce** [1] - 20:18
**enforcement** [6] - 20:1, 20:11, 20:19, 32:8, 36:13, 40:4
**enforcing** [1] - 20:21
**engaging** [1] - 41:13
**enhance** [1] - 37:19
**enhancement** [14] - 12:24, 17:5, 17:23, 18:1, 19:11, 19:22, 20:1, 20:13, 22:11, 24:22, 24:23, 25:14, 25:24, 26:1
**enhancements** [6] - 5:19, 12:13, 12:20, 12:21, 22:5, 29:16
**entire** [4] - 14:25, 23:5, 27:22, 37:13
**entitled** [1] - 44:3
**entrusted** [1] - 41:2
**enumerated** [1] - 41:7
**environment** [2] - 35:24, 36:13
**especially** [1] - 20:16
**essence** [1] - 17:3
**establish** [1] - 34:8
**evasive** [1] - 37:24
**evidence** [24] - 6:23, 7:21, 8:15, 8:16, 8:24, 9:12, 9:20, 9:21, 10:3, 10:5,

10:12, 10:24, 11:17, 11:22, 11:24, 12:7, 12:9, 13:22, 18:8, 18:20, 30:16, 36:9, 38:7, 38:16
**exacerbated** [1] - 36:11
**exact** [2] - 14:9, 14:12
**exactly** [1] - 7:13
**examination** [1] - 13:12
**excessive** [2] - 35:16, 36:17
**exchange** [1] - 12:8
**excuse** [2] - 40:15, 46:6
**executive** [1] - 31:21
**executives** [2] - 32:12, 35:11
**exemplary** [1] - 29:20
**exhibit** [1] - 9:21
**Exhibit** [2] - 10:10, 23:4
**exonerated** [1] - 46:3
**expect** [1] - 20:20
**expected** [1] - 39:3
**expense** [1] - 39:25
**expenses** [1] - 21:19
**explaining** [2] - 26:22, 33:1
**expressed** [1] - 29:15
**extensive** [2] - 18:17, 19:17
**extent** [2] - 6:5, 24:24
**extra** [1] - 21:18
**extremely** [1] - 27:11

## F

**fabricated** [2] - 18:21, 19:3
**fabricating** [1] - 17:6
**fabrication** [2] - 18:18, 19:14
**fact** [6] - 7:16, 12:7, 18:10, 18:24, 21:17, 25:22
**Factors** [1] - 41:7
**factors** [4] - 26:12, 33:24, 34:18, 40:9
**facts** [6] - 8:13, 18:7, 20:16, 24:25, 29:21, 33:3
**factual** [3] - 5:18, 10:20, 34:6
**factually** [1] - 5:12
**fail** [1] - 36:10
**failure** [1] - 44:1
**failures** [1] - 39:23

**fair** [1] - 29:22
**false** [3] - 13:4, 14:4, 18:22
**falsified** [1] - 18:25
**family** [1] - 28:9
**far** [2] - 15:7, 21:17
**father** [2] - 28:11, 29:20
**Fax** [5] - 2:6, 2:11, 2:15, 2:21, 2:25
**faxed** [1] - 10:3
**FBI** [21] - 7:17, 10:24, 10:25, 17:14, 17:16, 18:7, 18:11, 18:12, 18:15, 18:22, 19:19, 23:19, 23:23, 24:8, 31:12, 33:17, 38:10, 38:15, 38:18, 38:23
**FBI's** [1] - 6:24
**Federal** [2] - 1:23, 45:18
**federal** [16] - 6:10, 11:9, 18:11, 18:12, 19:15, 29:3, 31:1, 31:3, 31:4, 31:5, 31:7, 31:9, 32:1, 38:11, 38:19, 38:25
**fee** [3] - 44:6, 44:8, 47:5
**fees** [1] - 47:5
**fellow** [4] - 20:19, 37:10, 38:20, 39:9
**felt** [1] - 33:19
**few** [1] - 17:13
**file** [2] - 4:4, 46:9
**filing** [2] - 44:6, 44:24
**finally** [1] - 16:19
**finances** [1] - 21:15
**Financial** [1] - 42:5
**financial** [10] - 4:12, 4:16, 4:18, 4:19, 21:9, 22:3, 27:21, 43:13, 43:16
**fine** [9] - 10:1, 12:5, 41:10, 42:7, 42:9, 42:10, 42:11, 42:13, 43:8
**first** [8] - 5:17, 6:4, 8:4, 12:23, 13:23, 14:8, 16:3, 37:3
**floor** [1] - 18:25
**Floor** [3] - 2:5, 2:9, 2:14
**focused** [1] - 18:5
**followed** [1] - 41:9
**following** [2] - 42:8, 43:2
**follows** [1] - 4:5
**force** [6] - 35:2, 35:16, 36:2, 36:3, 36:17,

37:7
**foregoing** [1] - 47:2
**formal** [1] - 11:8
**former** [1] - 23:16
**formulating** [1] - 40:14
**forth** [2] - 25:25, 34:7
**fostered** [1] - 37:19
**four** [4] - 22:11, 23:15, 24:22, 37:23
**four-level** [2] - 22:11, 24:22
**FOX** [37] - 3:8, 5:5, 5:14, 6:3, 7:8, 8:3, 8:22, 9:4, 9:10, 9:17, 10:1, 10:9, 10:18, 11:21, 12:5, 12:19, 12:25, 15:14, 15:16, 17:24, 20:5, 21:24, 22:9, 22:13, 25:4, 26:9, 30:1, 33:1, 33:6, 34:3, 34:14, 41:18, 41:22, 44:20, 45:11, 46:5, 46:19
**Fox** [2] - 2:4, 3:8
**fraction** [1] - 39:18
**friends** [3] - 26:16, 28:9, 37:20
**frustration** [1] - 24:14
**full** [2] - 39:22, 42:13
**fully** [2] - 40:6, 45:21
**furtherance** [1] - 19:9
**future** [1] - 43:22

## G

**gain** [1] - 27:15
**gains** [2] - 4:18, 43:16
**Gardina** [6] - 26:20, 27:1, 27:16, 30:20, 35:1, 40:13
**General** [8] - 2:13, 4:7, 4:8, 4:9, 42:14, 43:4, 43:5, 43:6
**generally** [1] - 28:13
**genuinely** [1] - 26:25
**Gerard** [1] - 8:4
**given** [7] - 8:11, 20:2, 20:16, 25:21, 29:19, 29:21, 31:19
**goal** [1] - 38:13
**goals** [1] - 41:15
**government** [34] - 5:14, 6:2, 7:6, 8:21, 9:3, 9:17, 11:9, 11:21, 12:24, 14:2, 17:2, 18:12, 18:13, 19:15, 23:10, 24:24, 25:3, 26:1, 26:13,

26:20, 27:20, 28:5, 28:24, 29:6, 29:25, 31:1, 31:4, 31:5, 31:7, 39:12, 44:18, 45:9, 46:7, 46:11
**government's** [2] - 6:10, 22:21
**grade** [1] - 28:9
**graduation** [1] - 35:3
**grand** [3] - 20:23, 38:11, 38:25
**gray** [2] - 36:16, 39:4
**greater** [1] - 41:14
**Greg** [1] - 30:7
**gross** [1] - 40:3
**grounds** [1] - 28:17
**group** [1] - 31:25
**guess** [1] - 7:6
**guideline** [2] - 29:14, 40:20
**Guideline** [4] - 6:21, 34:7, 34:10, 41:6
**Guidelines** [2] - 34:13, 40:6
**guidelines** [3] - 19:7, 26:6, 34:8
**guilty** [2] - 18:3, 30:17

## H

**Hague** [1] - 14:11
**Hague's** [1] - 14:10
**Haig** [2] - 2:22, 2:23
**half** [1] - 29:2
**handling** [5] - 13:7, 14:13, 14:15, 14:16, 16:16
**handpicked** [1] - 38:1
**HANK** [1] - 3:14
**Hank** [1] - 3:14
**harm** [2] - 37:6, 40:7
**Hawthorne** [1] - 2:23
**headquarters** [1] - 35:8
**health** [1] - 30:18
**hear** [2] - 12:24, 21:10
**heard** [21] - 5:23, 6:2, 7:25, 8:21, 14:5, 17:9, 21:10, 23:13, 24:15, 25:3, 25:5, 25:23, 26:10, 29:25, 34:4, 34:12, 36:25, 37:1, 37:2, 37:3, 45:3
**held** [3] - 19:5, 20:17, 35:18
**helpful** [1] - 28:3
**hereby** [2] - 42:18, 47:2

**Hicks** [1] - 27:23
**hidden** [1] - 11:11
**hiding** [1] - 19:15
**highest** [2] - 21:5, 27:15
**highlight** [1] - 27:25
**himself** [5] - 17:3, 24:4, 29:2, 33:14, 45:14
**history** [3] - 29:17, 34:9, 39:8
**hold** [1] - 35:21
**home** [1] - 38:21
**Homeowners** [1] - 27:4
**honest** [1] - 27:10
**honor** [1] - 39:5
**Honor** [86] - 3:8, 3:12, 3:17, 3:24, 4:23, 5:2, 5:5, 5:6, 5:14, 5:16, 5:24, 6:3, 6:14, 7:5, 7:16, 8:2, 8:3, 8:20, 8:22, 9:4, 9:9, 9:10, 9:15, 9:17, 9:24, 10:1, 10:9, 10:15, 10:18, 10:25, 11:13, 11:20, 11:21, 12:4, 12:5, 12:14, 12:19, 12:25, 14:6, 15:14, 16:19, 17:8, 17:10, 17:24, 19:24, 20:5, 20:16, 21:12, 21:24, 22:9, 22:10, 22:13, 22:21, 25:2, 25:4, 26:8, 26:9, 26:11, 27:12, 28:14, 30:1, 32:21, 32:25, 33:1, 33:6, 33:22, 33:23, 34:3, 34:5, 34:14, 34:15, 41:18, 41:19, 41:22, 41:24, 44:11, 44:20, 44:25, 45:8, 45:12, 45:20, 46:5, 46:6, 46:12, 46:17, 46:19
**HONORABLE** [1] - 1:4
**hospital** [1] - 37:8
**hotly** [1] - 22:23
**hour** [1] - 29:2
**household** [1] - 35:1
**husband** [2] - 28:12, 29:20

## I

**IAB** [1] - 36:22
**ICIB** [1] - 25:10
**idea** [1] - 15:4
**identify** [1] - 36:10

**if..** [1] - 22:14
**ignored** [1] - 11:4
**ignores** [3] - 18:9, 18:14, 30:3
**illegal** [1] - 23:24
**immediate** [1] - 45:24
**immediately** [3] - 35:2, 42:2, 42:13
**important** [1] - 27:21
**importantly** [1] - 25:11
**imposed** [4] - 3:23, 30:3, 30:11, 41:21
**imposing** [1] - 3:25
**imposition** [1] - 3:21
**impression** [1] - 28:3
**imprisonment** [3] - 41:9, 42:3, 42:23
**improper** [1] - 32:25
**improperly** [1] - 6:19
**improvements** [1] - 27:1
**inaccuracies** [1] - 22:1
**inappropriate** [1] - 36:24
**incalculable** [1] - 40:7
**incarceration** [2] - 34:11, 45:24
**incident** [2] - 6:1, 15:8
**incidents** [1] - 36:2
**include** [1] - 46:15
**included** [1] - 8:15
**including** [6] - 4:8, 9:21, 20:19, 27:20, 41:4, 43:5
**inclusion** [6] - 7:21, 8:25, 9:12, 10:11, 11:17, 11:24
**income** [3] - 4:15, 21:20, 43:12
**increase** [1] - 36:2
**incurred** [1] - 21:19
**indeed** [2] - 24:7, 40:2
**indicating** [1] - 19:1
**Indictment** [2] - 42:18, 43:1
**indictment** [1] - 42:21
**individuals** [1] - 15:24
**influence** [1] - 20:23
**informant** [3] - 8:6, 31:3, 38:10
**information** [5] - 14:20, 24:12, 24:16, 25:8
**informed** [2] - 7:9, 7:12
**inheritances** [2] - 4:17, 43:15
**initial** [3] - 7:10, 7:18, 24:6

**Inmate** [2] - 18:22, 42:4
**inmate** [3] - 19:15, 37:6, 37:8
**inmates** [3] - 37:3, 39:14, 39:18
**insightful** [1] - 27:24
**instead** [4] - 8:8, 30:25, 32:9, 33:13
**institution** [1] - 45:14
**instructed** [3] - 17:24, 18:2, 37:4
**interacted** [1] - 28:10
**interest** [2] - 38:8, 42:11
**internal** [1] - 36:21
**interview** [4] - 11:7, 11:9, 17:19, 23:17
**interviewed** [1] - 38:12
**interviewing** [1] - 8:5
**intimidate** [1] - 38:23
**intrusion** [1] - 23:18
**investigation** [14] - 6:10, 6:11, 6:24, 7:18, 13:7, 14:13, 14:16, 14:17, 14:22, 16:16, 20:23, 38:11, 38:19, 38:25
**investigations** [3] - 16:11, 16:15, 16:16
**investigator** [4] - 13:10, 14:24, 15:21, 16:9
**involved** [11] - 13:15, 13:19, 14:13, 14:18, 16:7, 18:17, 19:13, 19:17, 19:18, 20:7, 26:19
**involvement** [1] - 25:23
**issue** [4] - 9:25, 11:4, 16:7, 33:15
**issued** [1] - 11:3
**issues** [4] - 5:10, 30:16, 30:18, 33:7
**Item** [1] - 3:5
**itself** [2] - 9:22, 17:25

## J

**jacket** [1] - 19:2
**Jackson** [2] - 27:3, 27:6
**Jail** [2] - 31:6, 35:16
**jail** [1] - 36:10
**jails** [6] - 6:11, 6:25, 16:13, 35:14, 36:17, 37:6

**Jauregui** [2] - 2:12, 3:9
**Jerome** [3] - 2:22, 2:23, 3:14
**jerome@ jeromehaiglaw. com** [1] - 2:25
**job** [2] - 35:17, 36:6
**jobs** [1] - 33:20
**joined** [2] - 35:2, 35:4
**jointly** [1] - 19:9
**JUDGE** [1] - 1:4
**judge** [1] - 32:1
**judgment** [4] - 3:21, 3:22, 42:17, 43:25
**judgment's** [2] - 4:13, 43:9
**judgments** [2] - 4:18, 43:15
**judicial** [1] - 47:7
**July** [1] - 45:7
**June** [1] - 36:4
**JUNE** [2] - 1:17, 3:1
**jurisdiction** [1] - 31:9
**jury** [8] - 13:25, 17:24, 18:2, 20:23, 34:20, 38:11, 38:25
**justice** [12] - 15:12, 16:22, 16:25, 18:6, 20:10, 31:1, 31:17, 34:21, 39:16, 39:22, 40:16

## K

**keep** [1] - 6:5
**keeping** [1] - 32:5
**kept** [1] - 31:3
**Kielwasser** [2] - 47:10, 47:11
**KIELWASSER** [1] - 1:22
**kind** [1] - 27:12
**kinds** [1] - 41:3
**knowledge** [1] - 35:19

## L

**LA** [1] - 23:17
**label** [1] - 25:1
**labeled** [1] - 24:25
**lack** [1] - 17:22
**laid** [1] - 29:2
**largely** [1] - 39:10
**LASD'S** [1] - 11:2
**last** [3] - 13:13, 15:16, 28:16
**law** [12] - 19:25, 20:11,

20:16, 20:19, 32:8, 36:12, 40:4, 40:10, 40:23, 41:12, 42:12
**Law** [2] - 2:19, 2:23
**laws** [1] - 20:20
**lawyer** [1] - 44:5
**leader** [3] - 25:15, 29:21, 32:21
**leaders** [2] - 25:20, 33:2
**leadership** [2] - 38:6, 39:24
**learned** [4] - 8:8, 31:2, 31:4, 32:14
**leave** [1] - 29:10
**Leavins** [2] - 11:8, 30:4
**lectern** [1] - 3:19
**left** [1] - 23:12
**legal** [2] - 36:12, 41:20
**legitimate** [1] - 38:19
**Leroy** [3] - 23:1, 24:12, 24:19
**less** [2] - 42:3, 47:5
**letter** [9] - 23:21, 26:22, 26:24, 27:13, 27:22, 27:24, 28:2
**letters** [2] - 5:8, 28:7
**Level** [1] - 29:14
**level** [4] - 22:11, 24:22, 34:9
**levels** [2] - 30:5, 30:8
**lied** [1] - 15:25
**lieutenant** [3] - 30:4, 30:8, 35:6
**light** [1] - 45:4
**line** [1] - 15:18
**listed** [1] - 6:6
**listen** [1] - 24:5
**listened** [1] - 16:2
**literally** [1] - 10:16
**live** [1] - 27:1
**Lizabeth** [2] - 2:8, 3:9
**lizabeth.rhodes@ usdoj.gov** [1] - 2:11
**local** [1] - 35:2
**locate** [1] - 10:24
**located** [1] - 45:17
**logo** [2] - 31:24, 32:1
**look** [5] - 11:10, 30:10, 30:15, 30:16, 37:10
**looking** [4] - 17:17, 18:7, 24:16, 28:22
**Los** [10] - 1:17, 1:24, 2:5, 2:10, 2:14, 30:22, 34:22, 35:5, 39:2, 39:7
**loss** [1] - 21:20
**lottery** [2] - 4:17,

43:14
**lower** [1] - 43:22
**loyal** [2] - 37:15, 39:4
**loyalty** [5] - 32:9, 32:18, 37:19, 39:5
**lying** [1] - 13:1

## M

**mail** [5] - 2:7, 2:11, 2:16, 2:25, 11:7
**mails** [2] - 25:5, 25:23
**man** [2] - 28:4, 32:11
**management** [1] - 35:8
**mandated** [1] - 43:20
**manipulating** [1] - 18:13
**Manzo** [1] - 8:5
**Marshal's** [1] - 45:17
**Martinez** [3] - 7:9, 7:12, 24:8
**marvelous** [1] - 28:11
**material** [2] - 17:13, 17:16
**materiality** [4] - 17:22, 17:25, 18:2, 18:3
**mathematical** [1] - 34:13
**matter** [6] - 3:20, 4:3, 15:17, 24:17, 25:13, 47:4
**matters** [1] - 24:18
**MCJ** [1] - 38:5
**mean** [1] - 15:9
**meaning** [1] - 32:1
**meaningful** [1] - 22:1
**meanwhile** [1] - 13:17
**medical** [1] - 18:25
**meeting** [4] - 8:11, 33:8, 35:19, 35:20
**meetings** [1] - 16:7
**meets** [1] - 18:19
**member** [1] - 28:12
**memoranda** [1] - 5:9
**Memoranda** [1] - 5:10
**Men's** [2] - 31:5, 35:16
**mentality** [1] - 37:5
**Mickey** [1] - 8:5
**middle** [1] - 23:7
**might** [2] - 30:11, 31:4
**minimized** [1] - 31:16
**Miramar** [1] - 2:19
**misconduct** [1] - 36:14
**misplaced** [1] - 37:19
**misrepresented** [1] - 18:7
**moment** [3] - 26:4,

26:12, 29:13
**moments** [1] - 17:14
**MONDAY** [2] - 1:17, 3:1
**moneys** [4] - 4:14, 4:17, 43:11, 43:14
**month** [1] - 28:23
**months** [10] - 29:8, 29:18, 30:4, 30:6, 30:7, 33:22, 34:11, 41:9, 42:19, 42:20
**morning** [5] - 3:8, 3:11, 3:16, 3:17, 26:8
**most** [4] - 23:2, 26:18, 27:18, 39:6
**motion** [8] - 44:13, 44:17, 44:24, 45:1, 45:6, 46:9, 46:13, 46:16
**motions** [1] - 29:4
**MR** [86] - 3:8, 3:12, 3:14, 3:17, 3:24, 4:23, 5:2, 5:5, 5:6, 5:14, 5:15, 5:24, 6:3, 6:14, 7:5, 7:8, 7:15, 8:1, 8:3, 8:20, 8:22, 9:4, 9:9, 9:10, 9:15, 9:17, 9:24, 10:1, 10:8, 10:9, 10:15, 10:18, 11:12, 11:20, 11:21, 12:4, 12:5, 12:14, 12:19, 12:25, 14:6, 15:14, 15:16, 16:19, 17:8, 17:10, 17:24, 19:24, 20:5, 21:12, 21:24, 22:9, 22:10, 22:13, 22:17, 22:20, 25:4, 26:7, 26:9, 26:11, 30:1, 32:24, 33:1, 33:4, 33:6, 34:3, 34:5, 34:14, 34:15, 41:18, 41:19, 41:22, 41:23, 44:11, 44:15, 44:20, 44:23, 44:25, 45:8, 45:11, 45:20, 46:5, 46:6, 46:12, 46:17, 46:19
**must** [1] - 40:9

## N

**names** [1] - 17:18
**Nazi** [1] - 32:2
**necessary** [1] - 41:14
**need** [5] - 40:22, 40:23, 44:21, 45:10, 46:13
**needed** [2] - 13:8,

14:14
**negotiated** [1] - 28:22
**Neo** [1] - 32:2
**Neo-Nazi** [1] - 32:2
**never** [3] - 14:24, 16:9, 27:23
**next** [3] - 12:22, 17:5, 19:21
**Ninth** [2] - 20:17, 45:5
**nobody** [3] - 7:17, 24:19, 40:25
**none** [4] - 5:14, 23:24, 24:2, 24:9
**noon** [1] - 45:15
**North** [4] - 1:23, 2:5, 2:9, 2:14
**nose** [1] - 30:25
**nothing** [4] - 23:9, 25:11, 32:1
**notice** [2] - 4:2, 44:7
**noticed** [1] - 28:15
**number** [6] - 18:9, 19:12, 19:14, 25:21, 36:2, 39:13
**numerous** [1] - 19:17

## O

**oath** [2] - 13:2, 31:14
**object** [2] - 24:25, 33:4
**objected** [4] - 7:24, 9:2, 12:14, 17:7
**objecting** [1] - 22:17
**objection** [37] - 5:21, 7:2, 7:3, 7:22, 8:1, 8:17, 8:18, 8:25, 9:5, 9:8, 9:13, 9:14, 9:16, 9:19, 9:23, 10:6, 10:7, 10:13, 10:14, 10:16, 10:19, 11:13, 11:15, 11:19, 12:1, 12:2, 12:11, 17:4, 19:20, 19:23, 22:5, 22:14, 22:16, 26:3, 29:15, 32:24, 44:18
**objections** [12] - 4:3, 4:4, 4:25, 5:12, 5:18, 11:14, 12:13, 21:1, 21:9, 21:13, 26:5, 41:16
**obligation** [4] - 4:12, 4:16, 4:19, 22:3
**obligations** [2] - 43:13, 43:17
**obstruct** [4] - 6:12, 6:15, 7:1, 34:20
**obstructing** [1] - 39:22

**obstruction** [11] - 12:23, 13:1, 13:20, 15:11, 16:21, 16:25, 18:6, 20:10, 31:17, 34:21, 40:16
**obtained** [3] - 35:1, 39:12, 41:1
**obvious** [1] - 5:25
**obviously** [1] - 27:21
**occasions** [1] - 37:23
**occurred** [3] - 19:18, 36:7, 39:23
**occurring** [1] - 38:5
**OF** [4] - 1:2, 1:8, 2:3, 2:17
**offense** [7] - 17:25, 19:13, 19:16, 22:12, 24:21, 34:9, 40:22
**offenses** [3] - 6:9, 36:6, 41:11
**office** [3] - 24:1, 26:5, 32:22
**Office** [7] - 2:4, 2:8, 2:13, 2:23, 4:7, 43:4, 45:17
**officer** [3] - 20:11, 20:15, 21:4
**officers** [3] - 20:18, 20:20, 32:8
**Offices** [1] - 2:19
**Official** [1] - 1:23
**official** [2] - 40:12, 47:11
**officials** [1] - 29:3
**ON** [2] - 2:3, 2:17
**once** [1] - 32:21
**One** [4] - 42:9, 42:18, 42:21, 43:1
**one** [27] - 13:5, 13:9, 13:13, 13:15, 15:18, 15:23, 16:15, 17:18, 18:5, 22:25, 23:4, 23:16, 24:5, 24:6, 25:6, 25:7, 25:14, 26:20, 30:11, 30:16, 30:21, 31:18, 35:11, 39:6, 44:5, 46:6
**open** [1] - 27:11
**operated** [1] - 39:2
**operation** [2] - 16:4, 24:5
**operations** [2] - 20:8, 37:13
**opinions** [1] - 12:15
**opposing** [1] - 46:8
**opposite** [1] - 30:23
**orally** [1] - 22:18
**Order** [7] - 4:7, 4:8, 4:9, 42:15, 43:5, 43:6

**order** [4] - 18:2, 20:9, 27:15, 45:13
**ordered** [13] - 4:12, 4:15, 4:19, 16:1, 22:3, 23:12, 24:6, 24:12, 31:6, 41:25, 42:6, 43:12, 43:16
**orders** [2] - 4:13, 43:9
**organization** [1] - 15:10
**organizer** [1] - 25:15
**original** [1] - 19:2
**OSJ** [1] - 25:10
**otherwise** [1] - 40:21
**ought** [1] - 46:14
**outside** [1] - 38:21
**outstanding** [4] - 4:15, 4:19, 43:12, 43:16
**overruled** [14] - 7:2, 7:23, 8:17, 9:1, 9:13, 9:19, 10:6, 10:13, 11:15, 12:1, 12:11, 19:20, 21:2, 26:3
**oversight** [1] - 35:13
**overtime** [1] - 21:18
**overwhelming** [1] - 38:7
**own** [8] - 16:6, 16:17, 19:8, 26:21, 31:16, 37:20, 38:1, 39:24

## P

**page** [2] - 12:17, 23:4
**pages** [1] - 23:5
**paid** [1] - 42:13
**paint** [1] - 16:10
**paragraph** [24] - 7:4, 7:22, 7:24, 8:1, 8:15, 8:19, 8:25, 9:2, 9:8, 9:13, 9:14, 9:20, 9:23, 10:4, 10:7, 10:11, 10:14, 10:20, 10:22, 11:14, 11:18, 11:19, 11:25, 12:3
**paragraphs** [4] - 5:22, 6:4, 6:5, 12:15
**Park** [1] - 27:4
**park** [2] - 27:8, 27:9
**parole** [1] - 22:11
**part** [6] - 14:15, 14:21, 15:2, 24:15, 38:18, 39:19
**participants** [1] - 19:17
**participated** [1] - 12:10
**particular** [4] - 6:16,

15:1, 15:8, 21:19
**parties** [2] - 5:4, 8:12
**parties'** [1] - 5:9
**parts** [1] - 29:3
**passing** [1] - 14:21
**patrol** [1] - 16:13
**PAUL** [1] - 1:12
**Paul** [2] - 3:6, 27:6
**pay** [4] - 4:11, 42:1, 42:6, 43:8
**payment** [2] - 4:13, 43:10
**pending** [1] - 30:11
**people** [20] - 7:16, 15:19, 17:11, 20:8, 20:9, 25:9, 25:10, 25:22, 26:23, 26:25, 27:18, 28:7, 28:8, 28:9, 28:10, 31:10, 31:15, 31:17, 32:16, 33:19
**per** [1] - 42:3
**perception** [1] - 36:16
**PERCY** [1] - 1:4
**performed** [3] - 26:14, 40:1, 40:12
**perhaps** [2] - 21:17, 23:2
**period** [6] - 4:10, 19:18, 23:8, 42:3, 43:7, 44:1
**periodically** [1] - 14:20
**perjured** [1] - 17:3
**perjurious** [1] - 16:18
**permission** [1] - 14:8
**perpetuated** [1] - 35:24
**person** [3] - 25:15, 28:13, 31:18
**personal** [2] - 27:15, 27:16
**personalization** [1] - 32:24
**personnel** [1] - 20:1
**pertaining** [2] - 4:13, 43:9
**phone** [12] - 6:1, 7:10, 7:18, 7:19, 13:17, 13:21, 15:4, 15:5, 15:11, 16:22, 24:7
**physical** [1] - 37:2
**physically** [2] - 14:19, 39:13
**picture** [2] - 21:14, 28:11
**place** [4] - 26:21, 27:17, 30:20, 30:23
**placed** [1] - 42:24
**plaintiff** [1] - 1:10

**PLAINTIFF** [1] - 2:3
**plan** [2] - 35:17, 35:18
**plea** [1] - 28:21
**pled** [1] - 30:17
**plenty** [2] - 25:5
**plug** [1] - 16:22
**point** [13] - 6:7, 7:18, 8:3, 8:6, 13:13, 13:23, 15:16, 15:25, 16:3, 16:5, 17:17, 28:16, 46:8
**pointed** [1] - 13:2
**points** [1] - 14:7
**police** [4] - 20:18, 20:20, 27:8, 35:2
**policy** [1] - 12:10
**politics** [2] - 26:15, 26:19
**poorly** [1] - 38:6
**portion** [2] - 7:9, 7:11
**portions** [2] - 10:22
**portray** [1] - 28:5
**poses** [1] - 43:22
**position** [11] - 17:11, 17:15, 20:2, 20:6, 20:10, 20:12, 20:25, 21:5, 21:6, 35:15, 40:25
**positions** [1] - 39:21
**potential** [2] - 5:19, 28:23
**power** [2] - 37:20, 41:2
**precisely** [1] - 20:24
**prepared** [1] - 22:14
**preponderance** [4] - 6:23, 8:14, 9:20, 12:9
**presence** [1] - 35:19
**present** [2] - 3:13, 28:11
**Presentence** [13] - 5:3, 5:8, 5:11, 5:20, 9:7, 11:18, 11:25, 12:16, 21:16, 22:7, 26:2, 34:7
**PRESIDING** [1] - 1:4
**pretrial** [1] - 29:4
**prevent** [2] - 18:21, 39:22
**previous** [2] - 34:16, 41:23
**previously** [1] - 41:17
**prison** [1] - 17:20
**Prisons** [2] - 42:19, 45:15
**Prisons'** [1] - 42:4
**probable** [1] - 38:22
**Probation** [2] - 4:7, 43:4

**probation** [5] - 13:3, 20:15, 21:3, 26:5, 28:15
**probation's** [1] - 19:25
**probationary** [2] - 29:22, 41:5
**problems** [4] - 32:19, 36:3, 36:10, 37:1
**proceedings** [1] - 47:3
**Proceedings** [2] - 1:16, 46:21
**process** [1] - 36:22
**Program** [1] - 42:5
**projected** [1] - 21:20
**promote** [3] - 40:10, 40:23
**promoted** [2] - 35:9, 36:4
**promotes** [1] - 41:12
**promotions** [2] - 37:15, 39:20
**pronouncement** [1] - 3:21
**properly** [4] - 8:15, 12:16, 19:12, 26:2
**property** [1] - 45:21
**protect** [3] - 32:10, 32:15, 37:20
**protective** [1] - 18:24
**provable** [1] - 13:4
**proved** [1] - 14:2
**proven** [2] - 13:4, 14:4
**provide** [6] - 13:5, 13:8, 14:14, 14:18, 19:7, 38:16
**provided** [3] - 7:11, 42:12, 44:5
**provides** [1] - 41:11
**PSR** [6] - 6:6, 6:13, 7:13, 7:14, 7:22, 20:14
**Public** [1] - 2:9
**public** [7] - 20:18, 20:19, 20:25, 21:7, 26:17, 39:14, 40:4
**public's** [2] - 39:25, 40:3
**punishment** [2] - 40:22, 41:12
**pursuant** [2] - 42:4, 42:16
**pursuing** [1] - 38:8
**push** [1] - 36:12
**put** [3] - 4:3, 28:1, 29:9
**putting** [1] - 26:4

## Q

**qualifies** [1] - 25:15
**quality** [1] - 30:15
**quantity** [1] - 30:15
**quarter** [1] - 42:4
**quote** [2] - 13:6, 27:3
**quoted** [2] - 27:22, 29:3

## R

**raised** [2] - 5:10, 34:25
**Raleigh** [1] - 27:4
**ran** [1] - 15:9
**range** [4] - 29:14, 29:18, 34:10, 41:6
**ranking** [1] - 21:5
**ranks** [3] - 32:4, 35:6, 37:15
**rate** [1] - 42:3
**read** [3] - 5:7, 14:9, 22:6
**reading** [2] - 20:15, 28:2
**real** [1] - 45:21
**really** [4] - 10:19, 22:20, 23:6, 23:12
**reason** [6] - 3:22, 26:20, 27:16, 27:25, 41:20
**reasonable** [2] - 14:3, 29:22
**reasons** [1] - 25:25
**rebooked** [1] - 19:4
**receive** [1] - 29:6
**received** [7] - 4:14, 4:17, 5:7, 5:8, 30:5, 43:11, 43:14
**receiving** [2] - 14:20, 25:7
**receptive** [1] - 27:6
**record** [12] - 7:21, 8:24, 9:12, 10:5, 10:12, 10:16, 11:17, 11:24, 12:7, 15:5, 16:22, 28:22
**record's** [1] - 19:2
**recorded** [1] - 47:3
**recording** [3] - 8:4, 8:7
**records** [10] - 13:17, 13:21, 15:4, 17:6, 18:18, 18:21, 18:23, 18:25, 19:3, 19:14
**reduction** [1] - 47:6
**reemergence** [1] -

36:3
**reference** [1] - 9:6
**referring** [2] - 7:8, 12:20
**reflect** [2] - 6:5, 38:6
**reflection** [1] - 8:13
**reflects** [1] - 41:11
**reform** [2] - 32:15, 33:16
**Reform** [1] - 42:16
**reformers** [1] - 32:17
**refunds** [2] - 4:15, 43:12
**regarding** [1] - 16:7
**regardless** [1] - 29:12
**Regulations** [2] - 4:6, 43:4
**regulations** [1] - 47:7
**rejected** [1] - 14:1
**related** [3] - 5:25, 6:18, 7:1
**release** [4] - 4:1, 41:10, 42:23, 42:24
**released** [1] - 19:1
**relying** [1] - 7:15
**remain** [2] - 39:19, 45:22
**remained** [1] - 36:7
**remarks** [1] - 36:22
**remedy** [1] - 36:23
**remember** [2] - 22:13, 22:15
**remorse** [1] - 30:25
**removed** [1] - 32:5
**Reply** [2] - 6:8, 7:11
**reply** [2] - 6:14, 15:14
**report** [1] - 45:16
**Report** [13] - 5:3, 5:8, 5:11, 5:20, 9:7, 11:18, 11:25, 12:16, 21:16, 22:7, 22:8, 26:2, 34:8
**Reporter** [2] - 1:23, 47:11
**Reporter's** [1] - 1:16
**reporting** [2] - 25:9, 25:22
**represent** [1] - 39:17
**represented** [2] - 26:17, 31:24
**request** [3] - 11:8, 41:4, 44:11
**requirement** [1] - 17:25
**resentment** [1] - 23:18
**respect** [3] - 40:10, 40:23, 41:12
**respond** [1] - 37:7
**response** [3] - 9:10, 14:10, 21:24

**Responsibility** [1] - 42:5
**responsibility** [4] - 35:14, 37:25, 40:17, 41:2
**responsible** [2] - 27:2, 37:13
**rest** [1] - 15:3
**result** [3] - 35:23, 36:18, 45:23
**resulted** [1] - 6:24
**results** [1] - 34:10
**retired** [1] - 36:8
**retirement** [1] - 21:20
**returns** [2] - 23:14, 23:15
**reward** [1] - 37:20
**rewarded** [1] - 37:15
**Rhodes** [2] - 2:8, 3:9
**rights** [2] - 6:7, 6:11
**Rights** [1] - 2:9
**ringleader** [6] - 22:22, 22:25, 24:10, 24:19, 24:25, 33:22
**rise** [1] - 37:14
**rising** [1] - 32:4
**risk** [1] - 43:22
**role** [10] - 24:11, 24:20, 24:21, 25:13, 25:18, 25:21, 26:1, 29:1, 31:16, 37:14
**roles** [1] - 25:12
**Room** [1] - 1:23
**rose** [1] - 35:5
**rotation** [1] - 35:17
**Roybal** [1] - 45:18
**RPR** [2] - 1:22, 47:11
**ruled** [1] - 28:20
**Rules** [2] - 4:6, 43:3
**run** [1] - 43:1

## S

**sample** [2] - 4:21, 43:19
**San** [1] - 2:20
**sat** [1] - 27:9
**satisfy** [1] - 22:2
**saw** [2] - 16:7, 25:5
**scheme** [1] - 13:20
**school** [1] - 28:9
**scope** [2] - 18:17, 19:17
**searched** [1] - 11:1
**second** [4] - 13:9, 15:2, 21:5, 36:5
**Section** [5] - 2:9, 2:13, 20:24, 29:23, 41:8
**sections** [1] - 19:13

**secured** [1] - 45:21
**see** [2] - 27:1, 27:9
**seeing** [2] - 22:13, 22:15
**seek** [1] - 6:15
**seeks** [1] - 28:24
**sees** [1] - 27:13
**self** [3] - 44:10, 44:19, 46:3
**self-surrender** [3] - 44:10, 44:19, 46:3
**send** [1] - 37:8
**sends** [1] - 23:20
**sense** [1] - 17:16
**sentence** [20] - 3:21, 3:22, 6:22, 10:15, 11:13, 14:9, 15:1, 28:16, 28:23, 29:6, 29:22, 30:6, 33:21, 33:23, 40:14, 40:20, 41:5, 41:8, 41:20, 43:25
**sentenced** [1] - 37:17
**sentences** [3] - 30:3, 30:10, 41:3
**SENTENCING** [1] - 1:16
**sentencing** [11] - 5:9, 5:16, 6:8, 9:16, 19:7, 23:22, 26:8, 29:4, 34:16, 40:24, 41:15
**Sentencing** [7] - 5:10, 12:17, 23:4, 34:10, 40:6, 41:7, 42:16
**September** [6] - 23:7, 23:15, 23:25, 36:7
**sergeant** [2] - 31:23, 33:17
**series** [1] - 45:20
**seriousness** [2] - 40:22, 41:11
**servants** [1] - 26:17
**serve** [1] - 32:16
**served** [3] - 30:5, 35:12, 42:21
**service** [4] - 26:14, 27:14, 29:20, 39:24
**serving** [2] - 24:1, 30:8
**set** [4] - 21:20, 25:25, 34:7, 36:1
**seven** [1] - 23:5
**several** [7] - 4:1, 7:16, 18:14, 30:5, 30:8, 31:14, 36:11
**shall** [17] - 4:6, 4:11, 4:14, 4:16, 4:20, 41:25, 42:2, 42:6, 42:11, 42:13, 42:14, 42:24, 43:3, 43:8,

43:11, 43:13, 43:18
**share** [1] - 27:24
**sharp** [1] - 36:1
**shed** [1] - 45:4
**Sheriff** [5] - 23:16, 35:6, 36:5, 39:7, 40:17
**sheriff** [3] - 24:2, 35:11, 35:13
**sheriff's** [15] - 10:4, 11:4, 11:6, 11:10, 15:7, 20:6, 21:6, 23:18, 31:8, 31:22, 32:5, 32:15, 33:16, 37:1, 40:1
**Sheriff's** [4] - 30:22, 34:23, 35:5, 39:3
**shield** [3] - 37:11, 38:2, 39:9
**shift** [1] - 40:16
**short** [1] - 27:3
**shortly** [2] - 5:11, 14:23
**show** [3] - 8:5, 15:11, 32:8
**showed** [6] - 13:13, 13:17, 13:22, 18:8, 32:18, 36:9
**showing** [3] - 17:2, 18:23, 32:9
**shown** [2] - 30:24, 37:25
**shows** [4] - 11:9, 15:24, 32:6, 32:7
**side** [1] - 27:21
**significant** [2] - 13:1, 13:20
**significantly** [1] - 31:16
**similar** [1] - 41:13
**simply** [3] - 24:7, 24:10, 29:5
**situation** [2] - 20:24, 28:19
**six** [4] - 28:23, 29:7, 44:23, 45:1
**six-month** [1] - 28:23
**small** [1] - 39:17
**Smith** [1] - 8:5
**solely** [1] - 40:17
**someone** [1] - 28:11
**sorry** [1] - 39:7
**sort** [2] - 14:25, 29:11
**sought** [2] - 6:12, 26:23
**speaking** [1] - 15:17
**speaks** [1] - 32:11
**special** [6] - 4:8, 4:11, 41:10, 42:1, 43:6, 43:8

**specifically** [1] - 40:9
**spent** [1] - 34:24
**spiteful** [1] - 33:14
**spouse** [1] - 21:19
**Spring** [4] - 1:23, 2:5, 2:9, 2:14
**stage** [1] - 36:1
**stand** [6] - 9:15, 9:24, 10:17, 11:13, 15:21, 15:25
**standing** [1] - 30:24
**stands** [1] - 6:25
**state** [4] - 3:7, 5:24, 6:9, 17:20
**statement** [5] - 7:14, 15:20, 16:23, 27:13, 29:2
**statements** [5] - 13:3, 16:17, 16:18, 36:15, 36:20
**States** [8] - 3:10, 4:7, 41:7, 42:1, 42:7, 43:4, 45:17, 47:7
**states** [2] - 20:14, 20:15
**STATES** [2] - 1:1, 1:8
**statute** [1] - 43:21
**statutory** [1] - 41:15
**steaming** [1] - 23:20
**stenographically** [1] - 47:3
**step** [1] - 31:1
**steps** [1] - 10:24
**Steve** [2] - 24:8, 30:4
**steward** [4] - 16:8, 18:5, 30:2, 30:19
**STEWARD** [48] - 3:12, 3:17, 3:24, 4:23, 5:2, 5:6, 5:15, 5:24, 6:14, 7:5, 7:15, 8:1, 8:20, 9:9, 9:15, 9:24, 10:8, 10:15, 11:12, 11:20, 12:4, 12:14, 14:6, 16:19, 17:8, 17:10, 19:24, 21:12, 22:10, 22:17, 22:20, 26:7, 26:11, 32:24, 33:4, 34:5, 34:15, 41:19, 41:23, 44:11, 44:15, 44:23, 44:25, 45:8, 45:20, 46:6, 46:12, 46:17
**Steward** [6] - 2:18, 2:19, 3:12, 20:7, 25:11, 25:17
**still** [4] - 16:21, 23:11, 33:23, 46:8
**stop** [1] - 38:10
**story** [3] - 33:3, 33:4
**strategy** [1] - 25:8

**Street** [4] - 1:23, 2:5, 2:9, 2:14
**stretch** [1] - 44:15
**stricken** [1] - 9:6
**striking** [1] - 23:6
**stuff** [1] - 24:2
**stunning** [1] - 28:25
**subject** [1] - 20:12
**submit** [11] - 8:20, 9:9, 10:8, 11:20, 12:4, 15:13, 20:4, 21:22, 27:22, 29:1, 34:15
**submitted** [1] - 23:3
**subordinates** [1] - 39:4
**subsequent** [1] - 35:20
**substance** [1] - 43:22
**substantial** [2] - 19:14, 19:18
**successful** [1] - 39:11
**sufficient** [14] - 7:20, 8:24, 9:12, 10:3, 10:5, 10:12, 11:16, 11:22, 11:23, 12:6, 16:24, 41:14, 44:16, 45:11
**suggest** [1] - 29:22
**Suite** [2] - 2:20, 2:23
**sum** [1] - 8:7
**Superior** [1] - 31:8
**supervised** [7] - 4:1, 16:14, 16:15, 20:6, 33:18, 41:10, 42:24
**supervision** [2] - 4:10, 43:7
**supervisor** [4] - 8:9, 31:21, 32:4, 32:12
**supervisors** [4] - 35:20, 35:23, 36:23
**support** [7] - 7:21, 8:24, 9:12, 10:3, 11:17, 11:24, 25:1
**supported** [4] - 8:16, 9:21, 10:5, 10:16
**supports** [1] - 10:11
**supposed** [3] - 32:10, 32:16, 33:11
**surprise** [1] - 31:20
**surrender** [6] - 44:10, 44:16, 44:19, 45:2, 45:14, 46:3
**surveillance** [3] - 18:15, 31:12, 38:17
**surveilling** [1] - 23:11
**suspended** [1] - 43:21
**sustained** [3] - 9:6, 17:2, 17:4
**sworn** [1] - 34:22
**system** [4] - 11:2,

11:11, 18:23, 31:1
**systems** [1] - 35:23

**T**

**table** [2] - 29:13, 33:8
**Taiwan** [1] - 23:8
**talks** [2] - 16:8, 23:17
**tampering** [1] - 19:19
**TANAKA** [1] - 1:12
**Tanaka** [52] - 3:6, 3:13, 3:15, 5:25, 6:12, 6:15, 6:18, 8:12, 13:5, 13:7, 13:9, 13:14, 13:15, 13:18, 13:23, 14:17, 14:24, 15:6, 15:20, 15:22, 15:24, 16:3, 16:5, 16:6, 16:8, 17:12, 20:5, 20:12, 22:22, 24:1, 24:10, 25:6, 25:7, 25:8, 25:10, 26:14, 26:19, 26:23, 27:19, 28:3, 28:8, 29:6, 30:5, 30:8, 30:15, 30:19, 30:24, 31:10, 31:11, 31:20, 32:12, 33:13
**Tanaka's** [8] - 14:3, 14:10, 20:3, 21:15, 24:15, 24:21, 25:21, 29:19
**tattoo** [2] - 31:23, 32:3
**taught** [2] - 37:5, 37:9
**tax** [2] - 4:15, 43:12
**team** [1] - 38:2
**telephone** [1] - 1:24
**tempted** [1] - 41:1
**term** [5] - 41:9, 42:19, 42:20, 42:24, 42:25
**terms** [2] - 43:1, 43:2
**testified** [1] - 37:23
**testifying** [1] - 31:14
**testimony** [8] - 7:15, 9:25, 14:3, 25:6, 25:23, 36:25, 37:3, 37:24
**testing** [1] - 43:20
**that..** [1] - 9:3
**THE** [60] - 2:3, 2:17, 3:11, 3:16, 3:18, 3:25, 4:25, 5:3, 5:7, 5:17, 6:2, 6:20, 7:7, 7:20, 8:14, 8:21, 8:23, 9:5, 9:11, 9:18, 10:2, 10:10, 11:15, 11:22, 12:6, 12:21, 14:5, 15:15, 17:1, 17:9, 18:20, 20:17,

21:25, 22:15, 22:19, 25:3, 25:25, 26:10, 29:25, 33:5, 34:1, 34:4, 34:6, 34:17, 41:20, 41:25, 44:13, 44:18, 44:21, 44:24, 45:6, 45:9, 45:13, 45:22, 46:1, 46:2, 46:10, 46:13, 46:18, 46:20
**theme** [1] - 16:9
**theory** [1] - 6:16
**thereafter** [1] - 14:24
**therefore** [14] - 7:1, 7:22, 8:16, 9:13, 10:4, 10:12, 11:25, 12:11, 15:1, 17:3, 17:22, 21:1, 26:3, 40:19
**Thompson** [2] - 30:7, 45:3
**thousands** [1] - 34:21
**threatened** [4] - 18:15, 19:19, 31:13, 38:22
**three** [3] - 4:8, 31:15, 43:5
**throughout** [2] - 37:14, 39:2
**throw** [1] - 6:17
**thumbed** [1] - 30:25
**timeline** [1] - 23:3
**timely** [1] - 5:3
**Title** [1] - 41:7
**today's** [1] - 43:25
**tomorrow** [1] - 45:4
**took** [5] - 10:24, 17:12, 20:22, 24:6, 38:2
**top** [2] - 12:18, 14:19
**Torrance** [1] - 2:24
**total** [3] - 34:9, 42:7, 42:11
**totally** [1] - 27:10
**tough** [1] - 33:15
**track** [1] - 35:8
**Transcript** [1] - 1:16
**transcript** [3] - 14:23, 47:3, 47:5
**transferred** [1] - 32:17
**transparent** [1] - 27:11
**tremendous** [3] - 13:18, 29:19
**trial** [13] - 7:15, 8:16, 9:21, 9:25, 13:2, 13:4, 13:12, 16:10, 24:15, 31:16, 36:9, 36:25, 38:7
**trials** [1] - 31:15
**tried** [4] - 16:9, 16:10,

28:5, 32:14
**trier** [1] - 12:7
**trivialize** [1] - 40:21
**troubled** [1] - 32:19
**troubling** [1] - 39:6
**true** [6] - 10:16, 14:16, 15:1, 16:20, 16:21, 47:2
**truly** [1] - 28:8
**trust** [8] - 19:21, 20:3, 20:18, 20:22, 20:25, 21:7, 39:25, 40:3
**try** [1] - 17:19
**trying** [3] - 10:21, 21:14, 33:16
**turn** [7] - 12:12, 12:22, 12:23, 17:5, 19:21, 34:17, 38:15
**two** [14] - 6:6, 10:15, 11:13, 13:2, 13:3, 23:16, 24:22, 29:2, 33:2, 35:4, 41:9, 42:25, 45:1
**Two** [4] - 42:10, 42:18, 42:21, 43:1
**two-and-a-half** [1] - 29:2
**two-level** [1] - 24:22
**two-sentence** [2] - 10:15, 11:13
**two-year** [1] - 41:9
**type** [4] - 20:24, 23:24, 24:22, 24:23

**U**

**U.S** [2] - 23:21, 32:22
**U.S.C** [1] - 29:23
**ultimately** [1] - 36:1
**unable** [2] - 44:5, 44:6
**undefined** [1] - 36:16
**under** [17] - 6:16, 13:1, 18:19, 19:4, 19:12, 19:25, 24:2, 29:23, 30:5, 30:8, 31:10, 31:14, 31:15, 33:19, 39:23, 40:21, 43:2
**under-sheriff** [1] - 24:2
**underlings** [1] - 31:6
**undermine** [2] - 35:22, 36:22
**undermines** [1] - 40:4
**undersheriff** [5] - 6:18, 36:5, 36:8, 36:20, 37:12
**understood** [1] - 46:12
**undertaken** [1] - 19:10

**unexpected** [2] - 4:18, 43:15
**unfair** [3] - 24:11, 29:5, 29:10
**unfortunate** [1] - 28:6
**unfortunately** [1] - 31:19
**unique** [1] - 45:20
**United** [8] - 3:9, 4:7, 41:7, 42:1, 42:7, 43:4, 45:17, 47:7
**UNITED** [2] - 1:1, 1:8
**unlawful** [1] - 37:19
**unless** [1] - 12:13
**unpaid** [1] - 42:2
**untrue** [1] - 16:12
**unwarranted** [1] - 40:24
**unwritten** [1] - 37:5
**up** [6] - 4:3, 8:7, 29:7, 32:15, 37:9, 38:5
**updated** [1] - 16:5
**updates** [4] - 13:5, 13:11, 13:23, 15:2
**US** [3] - 2:4, 2:8, 2:13
**us-versus-them** [1] - 37:4
**USA** [1] - 3:5
**usual** [1] - 24:2

**V**

**vacation** [1] - 23:8
**value** [1] - 39:4
**values** [1] - 40:5
**variance** [1] - 28:17
**various** [2] - 19:4, 24:14
**versus** [2] - 3:6, 37:4
**vetoed** [1] - 35:17
**victims** [1] - 34:2
**view** [3] - 11:12, 26:18, 29:13
**Vikings** [2] - 31:24, 32:2
**violate** [1] - 20:20
**violation** [1] - 45:23
**visit** [1] - 26:12
**vital** [1] - 39:25
**volumes** [1] - 32:11
**vS** [1] - 1:11

**W**

**waiver** [1] - 44:2
**wants** [1] - 10:23
**ward** [1] - 18:25
**warranted** [1] - 40:20

**ways** [2] - 30:9, 30:14
**week** [2] - 45:3, 45:11
**weeks** [5] - 18:9, 18:14, 44:23, 45:1
**wholly** [2] - 29:5, 29:10
**wielded** [1] - 41:2
**willing** [1] - 37:17
**winnings** [2] - 4:17, 43:14
**wish** [13] - 4:22, 5:23, 6:2, 7:25, 8:21, 14:5, 17:9, 25:3, 26:10, 29:25, 34:4, 34:12, 44:9
**wished** [1] - 34:2
**witness** [2] - 16:6, 19:19
**witnesses** [1] - 18:13
**words** [2] - 14:12, 29:9
**works** [1] - 30:9
**writ** [3] - 10:3, 11:3, 11:4
**written** [2] - 4:4, 28:7

**Y**

**year** [2] - 35:6, 41:9
**years** [8] - 26:14, 26:18, 28:10, 34:24, 35:4, 36:11, 42:25
**Yoshinaga** [1] - 16:6