**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

**HONORABLE PERCY ANDERSON, U.S. DISTRICT JUDGE**

UNITED STATES OF AMERICA,          )
                                   )
              Plaintiff,           )
                                   )
     vs.                           )     CASE NO. CR 15-255-PA
                                   )
PAUL TANAKA,                       )
                                   )
              Defendant.           )
_____)

**REPORTER'S TRANSCRIPT OF**
**MOTIONS HEARING**
**MONDAY, SEPTEMBER 28, 2015**
**3:02 P.M.**
**LOS ANGELES, CALIFORNIA**

_____

**SHAYNA MONTGOMERY, CSR, RPR, CRR**
FORMER FEDERAL OFFICIAL COURT REPORTER
312 NORTH SPRING STREET
LOS ANGELES, CALIFORNIA 90012
SHAYNAMONTGOMERY@YAHOO.COM

**UNITED STATES DISTRICT COURT**

2

**APPEARANCES OF COUNSEL:**


**FOR THE PLAINTIFF:**

    EILEEN DECKER
    United States Attorney
    BY:  BRANDON D. FOX
         LIZABETH A. RHODES
         EDDIE A. JAUREGUI
         Assistant United States Attorneys
    United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012


**FOR THE DEFENDANT PAUL TANAKA:**

    H. DEAN STEWARD, ATTORNEY-PROFESSIONAL CORPORATION
    BY:  H. DEAN STEWARD
         Attorney at Law
    107 Avenida Miramar, Suite C
    San Clemente, California 92672
    (949) 481-4900


**FOR THE DEFENDANT PAUL TANAKA:**

    LAW OFFICE OF JEROME J. HAIG
    BY:  JEROME HAIG
         Attorney at Law
    21143 Hawthorne Boulevard, Suite 454
    Torrance, California 90503
    (424) 488-0686

**UNITED STATES DISTRICT COURT**

**LOS ANGELES, CALIFORNIA; MONDAY, SEPTEMBER 28, 2015**

**3:02 P.M.**

**--oOo--**

THE DEPUTY CLERK:  Calling item number two, CR 15-255, U.S.A. vs. Paul Tanaka.

Counsel, state your appearances, please.

MR. FOX:  Good afternoon, Your Honor.  Brandon Fox, Lizabeth Rhodes and Eddie Jaueregui on behalf of the United States.

THE COURT:  Good afternoon.

MS. RHODES:  Good afternoon, Your Honor.

MR. STEWARD:  And, Your Honor, Harry Steward and Jerome Haig for Mr. Tanaka.  He's present on bond.

THE COURT:  Good afternoon.

MR. HAIG:  Good afternoon.

THE COURT:  All right.  We have some motions that have been filed.  I have read the party's papers and prepared to rule.  Do you wish to be heard on any of these motions?

MR. STEWARD:  Your Honor, we were prepared to give the Court some brief argument, but if the Court's prepared to rule, perhaps we'll waive the argument and listen to the Court.

THE COURT:  All right.  I'll take up first the defendant's motion to strike surplusage from the indictment.

Does the government wish to be heard on any of these?

MR. FOX:  No, Your Honor.

THE COURT: The defendant has moved to strike several allegations from the indictment, which charges him with conspiring to obstruct justice and the obstruction of justice; specifically, move to strike the introductory allegation 8 and all of its subparagraphs. He claims that the allegations are either irrelevant or prejudicial. The government, I believe, has agreed to strike paragraph 8J?

MR. FOX: That's correct, Your Honor.

THE COURT: Here, the defendant is charged as a result of conduct he allegedly took after learning that a federal grand jury was conducting an investigation of inmate abuse and public corruption by LASD deputies. The allegations are the defendant either hid an informant, tampered with witnesses and threatened to charge and arrest an FBI agent assigned to the federal investigation. A motion to strike surplusage from an indictment should only be granted when the challenged allegations are irrelevant to the charges and contain either inflammatory or prejudicial material. The purpose is to protect the defendant from prejudicial allegations that are neither relevant nor material to the charges.

The defendant's knowledge of inmate abuse, deputy misconduct and criticisms of internal LASD investigations are relevant and are not inflammatory. The government's allegation is that the defendant and coconspirators attempted to prevent

the grand jury from conducting an investigation that would uncover a culture of deputy abuse of inmates and corruption within the Men's Central Jail and the Twin Towers.  The indictment also charges the defendant with attempting to learn the manner and extent of the FBI investigation and sought to determine which inmate it was the FBI was in contact with regarding civil rights abuses.  The allegations are relevant to the defendant's knowledge and intent and motive for obstructing and impeding a federal investigation into abuse and corruption, and they provide context relating to the events that give rise to the charges.

The Court finds that the defendant has failed to make the required showing of prejudice and immateriality, and the motion to strike surplusage is denied.

The defendant also moves to dismiss the indictment based upon qualified immunity.  The defendant argues that he's entitled to qualified immunity coextensive with qualified immunity that would be available to him in an action brought under 42 United States Code, Section 1983.  This argument is contrary to settle Supreme Court in Ninth Circuit authority. Neither the Ninth Circuit nor the Supreme Court has ever suggested that policy considerations which compel civil immunity for certain government officials also place officials beyond the reach of the criminal law.

The Fair Warning Doctrine is also inapplicable because the

defendant could have reasonably understood that the obstruction of justice statute covered his conduct.  And finally, local law enforcement officials are not entitled to immunity from federal criminal prosecution.  And even assuming the qualified immunity defense had some validity, it clearly would not provide a basis to dismiss the indictment prior to trial.  A district court can only dismiss a criminal indictment if the issue is entirely severable from evidence to be presented at trial.  Here, the defendant's pretrial claim is plainly not entirely severable, but is intertwined with the disputed evidence concerning the alleged defenses.  Therefore, the issues have to be decided by the trier of fact.

Accordingly, the motion to dismiss the indictment based on qualified immunity or Fair Warning is denied.  Moreover, the Court finds that any claim that the defendant is entitled to a pretrial resolution of his qualified immunity claim is frivolous.

Alternately, the defendants also assert they're entitled to immunity under the Tenth Amendment.  The defendants have cited no case supporting that contention, and it too is contrary to Ninth Circuit or Supreme Court authority.  Whereas, here, important federal interests are at stake.  For example, the sanctity of the grand jury and the enforcement of federal criminal statutes.  Whatever protections are afforded by the Tenth Amendment must give way.

Let me ask -- in turning to the motion for immunity for Mr. Baca, let me ask, has the defense talked to Mr. Baca or interviewed him?

MR. STEWARD:  Not interviewed him, Your Honor. We've made that request.  It has not been granted as of today. Mr. Baca, we understand, just changed counsel about ten days ago.

THE COURT:  Okay.  All right.  To make out a claim for -- well, the defense seeks immunity for Mr. Baca's testimony.  The law is settled that a criminal defendant is not entitled to compel the government to grant immunity to a witness.  The circuit has recognized an exception to the rule in cases where the fact-finding process is additionally distorted by prosecutorial misconduct and thereby the defendant is denied a fair trial.  To make out a claim for prosecutorial misconduct, the defendant must show the nonimmunized witness is relevant and that the government intentionally distorted the judicial fact-finding process by denying immunity to the potential witness.

There's no showing before this Court that Mr. Baca's testimony is relevant or that the government has intentionally distorted the fact-finding process.  The defendant is not proffered the specific and relevant testimony that he anticipates Mr. Baca will give, moreover there's no showing that Baca will assert his Fifth Amendment privilege or that the

government has tried to prevent him from testifying, let alone the government has intentionally caused him to assert his Fifth Amendment privilege.

Moreover, there's no showing of what testimony that Baca would give that would be directly contradicted -- well, there's no showing that the testimony that he would give, that it would be -- that it would directly contradict and immunize witnesses' testimony in this case. Accordingly, that motion to grant Mr. Baca immunity is denied.

We have one additional motion, and that is to continue the trial. I believe the parties have agreed upon a date to have the trial continued?

MS. RHODES: That's correct, Your Honor.

THE COURT: And that date is March 15th?

MS. RHODES: 22nd, I thought. May I have one moment, Your Honor?

THE COURT: That's fine.

(Counsel conferred off the record.)

MS. RHODES: I believe the parties agreed to the 22nd, Your Honor.

THE COURT: All right. What's the status of discovery?

MS. RHODES: Yes, Your Honor. The government believes that it has some additional discovery to turn over with regard to certain witnesses. The government has made

efforts and, in fact, was told on Friday that all the discovery that has been Garrity screened is now on the Omega database, and we believe that we will be able to turn over the rest of the discovery, absent discovery that we obtain from the Sheriff's Department which comes in on a rolling basis, as soon as we get it.

Having said that, it just was able to be uploaded to the Omega database, and the government continues to turn over what it considers to be the most relevant discovery.  As the Court is aware, the government undertook a large-scale investigation. This case is only one of those cases that was indicted, and so the database makes everything that the government received from the LASD and other sources available to the defense.  In addition, I believe that the defense has been provided with an index of Garrity material, so if they wanted it, they could receive it even though the prosecution team has not specifically seen that material.

THE COURT:  Witness discovery, you talking about Jencks material?

MS. RHODES:  Yes, Your Honor.  Well, actually, most of that has been turned over, but we do have some material that would be reports of what witnesses said.  So it wouldn't actually be their Jencks, Your Honor.

THE COURT:  When do you anticipate completing the discovery of witness material outside of Jencks that the

defense is entitled to?

MS. RHODES:  I believe we could get that out within the next two weeks, Your Honor.  But that is information that we already have.  As the Court may be aware, as we continue to interview witnesses and do any trial prep, we turn any additional material over as it comes in.

THE COURT:  Let me see counsel at sidebar briefly.

(Discussion held at sidebar.)

THE COURT:  I understand, Mr. Steward, that you're going to attempt to have surgery doing this period?

MR. STEWARD:  Depends on the Court's ruling.  I'm going to skip the surgery until January if we remain on our same schedule.  If not, if the Court grants the continuance, my intention is to have the surgery in October.

THE COURT:  Okay.  And this is for -- I believe you stated this in a pleading?

MR. STEWARD:  I did.

THE COURT:  It's hip replacement?

MR. STEWARD:  Yes, total hip replacement of the right side.

THE COURT:  And you'd have that in October, and what's the doctors say about --

MR. STEWARD:  My surgery is more difficult because they have to come in posteriorly.  I can't do anything for two weeks, and then it just depends on how my 63-year-old body

reacts.

THE COURT:  All right.  Well, I know you're anticipating that you'd be available in March.  I've had some friends who've had the surgery, and sometimes it doesn't go as planned.

MR. STEWARD:  Yes, Your Honor.  Not to complicate things or give more detail, but I have already four pins in this hip that have to be removed first before they can put the new hip in.  So it's more complicated than normal.

THE COURT:  How realistic do you think it is that you're going to be ready to go in March?

MR. STEWARD:  I'll absolutely be able to do that, unless I die on the operating table.  I'll be fine.

THE COURT:  Okay. All right.  I'm going to go ahead and continue it until March, and we'll see where we are.

MR. STEWARD:  Thank you, Your Honor.  Appreciate it.

MS. RHODES:  Would the Court consider taking an oral waiver from Mr. Tanaka so that when we submit a proposed order that would already be done, or would you like us to do a stipulation and have his signature?

THE COURT:  Is it going to be an issue with respect to him signing?

MR. STEWARD:  No.

MR. FOX:  No.

MR. STEWARD:  We can do it either way.

THE COURT:  Why don't we do a stip and have him sign on.

MS. RHODES:  Thank you, Your Honor.

(End of sidebar discussions.)

THE COURT:  All right.  I'm going to grant the party's joint motion to continue the trial until March 22nd of 2016 at 8:30 a.m.  We'll have a final status conference on March 7th at three o'clock.

Do you anticipate filing any additional motions?

MR. STEWARD:  Only, Your Honor, if there are things -- new things from the government's discovery or potentially, I can't imagine any, in limine.  We've looked at it long and hard, but at this point no, we're not.

THE COURT:  All right.  Any additional motions, including any in limine motions, should be filed by January 11th; any oppositions by January 25th; any replies by February 1st, and I'll hear those motions on February 15th at three o'clock.

All right.  I'm told that February 15 for some of you is a holiday.  We'll make it February 16th at three o'clock.

All right.  Is there anything else?

MR. FOX:  Not from the government, Your Honor.

MR. STEWARD:  No, Your Honor, thank you.

THE COURT:  All right.  Thank you very much.

(The proceedings adjourned at 3:21 p.m.)

UNITED STATES DISTRICT COURT

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES    )
                         )
STATE OF CALIFORNIA      )


        I, SHAYNA MONTGOMERY, Former Federal Official Realtime Court Reporter, in and for the United States District Court for the Central District of California, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the judicial conference of the United States.

Date:  *August 24, 2016*


                    /s/ SHAYNA MONTGOMERY
                    _____
                    SHAYNA MONTGOMERY, CSR, RPR, CRR
                    Former Federal Official Court Reporter


**UNITED STATES DISTRICT COURT**