H. Dean Steward  SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
949-481-4900
Fax: (949) 496-6753
deansteward7777@gmail.com

Jerome Haig  SBN 131903
21143 Hawthorne Blvd Ste 454
Torrance, CA 90503
 (424) 488-0686
Fax(424) 271-5990
jerome@jeromehaiglaw.com

Attorneys for Defendant
Paul Tanaka

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>              Plaintiff,<br><br>       vs.<br><br>PAUL TANAKA, ET. AL.<br><br>         Defendants. | Case No. CR-15-255-PA<br><br>SUPPLEMENT TO MOTION FOR<br>BAIL PENDING APPEAL<br><br>DATE: SEPT. 28, 2016<br><br><br>TIME: 3:00 PM |

The defense supplements their previously filed motion for bail on appeal as set out below.

Dated: 9-20-16          s./ H. Dean Steward

                        H. Dean Steward
                        Jerome Haig
                        Counsel for Defendant Tanaka

- 1 -

TABLE OF CONTENTS

I. Background                                                                5

II. The Court Should Grant Bail Pending Appeal

Because Mr. Tanaka Is Not a Flight Risk or Danger

And He Will Present Several Substantial Issues on Appeal        5

III. Issues to Be Presented Post-*Smith* Decision                  7

    *1. Defendant  Was Denied A Fair Trial By*

    *The Government's Claim That He Was A Tattooed*

    *Member Of A Gang And The Court's Instruction*

    *That This "Evidence" Could Be Used To Establish*

    *The Element Of Intent To Obstruct*                     7

    *2.   The Dual Purpose Instruction Undermined*

    *The Government's  Burden To Prove Defendant's*

    *Purpose Was Substantially One Of Obstructing The*

    *Grand Jury Investigation By Allowing That Element*

    *To Be Satisfied By Proof Of A Purpose That Was*

    *More Than Merely Incidentally Obstructive*            10

    *3. Defendant Was Denied The Right To Call*

    *An Essential Witness To Corroborate His Testimony*

    *And Contradict That Of Immunized Witness Manzo,*

    *And  Thus Was Denied A Due Process Fair Trial*        12

    *4. Cumulative Error*                                      13

IV.    The Court Should Stay the Fine                        14

V. Conclusion                                                              14

Proof of Service                                                           15

TABLE OF AUTHORITIES

*Barefoot v. Estelle* 463 U.S. 880 (1983)      6

*Chapman v. California* 386 U.S. 18 (1967)      10,11

*Luis v. U.S.* 135 S.Ct. 2798 (2015)      14

*Bayramoglu v. Estelle* 806 F.2d 880 (9th Cir. 1986)      9

*Estate of Diaz v. Anaheim* __F.3d __ LEXIS 15572 (2016)      9

*Miller v. City of Los Angeles* 661 F.3d 1024 (9th Cir. 2011)      9

*Parle v. Runnels* 505 F.3d 922 (9th Cir. 2007)      13

*Thomas v. County of Los Angeles* 978 F.2d 504 (9th Cir. 1992)   8

*U.S. v. Al-Moayad* 545 F.3d 139 (2nd Cir. 2008)      13

*U.S. v. Fernandez* 388 F.3d 1199 (9th Cir. 2004)      13

*U.S. v. Frederick* 78 F.3d 1370 (9th Cir. 1996)      13

*U.S. v. Garcia* 340 F.3d 1013 (9th Cir. 2003)      6

*U.S. v. Giancola* 754 F.2d 898 (11th Cir. 1985)      6

*U.S. v. Handy* 761 F.2d 1279 (9th Cir. 1985)      6,7

*U.S. v. Perholtz* 836 F.2d 554 (DC Cir. 1987)      6

*U.S. v. Randall* 761 F.2d 122 (2nd Cir. 1985)      6

*U.S. v. Sine* 493 F.3d 1021 (9th Cir. 2007

*U.S. v. Smith* __F.3d __WL 4137634 (8-4-16)      7,10

*U.S. v. Straub* 538 F.3d 1147 (9th Cir. 2008)      12,13

*U.S. v. Wallace* 848 F.2d 1464 (9th Cir. 1988)      13

--------------------

*Peo. v. Perez* 114 Cal. App. 3d 470 (1981)      9

*Peo. v. Ramirez* 244 Cal. App. 4th 800 (2016)      9

OTHER AUTHORITIES

Statutes

18 USC §3143(B)                                            5

----------------------

Rules

Fed. Rule App. Procedure 9(b)                              6

Fed Rules Crim. Procedure 38(c)                           13

# I. Background

The Court presided over the trial in this matter and is therefore familiar with the facts. In summary, on July 1, 2014, Mr. Tanaka was indicted on May 13, 2015, made his first appearance on May 16, 2015 and was released on a $100,000 appearance bond secured by real property . A jury ultimately convicted Mr. Tanaka of two counts of conspiracy and obstruction of justice, and this Court allowed him to remain on bail to date, and he has been ordered to surrender on Oct. 3, 2016.

On July 8, 2016, the defense filed a motion for bail on appeal [docket #186]. The government did not oppose bail on appeal. [docket #193]. They have since filed a supplement, erroneously alleging that the *Smith* decision, below, has resolved this appeal, and now oppose bail. They are wrong.

The opening brief for Mr. Tanaka is due Oct. 26, 2016, and appellate counsel expects to file the brief in a timely manner. The defense hereby supplements their bail motion, below.

# II. The Court Should Grant Bail Pending Appeal Because Mr. Tanaka Is Not a Flight Risk or Danger And He Will Present Several Substantial Issues on Appeal

A. Introduction

As set out in the defense's original filing, to obtain bail pending appeal, a defendant must show that by clear and convincing evidence that he is not likely to flee or pose a danger to the community.  Further, he must show he will present a substantial question of law on appeal that will likely result in a reversal. See 18 U.S.C. § 3143(b). Also as set out in the original motion, Mr. Tanaka has performed admirably while on pretrial release. The Court is well aware of his background, having heard character witnesses testify at the trial and having considered a detailed Presentence Report. In

1  short, Mr. Tanaka has strong community ties and is not a flight risk or a danger to the
2  community.
3        Also well established is the fact that Mr. Tanaka does not have to establish that
4  his potential appellate arguments are correct, he merely needs to show that he has
5  "debatable" issues that will be raised on appeal and could result in reversal. See *U.S. v.*
6  *Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985); *U.S. v. Garcia* 340 F.3d 1013 (9th Cir.
7  2003). As the Circuit set out in *Garcia* "The defendant, in other words, need not, under
8  *Handy*, present an appeal that will likely be successful, only a non-frivolous issue that,
9  if decided in the defendant's favor, would likely result in reversal or could satisfy one
10 of the other conditions." *Garcia* at p. 1020, n. 5
11       Ninth Circuit has ruled that for purposes of § 3143(b), a "substantial question" is
12 one that is "fairly debatable.'" *Handy*, 761 F.2d at 1281; citing *Barefoot v. Estelle*, 463
13 U.S. 880 (1983); see *U.S. v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir 1987) ("[A]
14 substantial question is one that is "fairly debatable," "fairly doubtful," or "one of more
15 substance than would be necessary to a finding that it was not frivolous."),(citing
16 cases); accord, *U.S. v. Giancola*, 754 F.2d 898 (11th Cir.1985); *U.S. v. Randall*, 761
17 F.2d 122, 124-125 (2d Cir. 1985).
18       The crux of the "substantial question" standard is a reasonable basis for appeal,
19 rather than a likelihood of success:
20
21       Congress did not intend to limit bail pending appeal to cases in which the
22       defendant can demonstrate at the outset of appellate proceedings that the appeal
23       will probably result in reversal or an order for a new trial . . . . [R]equiring the
24       defendant to demonstrate to the District Court that its ruling is likely to result in
25       reversal is tantamount to requiring the District Court to certify that it believes its
26       ruling to be erroneous.  Such an interpretation of the Act would make a mockery
27       of the requirement of Fed.R.App.P. 9(b) that the application for bail be made.
28
                                      - 6 -

*U.S. v. Handy*, supra, citing S.Rep. No. 98-225, 98th Cong., 2d Sess. 27, reprinted in 1984 U.S.Code Cong. & Ad.News 3182, 3210.

As set forth below, Mr. Tanaka will be raising a number of debatable, non-frivolous issues.

## III. Issues to be Presented,  Post-*Smith* Decision

Since the 9th Circuit decision in *U.S. v. Smith* ___F.3d ___, 2016 WL 4137634, on Aug. 4, 2016, the defense/appellate counsel plan to include the following issues[1] for the 9th Circuit in this matter. Two of these issues were not presented in *Smith*, and the third one was bolstered by the decision:

*1. Defendant  Was Denied A Fair Trial By The Government's*
*Claim That He Was A Tattooed Member Of A Gang And The*
*Court's Instruction That This "Evidence" Could Be Used*
*To Establish The Element Of Intent To Obstruct*

The relevance of the Viking gang allegation in 1991 allowed into evidence by the Court to impeach Mr. Tanaka's testimony concerning conduct in 2011 was remote to the point of nonexistence. It was also never established as a fact that there was such a gang of lawless deputies, that it existed to defendant's knowledge, or that he was a member. There was simply no foundation for the questioning, the instruction, or the argument on it.

A requirement of impeachment or for relevance to defendant's criminal intent was a showing that when he was at stationed at Lynwood Sheriff's station, the Vikings

---

[1]  Appellate counsel is currently working on several other additional issues which, at a bare minimum, support the cumulative error argument.

were more than an innocent mascot, but rather a gang of lawless deputies, to which Mr. Tanaka joined. The government failed in that effort. Instead, it relied entirely on its reading of a reversed district court decision and its "findings" made without an evidentiary hearing and in the face of contested declarations.

Given that defendant was not named in the lawsuit, he could hardly be smeared as a "gang" member because there was no establishment of a Viking's gang, or one that all deputies in Lynwood were members of, or that defendant was a part of it.

The government continually referenced during Mr. Tanaka's examination to the unpublished district court decision in 1991, which was reversed on appeal. *Darren Thomas, et. al v. County of Los Angeles*, et al, 978 F.2d 504 (9th Cir. 1992). Defendant duly noted in testimony he was not part of the lawsuit and that he never read the district court opinion. Yet, he was repeatedly questioned about the "findings" in the opinion. That was an entirely baseless platform for the examination because one of the reasons for the reversal of district court's decision was that "findings of fact [were made] without resolving some serious factual disputes concerning specific incidents of misconduct alleged." *Id.* at 506.

Indeed, "[t]here was no evidentiary hearing." *Ibid.* Thus, the district court entered its orders "without an evidentiary hearing and did not resolve any specific conflict factual allegations." *Id.* at 507. Thus, the district court's findings that abuses "were the product of departmental policy is not supported by this record containing conflicting declarations...." *Id.* at 508.

As to the mention of the Vikings, the Circuit court opinion mentioned only this– that the district court cited "the purported existence of a gang of white Sheriff deputies known as the 'Vikings.'" *Id.* at 509. The Court did not endorse the finding that such a gang existed. Even if some deputies were lawless in their conduct and were white racists, it's a label that cannot describe Mr. Tanaka. As his counsel argued to this Court, Mr. Tanaka is of Japanese ancestry and married to a Latina. Doc. 151, p. 6; 8RT

\\. He was also the mayor of Gardena from 1999 to 2016, a city that is over 90% minority based. *Id.*

Moreover, even if the district court decision in *Thomas v. County of Los Angeles* had not been reversed for lack of a record to support its findings, it would still not be a vehicle available to cross examine defendant. A judgment in a civil action is not admissible in a subsequent criminal prosecution. *U.S. v. Sine,* 493 F.3d 1021 (9th Cir. 2007).

The government never formally sought to introduce the district court decision into evidence, but it cross-examined defendant as if there were established findings that the Vikings gang existed and that defendant must have been part of it because he had a Vikings tattoo when he worked there.

Thus, defendant was "impeached" by a decision that was reversed for lack of a foundation for its findings, that defendant was never a part of and never read. Then that "evidence" was given to the jury to help it show defendant's criminal intent on the charges.

If there's a kind of evidence that will inflame prejudice or the trier of fact, it is gang evidence, and most particularly involving deputies sworn to uphold the law. "It is fair to say that when the word 'gang' is used in Los Angeles County, one does not have visions of the characters from the 'Our Little Gang' series. The word gang … connotes opprobrious implications… . [T]he word 'gang' takes on a sinister meaning when it is associated with activities." (*People v. Perez* (1981) 114 Cal. App. 3d 470, 479), quoted recently in *People v. Ramirez*, 244 Cal. App. 4th 800, 822 (2016).

And  the limiting instruction did not cure the error given the lengthy examination on the issue and its use in final argument. As noted in a recent case in the Ninth Circuit: while there is a "strong presumption that jurors follow instructions," a limiting instruction may not sufficiently mitigate the prejudicial impact of evidence in all cases. See *Miller v. City of Los Angeles*, 661 F.3d 1024, 1030 (9th Cir. 2011);

*Bayramoglu v. Estelle*, 806 F.2d 880, 888 (9th Cir. 1986) ("A timely instruction from the judge usually cures the prejudicial impact of evidence unless it is highly prejudicial or the instruction is clearly inadequate." (quoting *U.S. v. Berry*, 627 F.2d 193, 198 (9th Cir. 1980)); *Estate of Diaz v. Anaheim*, __ F.3d __, 2016 U.S. App. LEXIS 15572, pp. 24-25; No. 15-55644 (9th Cir. 2016) (finding inadequate the limiting instructions where inflammatory gang and drug evidence was introduced).

This is a matter of fundamental due process and unless the government proves on appeal from the record that the error is harmless beyond a reasonable doubt, it is reversible error. *Chapman v. California*, 386 U.S. 18 (1967). This, the government will be unable to do.

*2.  The Dual Purpose Instruction Undermined The Government's Burden To Prove Defendant's Purpose Was Substantially One Of Obstructing The Grand Jury Investigation By Allowing That Element To Be Satisfied By Proof Of A Purpose That Was More Than Merely Incidentally Obstructive*

First, it is worth noting that the *Smith* decision is not final. The due date for petitions for re-hearing or en banc treatment are due Oct. 3, 2016.

Further, the *Smith* decision strengthened this issue as to Mr. Tanaka. In *Smith*, the appellate panel criticized the identical "dual purposes" instruction given in that case. While recognizing there could be dual purposes, "we see the use of the phrase 'merely incidental' in instructions as infelicitous." *Id.* The panel viewed the concept to be conveyed as an obstructive purpose that was "substantial" or "considerable" or "essential" or "significant" or "important" or "integral" or "strong."

The panel elected not to settle on one of these terms because the jury was not asked to decide an issue where one alleged purpose was very strong and the other very weak. That jury had to choose between two starkly different stories and readings of the evidence, but none of

- 10 -

the argued purposes appeared to be weak in nature.

> "In another case, the 'more than merely incidental' formulation may well lead to error, and that makes its use rather dangerous at best; thus, our admonition against using it. But on this record, we find no reversible error in the instruction given."
> *Id.*

Here, the instruction was both error and prejudicial. There **was not** overwhelming evidence that defendant intended to corruptly obstruct a grand jury investigation.  Unlike the *Smith* case, there was certainly evidence supporting an acquittal, but as noted, the jury instructions permitted a blended intent assessment and allowed conviction on the "more that merely incidental" showing of corrupt intent. It would be totally speculative on appeal to assert that the jury did not rely on the minimalist definition of the element. Intent was a critical issue in the case. This instruction paved an improper path to conviction. Given the due process right to be tried on the elements of the offense, this error was presumptively prejudicial under *Chapman v. California*, supra.

*3. Defendant Was Denied The Right To Call An Essential Witness To Corroborate His Testimony And Contradict That Of Immunized Witness Manzo, And  Thus Was Denied A Due Process Fair Trial*

The government used its powers of immunity to grant it to four witnesses who testified before Mr. Tanaka's indicting grand jury. Before trial, it made a plea bargain with Deputy Michelle and he testified hoping that his cooperation with the government would reduce his sentence. Deputy Mickey Manzo, who had been

- 11 -

convicted after trial, testified for the government under a grant of immunity.  Former Los Angeles County Sheriff Leroy Baca himself had entered a plea of guilty to lying to the FBI before defendant's trial and his sentencing was put over until after Mr. Tanaka's trial, and thus he was unavailable to defendant. RT 9/28/15,

Defendant noted in the interests of fairness, the government "could have conditioned a plea upon him testifying for the defense or the prosecution. They could have granted him immunity. ¶... [The] grant immunity to Mr. Baca .... should be revisited based upon new facts... *Id.* at 7. The request was denied. *Id.* at 7-8.

The seminal case on the issue is *U.S. v. Straub*  538 F.3d 1147 (9th Cir. 2008). This Court's orders denying requested immunity and otherwise dis-allowing the Baca testimony and statements denied  Mr. Tanaka his constitutional right to fully present a defense and denied due process of law. This is because the fact-finding process "was so distorted through the prosecution's decisions to grant immunity to its own witness while denying immunity to a witness with directly contradictory testimony that the defendant's due process right to a fair trial is violated." *U.S. v. Straub*, supra at p. 1166.

The big void in the case was that the jury never heard from the Sheriff. Clearly, he started the investigative ball rolling for the LASD when, after the initial meetings following the discovery that the FBI had smuggled a phone into the jail to Brown, the Sheriff issued orders for his deputies in the ICIB to investigate the matter while protecting Brown. This culminated in his letter to the then U.S. Attorney of September 26, 2011, calling the FBI actions "unethical and illegal" which assumed "no grounds for cooperation by our respective law enforcement agencies." Exh. 352, p. 2; ER .

Manzo's testimony is replete with multiple internal emails and other exhibits introduced against defendant as co-conspirator statements despite defendant being unaware of them or even not being party to many of them. A summary of the exhibits based on Manzo's testimony are attached as Ex. "A". Refuting this

- 12 -

1    evidence was a primary purpose behind the defense's quest to admit the Baca

2    testimony and statements.

3         The government's opposition to the Baca evidence was an effort to involve

4    defendant in the major obstruction allegations of denying FBI access to Brown, by

5    Brown's movement within the MCJ, and the approach to Agent Marx on September

6    26. Baca's proffered statements contradict that evidence directly.

7         Defendant was not involved in the investigation of Brown and the phone, nor

8    involved in the operation logistics in dealing with Brown. What information he

9    got, as Baca stated, was relayed to both of them by the ICIB. This paints an

10   entirely different picture than what the government argued to the jury.

11

12        "The court's decision to compel use immunity is not a sanction for

13        prosecutorial misconduct; it is a vindication of the defendant's Fifth Amendment

14        due process right to a trial in which the fact-finding process has not been

15        distorted."

16   *Straub,* supra at 1161.

17

18   Defendant was denied due process in the Court's refusal to allow Baca to testify.

19

20   4. *Cumulative Error*

21        Mr. Tanaka contends that each of the errors set forth above independently

22   requires reversal of his conviction. At the very least, however,  the defense will present

23   a debatable claim that the cumulative effect of the errors requires reversal both under

24   the Due Process Clause, see, e.g., *Parle v. Runnels*, 505 F.3d 922, 927-28 (9th Cir.

25   2007), and as a matter of federal common law and under supervisory powers. See, e.g.,

26   *United States v. Frederick,* 78 F.3d 1370, 1381 (9th Cir. 1996). Furthermore, even if

27   some of his appellate claims are only reviewed for plain error, such errors are also

28

considered in the cumulative error analysis. See, e.g., *United States v. Fernandez*, 388 F.3d 1199, 1256-57 (9th Cir. 2004); *United States v. Wallace*, 848 F.2d 1464, 1476 n.21 (9th Cir. 1988); accord *United States v. Al-Moayad,* 545 F.3d 139, 176-78 (2d Cir. 2008). In sum, Mr. Tanaka has debatable, non-frivolous  claims for reversal, when considered individually and cumulatively.

## IV.    The Court Should Stay the Fine

Under Fed. R. Crim. P. 38(c), the Court may stay a fine pending appeal. For the reasons articulated above with respect to his bail motion, Mr. Tanaka contends that he will be presenting substantial issues on appeal, and therefore a stay is appropriate. The fine order may also compromise his continued ability to maintain counsel for appellate purposes. Cf. *Luis v. U.S.*, 135 S.Ct. 2798 (2015)

## V. Conclusion

For the foregoing reasons, Mr. Tanaka respectfully requests that the Court grant his bail pending appeal and maintain the bail currently set. He also requests that the Court stay the fine pending the outcome of his appeal.

Respectfully submitted,


Dated: Sept. 20, 2016              /s/ H. Dean Steward

H. Dean Steward
Jerome Haig
Counsel for Defendant
Paul Tanaka

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED THAT:

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age.

My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672.

I am not a party to the above entitled action. I have caused, on 9-20-16, service

of the defendant's:

**Re-Newed Motion for Bail on Appeal**

On the following parties electronically by filing the foregoing with the Clerk of the

District Court using its ECF system, which electronically notifies counsel for that

party.

**AUSA Brandon Fox,  Lizbeth Rhodes, Eddie Jauregui**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 9-20-16

s/ H. Dean Steward

H. Dean Steward

- 15 -