SANDRA R. BROWN
Acting United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
BRANDON D. FOX (Cal. Bar No. 290409)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
LIZABETH A. RHODES (Cal. Bar No. 155299)
Assistant United States Attorney
Chief, General Crimes Section
EDDIE A. JAUREGUI (Cal. Bar No. 297986)
Assistant United States Attorney
Major Frauds Section
     1500/1200/1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0284/3541/4849
     Facsimile: (213) 894-7631
     E-mail:    Brandon.Fox@usdoj.gov
                Lizabeth.Rhodes@usdoj.gov
                Eddie.Jauregui@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 15-255-PA |
|---|---|
| Plaintiff, | GOVERNMENT'S OBJECTION TO PRE-SENTENCE REPORT AND POSITION RE: SENTENCING OF DEFENDANT WILLIAM THOMAS CAREY |
| v. | |
| WILLIAM THOMAS CAREY, Aka "Tom Carey," | Hearing Date: May 8, 2017 |
| Defendant. | Hearing Time: 8:30 a.m. Location:    Courtroom of the Hon. Percy Anderson |

Ten officials with the Los Angeles County Sheriff's Department have been convicted of offenses related to their obstruction of justice.  Defendant William Thomas Carey stands apart from the others in many notable respects.  First, he is the only one to have pled before his sentencing hearing.  Second, he is the only one to have provided substantial assistance before his sentencing hearing.

Third, he is the only one who can point to corroborating evidence showing that the conspiracy may not have occurred had the ultimate decisions been left to him.

As a result, the government recommends that the Court take into account defendant's unique circumstances and sentence him to ten months.  Such a sentence would balance defendant's role in the conspiracy and lies with these mitigating circumstances.

**I.    HISTORY**

In May 2015, defendant was charged with one count of conspiring to obstruct justice (Count One), one count of obstructing justice (Count Two), and two counts of making false declarations (Counts Three and Four).  On August 19, 2015, defendant pled guilty to making false declaration, in violation of 18 U.S.C. § 1623, as charged in Count Four.  Sentencing is set for May 8, 2017, at 8:30 a.m.

**II.    STATEMENT OF FACTS**

**A.    Defendant's Involvement in Obstruction Conspiracy**

On August 20, 2011, defendant attended a meeting with executives of the LASD.  At the meeting, members of Operation Safe Jails discussed how the FBI was conducting an investigation using inmate Anthony Brown and had introduced a cell phone into Men's Central Jail as part of the investigation.  Sheriff Leroy Baca put defendant, who was the captain overseeing the Internal Criminal Investigations Bureau, in charge of an investigation of the FBI agents who had conducted the undercover operation.  Lieutenant Greg Thompson was in charge of ensuring that the FBI would not have access to Brown.

**B.    Defendant Informs Executives of FBI Visit to See Brown**

On August 23, 2011, the FBI visited Men's Central Jail to interview Brown.  A deputy allowed the agents to interview Brown.

Later, defendant, Thompson, and others reported to Undersheriff Paul Tanaka's office, where Tanaka berated them for letting the FBI meet with Brown.  Tanaka ordered Thompson to tell Baca what had happened.

While Thompson was apologizing to Baca, Carey entered Baca's office.  Not wanting Thompson to take the fall, Carey told Baca that what had happened was Carey's fault.

Defendant returned to MCJ to see where they could move Brown, and decided to take Brown to a medical ward where the LASD treated inmates with infectious diseases.  OSJ deputies began standing guard outside of Brown's cell.

**C.    Further Concealment of Brown after Writ is Issued**

On August 25, 2011, the District Court issued a writ for the testimony of Brown before the federal grand jury.  Over the next several days, the conspirators, with defendant's approval, changed Brown's name on a regular basis.  To do so, the deputies input false information in their records, and claimed that that Brown refused to provide his fingerprints and social security number.

On August 26, 2011, defendant communicated with others about what to do if the FBI showed up at Men's Central Jail with a "possible Court Order" demanding Brown's production to the federal government.  Defendant and the others decided that they would accept the court order "if forced," but would not release the inmate.  Instead, they would have an attorney "on vacation for a month" review the order before releasing Brown.

Defendant decided to move Brown out of Men's Central Jail and take him to a station jail, and informed Baca and Tanaka about this.  Although defendant was expecting a writ to be served on LASD, there is no evidence that he was aware one actually had been served.

3

### D.    Defendant's Oversight Becomes Limited

Defendant assigned the day-to-day operations to Lieutenant Steve Leavins and Sergeants Scott Craig and Maricela Long.  Leavins, Craig and Long were stationed at Sheriff's Headquarters in Monterey Park, while defendant had an office in Commerce.  Leavins had a close relationship with Tanaka, as Leavins recently had been Tanaka's aide.  On multiple occasions, Leavins provided Baca and Tanaka with updates without defendant being present at the meetings.

### E.    Defendant's Oversight Becomes Limited

On August 30, 2011, Leavins, Craig and Long spoke to deputies who may have been in contact with the FBI.  While defendant was at Men's Central Jail for a part of this time, there is no evidence that defendant was aware of the witness tampering that Leavins, Craig and Long engaged in that day.

### F.    Defendant Suggests Complying with Subpoena So as Not to Interfere with Investigation

In late August, the FBI served a grand jury subpoena for, among other things, documents related to Anthony Brown.  In the following email exchange on September 8, 2011, defendant told Leavins to comply with the subpoena:

From: Leavins, Stephen E.

To:   Carey, William T.

Have we decided what to do with the fed order for browns booking packet?

--

From: Carey, William T.

To:   Leavins, Stephen E.

4

I believe we have to honor it, can't impede, otherwise could be construed as interfering in my opinion

After the LASD transferred Brown to state prison, Leavins produced Brown's booking packet to the FBI.  It was missing an important document, as it contained no writ.

**G.    The LASD Seeks a Superior Court Order to Obtain FBI Records and Information**

On September 8, 2011, with defendant's approval, Craig sought a Superior Court order that would have purportedly compelled the FBI to turn over its records related to the FBI's investigation.  Judge John Torribio denied the order, writing that the "Court has no jurisdiction over any federal agency."

**H.    The LASD Threatens to Arrest FBI Special Agent Leah Marx**

On approximately September 26, 2011, defendant met with Baca, Tanaka and Leavins about confronting Special Agent Leah Marx, who was the lead case agent investigating the LASD.  Defendant and Leavins said that ICIB was going to confront SA Marx outside of her residence.  Baca approved of the confrontation, cautioning them not to place handcuffs on SA Marx.

That evening, Craig and Long approached SA Marx outside her home.  SA Marx told them that she was "not going to make any statements."  Craig then informed SA Marx that she was a "named suspect in a felony complaint."  Craig then stated the he was "in the process of swearing out a declaration for an arrest warrant" for her.

Shortly thereafter, then-Supervisory Special Agent Carlos Narro and SA Teresa Tambubolon, called Long.  Long stated that there would be charges against SA Marx, which could occur as soon as the next day, and that the executives were aware of this.  After the call

ended, the recording device captured laughter and Long telling Craig, "They're scared.  They're like, do you know when . . . the warrant . . . ."  Craig informed Long, "You're still rolling."

**I.    Defendant's Lies**

    **1.    December 2012 Interview**

On December 28, 2012, the FBI and U.S. Attorney's Office interviewed Carey.  Carey provided the following statements indicating that the conspirators believed their actions were lawful:

Anthony Brown Movement and Name Change

- Carey repeatedly claimed Brown was moved for his safety
- Carey stated that Brown's name was changed to protect him

Investigation of FBI

- Carey believed the FBI was illegally conspiring with Brown
- The purpose of approaching SA Marx was to interview her
- Carey did not believe the FBI had authorized her actions

    **2.    False Declarations During Trials**

Defendant was called as a defense witness in three related trials in 2014.  His testimony generally was that the LASD did not attempt to obstruct the federal investigation by hiding Brown and confronting SA Marx.  Specifically, on May 19, 2014, in United States v. Sexton, defendant answered "no" when asked if there was "any other reason to move" Brown "other than his safety?"  The Court ordered a mistrial because the jury was split 6-6.

On June 11, in United States v. Thompson, et al., defendant answered "no" when asked "was it ever your objective to interfere in any way with the FBI investigation?"  Despite this testimony, the jury convicted the six Thompson defendants.

**J.    Defendant's Cooperation**

Defendant began cooperating soon after being indicted.  He pled guilty and testified in the grand jury.  Defendant offered new evidence that the government previously did not have against Baca.  Defendant was willing to testify in the <u>Tanaka</u> trial, and agreed to meet to prepare for his testimony.  The government ultimately elected not to call him in the <u>Tanaka</u> trial, which resulted in a conviction of the second-in-command of the LASD.

Defendant also was willing to testify in the first <u>Baca</u> trial.  After preparing the defendant, the government elected not to call him in the first trial, which resulted in a hung jury.  The government called defendant in the second <u>Baca</u> trial.  Defendant met with the government several times and for many hours.  His testimony helped tie Baca to the conspiracy and was one of the key differences between the two trials.

**III. OBJECTION TO PRE-SENTENCE REPORT**

The PSR correctly uses USSG § 2J1.3 to find that defendant's base offense level is 14.  The PSR mistakenly provides defendant with a four-level enhancement for being the leader or organizer of the conspiracy.  Such an enhancement is not applicable to the offense conduct (perjury) because no one else joined in defendant's perjury – he alone did it.  Defendant did not supervise anyone else trying to improperly influence the juries in 2014 so they would acquit the defendants of obstruction of justice.  Accordingly, the enhancement under USSG § 3B1.1(a) is inappropriate.

Similarly, the PSR focuses on defendant's conduct while captain of ICIB in applying a two-level enhancement for abuse of a position of trust.  At the time defendant testified in 2014, he was no longer

7

captain of ICIB.  Instead, he had been transferred to a different part of the LASD.  There is no evidence that his role in 2014 helped facilitate his commission of his perjury.  The enhancement under USSG § 3B1.3 is therefore inappropriate.  The Court can certainly factor these aggravating circumstances into the Court's 18 U.S.C. § 3553 analysis -- indeed, the government has in its sentencing recommendation.  But these are not appropriate enhancements under the Guidelines.

As a result, defendant's total offense level should be 12 after a two-point reduction for acceptance of responsibility.

**IV.  ARGUMENT**

The Court should exercise its discretion and sentence defendant to ten months.  This reflects the low-end of defendant's properly calculated guidelines range.  It also reflects the low-end of an eight-level departure had defendant been convicted of obstruction of justice.[1]  Such a sentence is consistent with Section 3553.

    **A.    Section 3553 Factors**

        1.    <u>The Nature and Circumstances of the Offense, the Seriousness of the Offense, and Just Punishment</u>

In his offense of conviction, defendant attempted to assist his co-conspirators, while at the same time concealing his conduct, by lying about their reasons for their actions in trials that occurred

---

[1] Had defendant been convicted of obstruction, USSG § 2J1.2 would have called for a base level of 14 and a two-level enhancement because the offense involved the fabrication of a substantial number of records and was extensive in scope.  Those 16 levels would have increased to 18 based on defendant's abuse of a position of trust. Defendant should have then received an enhancement of four levels for being a leader or organizer.  A further obstruction of justice enhancement would have been appropriate under USSG § 3C1.1, adding two additional levels.  With acceptance and a timely plea, defendant's offense level would have been 21.

in 2014.  This came after he lied to the FBI and U.S. Attorney's Office as detailed above.

At the time of the obstruction of justice, defendant was the head of the unit that was ordinarily supposed to investigate the same type of crimes that they began covering up.

On the other hand, defendant is the only one involved in the conspiracy who corroborating evidence shows may have complied with the law if left to his own devices.  His September 2011 email indicates he believed they should not impede with the federal grand jury subpoena that had been served on the Department.

2.    History and Characteristics of the Defendant

Defendant has no criminal history.

3.    Promote Respect for Law, Afford Adequate Deterrence

While defendant repeatedly disobeyed the law, he tried to make amends for his conduct by cooperating with the federal government. Providing defendant with a short sentence of imprisonment will show the public that no one is above the law, but will also recognize that defendant provided significant cooperation, which was part of the reason why Baca was ultimately convicted of his crimes.

4.    Avoiding Unwanted Disparity

To date, the Court has imposed the following sentences on defendant's co-conspirators:

- Deputy James Sexton – 18 months (later resentenced to 5 months pursuant to Rule 35)

- Deputy Gerard Smith – 21 months

- Deputy Mickey Manzo – 24 months

- Sergeant Maricela Long – 24 months

- Sergeant Scott Craig – 33 months

9

- Lieutenant Gregory Thompson – 37 months
- Lieutenant Stephen Leavins – 41 months
- Undersheriff Paul Tanaka – 60 months

The government views defendant as being less culpable than many of the others.  First, Tanaka was responsible for the culture in the jails and made statements about the FBI that stoked the flames in the Department.  Second, although he was a lower-ranking official, Leavins was reporting directly to Baca and Tanaka and involved in some of the egregious witness tampering.  Third, Craig and Long were not only involved in the witness tampering, but also made the outrageous statements to SA Marx and later to SSA Narro.

Additionally, defendant is the only one to accept responsibility and plead guilty.  Every other defendant went to trial.  Defendant is also the only one to have cooperated by the time of his sentencing.

As a cooperator, defendant's sentence should be more in line with Sexton, who the Court resentenced to serve approximately 5 months' imprisonment and home detention.[2]  While there may be more aggravating in defendant's situation as compared to Sexton, unlike defendant, Sexton went to trial and appealed his conviction.

**V.   CONCLUSION**

Defendant's sentence should reflect his role in the conspiracy and his lies during the investigation and trial.  But it should also reflect his unique cooperation and its effect on helping convict

---

[2] By the time of defendant's sentencing, the Court may have also resentenced Manzo.  .

10

Leroy Baca.


April 17, 2017                          Respectfully submitted,

                                        SANDRA R. BROWN
                                        United States Attorney

                                        LAWRENCE S. MIDDLETON
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                          */s/ Brandon D. Fox*
                                        BRANDON D. FOX
                                        LIZABETH A. RHODES
                                        EDDIE A. JAUREGUI
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA