ANDREW STOLPER (205562)
Frank Sims Stolper LLP
Newport Gateway
19800 MacArthur Boulevard, Suite 855
Irvine, California 92612
Telephone: (949) 201-2402
Facsimile: (949) 201-2405
Email:        astolper@lawfss.com


Attorneys for Defendant
WILLIAM THOMAS CAREY


UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION


| UNITED STATES OF AMERICA, | No. CR 15-255-PA |
|---|---|
| Plaintiff, | DEFENDANT'S REPLY TO GOVERNMENT'S SENTENCING POSITION |
| v. | |
| WILLIAM THOMAS CAREY, | |
| Defendant. | |

1

## I.    <u>INTRODUCTION</u>

Defendant William "Tom" Carey and the government appear to agree concerning all of the facts that the Court should consider when imposing sentence.  The only disagreement is on what Mr. Carey's ultimate sentence should be, considering his conduct, cooperation history, and personal characteristics.

The government believes that Mr. Carey should be sentenced to 10-months custody.  Mr. Carey, for reasons set forth in his original sentencing position and below, believes that a shorter custodial sentence with a term of home confinement is "sufficient, but not greater than necessary" to achieve the goals set forth by 18 U.S.C. § 3553(a).

A just sentence will punish Mr. Carey for his conduct while recognizing a life otherwise well lived.  A just sentence will message to law enforcement that they are not above the law while simultaneously telling any would-be lawbreaker that their reliance on the blue-wall of silence is misplaced.  A just sentence will hold Mr. Carey accountable for his actions while sparing the teenage boy who Mr. Carey cares for out of sense of honor and love, not obligation.  And most of all, a just sentence will command respect for the law while demonstrating its compassion.

///

///

///

///

///

///

2

**II.   ARGUMENT**

      A.   <u>Section 3553 Factors</u>

          1.   <u>The Nature and Circumstances of the Offense, the Seriousness of the Offense, and Just Punishment</u>

Mr. Carey accepts that his offense of conviction is serious and understands that just punishment needs to be imposed.

          2.   <u>History and Characteristics of the Defendant</u>

In analyzing this area of the law, the government states that "Defendant has no criminal history." Government's Sentencing Position ("GSP") at 9 (CR 229). Respectfully, Mr. Carey's history is worth more consideration than mere absence of a criminal history. Both before and after the instant conduct, there is overwhelming evidence that Mr. Carey has conducted himself with integrity and compassion. The letters of support that Mr. Carey submitted evidence a person who, over his lifetime, has earned the respect of the people who interact with him regardless of their station. Mr. Carey has earned the respect of his bosses, his subordinates, his neighbors, his former in-laws and the children of his ex-wife. His history and characteristics suggest that there is no need, at all, for specific deterrence. It further corroborates the government's point that Mr. Carey would have "complied with the law if left to his own devices." <u>Id.</u> at 9.

          3.   <u>Promote Respect for Law, Afford Adequate Deterrence</u>

The purpose of deterrence is to motivate compliance with the law by communicating that transgressors will be caught and

punished.  One of, if not the, primary tool that the government uses to catch and punish criminals is through cooperating witnesses.

As the government recognizes, prior to Mr. Carey's guilty plea no member of the conspiracy accepted responsibility for their conduct, much less offered to cooperate against the substantially more culpable Baca and Tanaka.

By publicly cooperating against Baca and Tanaka, Mr. Carey has more than served the cause of deterrence.  Sworn officers who consider breaking the law and believe that other sworn officers would never cooperate will have to now weigh Mr. Carey's example.[1]  Handing down a harsh sentence to Mr. Carey would ultimately be counterproductive to the cause of deterrence. Other potential transgressors may conclude that the government will be unlikely to secure cooperators because cooperators would have little incentive to come forward and testify.  The cause of deterrence is best served by communicating to the LASD and other law enforcement organizations that there are substantial incentives for a member of any conspiracy to ultimately cooperate with the government because that reduces the ability of anyone, especially sworn officers, from getting away with a crime.

### 4.    Avoiding Unwanted Disparity

The government compares Mr. Carey to the eight defendants who were convicted of obstruction of justice.  The government

---

[1] And Mr. Carey's decision to cooperate was particularly painful given who he is.  Mr. Carey spent his entire adult life working for LASD.  His son is an LASD Deputy.  His brother is retired from the LASD.  His ex-wife worked for the LASD.  His life is deeply intertwined with the LASD and his cooperation in this case has been (incorrectly) perceived as against the LASD.

4

elected to dismiss the obstruction of justice charge against Mr. Carey.  Mr. Carey pleaded guilty to the lesser crime of false statement.  As a matter of law, Mr. Carey is not "similarly situated" to these other defendants for the purpose of sentencing.  United States v. Gonzalez-Perez, 472 F.3d 1158, 1162 (9th Cir. 2007) (analyzing disparate sentence of co-defendant under 3553(a)(6) and concluding that the disparity was warranted because the co-defendant "was processed under a 'fast-track' procedure, and was charged with violating a different statute"); United States v. Monroe, 943 F.2d 1007, 1017 (9th Cir. 1991) (holding the district court did not err in imposing disparate sentences on co-defendants because, among other things, the co-defendants were not found guilty of the same offenses and thus were not similarly situated); United States v. Changa, 901 F.2d 741, 743-44 (9th Cir. 1990) (holding the district court was justified in imposing different sentences on defendants who were convicted of different crimes).

Notwithstanding this precedent, the Court may compare Mr. Carey to the other defendants in this case.  If it does, Mr. Carey should be compared to the only other cooperator in this case who has been sentenced, James Sexton.  The government likewise believes this to be an appropriate approach because as "a cooperator, defendant's sentence should be more in line with Sexton, who the Court resentenced to serve approximately months' imprisonment and home detention."  GSP at 10.  Sexton's ultimate five-month sentence is a reduction of 13 months from his original 18-month sentence for his cooperation.  But as the government correctly stated in favorably comparing Mr. Carey to Sexton:

"Sexton went to trial [twice] and appealed his conviction [to the Supreme Court]" (Id.) where Mr. Carey pleaded guilty and cooperated "soon after being indicted."  GSP at 7.

           B.    Cooperation

     The government acknowledges that Mr. Carey is "the only one to have pled before his sentencing hearing."  GSP at 1.  It acknowledges that "he is the only one to have provided substantial assistance before his sentencing hearing" (Id.), that he "offered new evidence that the government previously did not have against Baca" (Id. at 7), and that his "testimony helped tie Baca to the conspiracy and was one of the key differences between the two trials."  Id.

     Although the government admits Mr. Carey provided "substantial assistance" the government takes the rather unusual position of not recommending a departure pursuant to 5K1.1. Instead, the government states that Mr. Carey's cooperation warrants a "low-end" recommendation to a 10-month prison sentence.

     To arrive at the 10-month recommendation, the government computes what Mr. Carey would have received under the advisory guidelines if he had been convicted for obstruction: "[i]t also reflects the low-end of an eight-level departure had defendant been convicted of obstruction of justice."  GSP at 8.  This is a peculiar way of measuring Mr. Carey's cooperation because the government's starting point, the guideline calculation for obstruction of justice, assumes conviction on a charge that the government agreed to dismiss. This position skirts the edges of the government's obligations under the plea agreement to only

6

argue for the guideline calculation in that agreement.[2]

The government position on cooperation is that defendant's cooperation is worth 8-levels if he had pleaded guilty to obstruction of justice.  But since defendant pleaded guilty to false statement (which the government had to agree to in the first place) his cooperation is worth no levels and simply a low-end recommendation.  The government usually affixes the amount of points it believes a defendant's "substantial assistance" is worth and then deducts that number from the offense level agreed upon by the parties.  If the government took that approach here, and moved for the "eight level departure" it described in its sentencing position, it would reduce Mr. Carey's offense level from 12 to 4 with a corresponding sentence of 0-6 months.

C.   Mr. Carey is the Sole Caregiver of a Teenage Boy

Mr. Carey accepts responsibility for what he did.  And for what he failed to do in this case.  Mr. Carey recognizes that the Court will likely sentence him to custody for his conduct.  He understands that reality based upon his own behavior viewed through the prism of the sentences this Court has already imposed.  Mr. Carey requests a shorter term of custody that includes a period of home confinement so that he may continue to care for his ex-wife's son.  Recall that Mr. Carey's ex-wife is not in a position to care for her son due neurological issues resulting from her car accident.  The boy's father is deceased and Mr. Carey is his sole caregiver.  While Mr. Carey understands

---

[2]   The government agreed "not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed."  Plea Agreement at 9.

that a custodial sentence is likely, he requests it be minimized for the sake of his 'son' who has, obviously, already faced more than his fair share of challenges.

**III.  CONCLUSION**

For the foregoing reasons, Mr. Carey respectfully requests a term of imprisonment of not more than five-months with a period of home-confinement of five months, followed by the customary three-year term of supervised release.


Respectfully submitted,


_____*/s/ Andrew Stolper*_____
ANDREW STOLPER